Jul 06 04 03:12p Lexis Nexis 612-295-1039 p

E-SERVED 07/06/04 03:15 PM ET Baycol MDL 1431

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re BAYCOL LITIGATION ) | MDL No. 1431 (MJD/JGL) |
| This document relates to: ) | Case No. 02-0200 |
| RONWIN v. BAYER CORP. ) | |

**MOTION FOR RECONSIDERATION OF UNNUMBERED ORDER (SIGNED JUNE 10, 2004 AND PUT ON VERILAW JUNE 15, 2004) AND REASONS FOR RECONSIDERATION**

**1.** Plaintiff, ("RONWIN"), hereby moves this Court to Reconsider its unnumbered Order signed June 10, 2004 but put on Verilaw on June 15, 2004, and which Order, ("ORDER"), denied RONWIN's and other Motions for relief under PTO 114 §I.F. The reasons for this motion follow:

**2.** ORDER states that Plaintiffs sought release from the requirement in PTO §§ I.A and I.B, p. 5. That may be correct for some or all the other plaintiffs in this action, but not for RONWIN who sought release only from PTO 114 § I.B(2), p. 1, RONWIN's Motion, ("MOTION"), since RONWIN had complied with § I.B(1). PTO 114 § I.B(2) is essentially identical to § I.A in that both require submission of a "Rule 26(a)(2) case specific report from a medical expert attesting that Baycol caused the plaintiff to suffer injuries or damages."

**3.** Before discoursing on the main issues presented herein, some preliminary remarks are appropriate.

**4.** The record in this case reveals that every motion that RONWIN has submitted has been denied and in those denials there are instances which attribute to RONWIN matters not raised by RONWIN or skirt essential matters raised by RONWIN or tolerate false state-

E-SERVED 07/06/04 03:15 PM ET Baycol MDL 1431

ments by defendant, ("BAYER"), and ignore RONWIN's demands that the Court take action against BAYER for such statements, or so warp the assertions of applicable law to reach a denial of RONWIN's motions as to raise a question about the process and intent by which such Orders are reached. When a judge takes an oath of office pledging to uphold the Constitution it implies to RONWIN that the judge swears that he/she will do justice regardless of race, creed, color, religion, sex, age, disability, friendships with the judge, or other considerations having nothing to do with the law of the case. It is RONWIN's view that the strict impartiality required by said oath, as well as the elemental demands of a society that labels itself, "a democracy," is a wee bit tarnished in this case as to RONWIN's motions as well as to other matters and events in this action.

**5.** In addition to MOTION about 4 or 5 other motions with respect to PTO 114 were submitted on behalf of numerous other plaintiffs. The Court allowed the Defendants to file a single response, ("RESPONSE"). RESPONSE proffered arguments which either did not apply to MOTION or may only partially have applied. However, Defendants threw their arguments without indicating to which of the motions their arguments applied with the result that false statements were made as to MOTION and perhaps as to some of the other motions. The Court has not demanded that Defendants correct RESPONSE and could have avoided the situation by requiring Defendants to respond specifically to each motion including MOTION.

**6.** ORDER proceeds to identify correctly the issue raised by plaintiffs' motions. which is "whether the state law governing

E-SERVED 07/06/04 03:15 PM ET Baycol MDL 1431

[RONWIN's] claims requires [a] case-specific expert report to prove causation in fact," p. 5, ORDER.

7. There exists an ancillary issue which is whether or not the case-specific expert has to be a medical expert or any expert who can supply facts proving causation.

8. As to the issue to which ORDER is addressed per ¶ 6, supra, the Court cites and quotes from cases in various states, pp. 5-8, ORDER. However, for each plaintiff, and particularly RONWIN, it is the state law of the state from which his case was transferred to this MDL that is pertinent. That is particularly so since the nuances attached to the law in each state can, and does, vary from state to state. As to ROWNIN's case, only the law of Wyoming is pertinent.

9. After the citation and quotation of cases, the Court states that there are two reasons why it cannot agree that Baycol cases come within the exception to expert testimony, p. 8, ORDER. The first reason given is that, "Plaintiffs do not cite a single state law opinion that supports their position that personal injury cases involving pharmaceuticals, toxins or medical devices are analogous to vehicle accidents or other personal injury cases," p. 8, ORDER. That no such opinion is cited may be that none exists, or that none is necessary since the facts in one or more plaintiff cases may be such that the analogy to accident and other personal injury cases is obvious or can be shown by a preponderance of the evidence in individual cases. The Court errs in adopting its position. Further, the Court's position appears to spring from Defendants allegation,

E-SERVED 07/06/04 03:15 PM ET Baycol MDL 1431

"..that expert testimony on case-specific causation is required in pharmaceutical and similarly complex medical cases," which is a proposition not found in Wyoming law, p. 6, RONWIN's Reply, ("REPLY") to RESPONSE. The second reason given by the Court is that pursuant to PSC expert, THOMAS M ZIZIC, M.D., the alleged injuries of plaintiffs, "...require a physician to perform a differential diagnosis to determine the origin of such injury," p. 8, ORDER. That comment is followed by explaining that differential diagnosis "requires inquiry into medical history, medications taken at the same time as Baycol and whether concomitant illness or medications could cause the plaintiffs' injuries," p. 8, ORDER. Notably, and as previously presented to the Court, the most important element in ZIZIC's comments, as in those of PSC expert, GEORGE KAYSEN, M.D., is that each plaintiff's case must be <u>individually</u> analyzed, (as to ZIZIC depo. @ 70, lines 21-24, (p. 2, REPLY), and as to KAYSEN depo. @ 42, lines 5-12, (p. 3, REPLY), which absolute requirement, the Court ignored and erred when it lumped all the plaintiffs' cases together as to possible cause of injuries and possible factors responsible for the cause of injuries; rather than addressing each motion separately.

**10.** ORDER then declares that based on the two reasons discussed above, the Court "..finds that the Baycol cases are not analogous to vehicle accident or other personal injury actions which do not require a differential diagnosis," pp. 8-9, ORDER, and then proceeds to cite and quote a series of other cases where interplay between various possible deleterious agents could cause health

E-SERVED 07/06/04 03:15 PM ET Baycol MDL 1431

defects, pp. 9-10, ORDER. As above, in ¶ 9, what facts are important in the cited cases do not necessarily apply to each and every plaintiffs' case in this MDL including RONWIN's action. The Court errs by overlooking this fact.

**11.** The last case in the series of cases cited on pp. 9-10, ORDER, is that of Sayer v. Williams, 962 P.2d 165, 167 (Wyo. 1998), which the Court notes stands for the proposition that, "...expert testimony [is] necessary to prove doctor's negligence caused injury where plaintiff's high blood pressure or Hepatitis C could have caused the symptoms of which plaintiff complained."

**12.** The ORDER then declares that the above "analysis applies equally to MOTION[1], p. 10, ORDER, arguing that RONWIN based MOTION on Wyoming Medical Ctr. v. Murray, 27 P.3d 266, 267-269 (Wyo. 2001), wherein plaintiff's bodily injuries were caused by an accident and that the Wyoming Supreme Court held that in such instance expert testimony was not required, pp. 10-11, ORDER. The Court followed that contention by the assertion that RONWIN's "Baycol case is not an accident case, nor does it involve facts in which causation is obvious," p. 11, ORDER. The Court added that RONWIN's case raised an issue of whether Baycol caused RONWIN's injuries which included, "left arm pain, blurred vision, leg pain, slight caterax, [sic, should be cataracts], in both eyes and a torn rotator cuff tear," following which the Court cites to copies of part of the deposition of Drs. ZIZIC and KAYSEN which constitute Exh. A to

---

[1]BAYER misspelled RONWIN's first name as "Edwin," and the Court followed suit. The name is "Edward."

E-SERVED
07/06/04
03:15 PM ET
Baycol MDL 1431

RESPONSE and argues that "whether Baycol caused such injuries is beyond the understanding and experience of a lay person and will require differential diagnosis," citing Sayer, p. 11, ORDER.

**13.** Thus, without hearing any testimony; without considering whether ZIZIC's and KAYSEN's theme of "differential diagnosis" is really applicable; without considering whether any one of the injuries alleged by RONWIN can cause any one or more of the other injuries alleged by RONWIN; without considering the real thrust of the Wyoming Medical Ctr. and Sayer cases, the Court flips off the erroneous determination that RONWIN's case is so difficult that expert testimony is needed to establish causation. Moreover, the Court totally ignored RONWIN's REPLY wherein RONWIN presents an expert opinion on the real cause of Baycol's injurious proclivities and makes the incorrect claim that only a medical expert can discourse on causation; see attached report to REPLY.

**14.** As to the five items of pain and injury described in ORDER and quoted in ¶ 12, above, the eye cataracts have recently been examined, (June 4, 2004) and declared to be insignificant and requiring no treatment; therefore, they are hereby scratched as an injury attributable to Baycol action. The "leg pain" is described in [RONWIN's] Fact Sheet and in RONWIN's letter pursuant to PTO 114 §I.B(1), as "pain in the back of thighs in both legs" and said pain is described in the letter as "experienced on walks, particularly going uphill." That leg pain is a possible result of Baycol ingestion. The "blurred vision" has also been examined on June 4, 2004 and considered due to slight folding of the retina. It may be cau-

E-SERVED
07/06/04
03:15 PM ET
Baycol MDL 1431

sed by Baycol ingestion. The "left arm pain" and the "rotator cuff tear," contrary to the Court's understanding, happen to be one and the same. There are two rotator cuffs in the human body; one in the right shoulder and one in the left shoulder and it doesn't take an M.D. to know that. The "left arm pain" was and is the pain RONWIN experienced and endured, and continues to endure from the tear of the left rotator cuff in RONWIN left shoulder. That is the major injury RONWIN has experienced. Of the list of RONWIN's claimed injuries recited by the Court, and in addition to the rotator cuff injury, we are left with the "blurred vision" and "thigh pain."

**15.** The Court makes a last observation attributable to the Wyoming case of Sayer, 962 P.2d @ 167, to the effect that, "expert testimony [is] necessary where multiple medical conditions could have caused alleged injury," p. 11, ORDER. Earlier, the Court noted that Sayer exclaimed that the plaintiff's "high blood pressure or Hepatitis C could have caused" the plaintiff's symptoms, p. 10, ORDER. In Sayer those ancillary conditions, particularly the high blood pressure, could certainly have caused difficulty in the operation of the pacemaker emplaced within the Sayer plaintiff, thus calling for "differential diagnosis." In RONWIN's case, the situation is quite different. Blurred vision, which occurs occasionally in RONWIN's case, can not by the greatest stretch of anyone's imagination cause a rotator cuff tear; likewise, pain from walking, particularly uphill, in one's thighs cannot possibly cause a rotator cuff tear. If BAYER wants to take such an absurd stance, BAYER has the obligation to prove it. No medical practitioner in his

E-SERVED 07/06/04 03:15 PM ET Baycol MDL 1431

right mind would testify that blurred vision, occasional or constant, or pain in the thighs from walking, particularly uphill, causes rotator cuff tears; only a charlatan would do so. Thus, there is no question of "differential diagnosis" in RONWIN's case and no need for medical testimony other than, possibly, to verify the medical records on RONWIN.

**16.** The Court decided that Baycol injuries are not analogous to accident or other personal injuries, which do not require differential diagnosis, pp. 8-9, ORDER. The "other personal injuries" are not described; nevertheless, Baycol injuries can be equated to accident and "other personal injuries" where the latter category could include injuries caused by ingestion of a poison or other chemical or drug. Baycol is a chemical with biological activity and causes its injuries by chemical action. Rotator cuffs can be caused by accident, e.g., being rear-ended in a vehicle or by pitching baseballs or throwing footballs or by being hit on a shoulder by some force such as a thrown brick, etc. The essence of chemical injury by Baycol and of the rotator cuff injury by the preceding examples is the same: the rotator cuff is torn in whole or in part. Therefore, while the outward causative agent acts differently, Baycol injuries produce the same result as accident injuries and basically for the same reasons.

**17.** Since in RONWIN's case, differential diagnosis is inapplicable and since Baycol's action causes injuries in basically the same way that accidents do, and since the Wyoming case of Wyoming Medical Ctr., stands for the proposition that where a plaintiff is

E-SERVED 07/06/04 03:15 PM ET Baycol MDL 1431

willing to take the risk of non-persuasion of the jury, he/she may testify as to causation, Wyoming Medical Ctr., 27 P.3d @ 269 and as in addition, the Wyoming Supreme Court held, ibid, 27 P.3d @ 269, that: "The jury may reasonably infer from the absence of pain prior to the accident, and the onset of pain afterwards, is evidence that the accident caused the pain." The Court's claim that RONWIN's case does not "involve facts in which causation is obvious," is simply incorrect. Thus, RONWIN can honestly testify that there was an absence of pain in RONWIN's left shoulder prior to his commencement of the taking of Baycol and that RONWIN, at no time in his life, prior to the taking of Baycol ever sought medical aid for any left shoulder problem. RONWIN can also testify that no other trauma occurred and show the evidence that Baycol was taken off the market as a dangerous drug that had caused deaths and bodily injuries. In addition and about one (1) month after starting to take Baycol, RONWIN can testify that RONWIN began to experience pain in the left shoulder and that after another month, RONWIN, finding that the pain would not cease, sought medical attention and continued to seek medical attention until he learned on Aug. 8-9, 2001, that Baycol caused deaths and bodily injuries and was withdrawn from the market on Aug. 8, 2001. Thereafter, RONWIN can testify that he ceased to take Baycol, but that pains continued and that he sought further medical aid which ultimately led to an operation on his left shoulder to repair the rotator cuff tear. While some improvement resulted form the operation, RONWIN can testify that he still experiences pain and reduced ranges of motion in certain direc-

E-SERVED 07/06/04 03:15 PM ET Baycol MDL 1431

tions, as well has reduced ability to lift weights and perform other ordinary functions. If RONWIN is willing to give that testimony without an expert medical opinion, there is no bar to same under the circumstances of RONWIN's case under Wyoming law.

**18.** Both the Court, as above at ¶s 11 and 15, and BAYER's RESPONSE, p. 8, show reliance on the Sayer case which is well distinquished on the facts from RONWIN's case. Moreover, Sayer was a medical malpractice action where the "accepted standard of medical care or practice...is involved," Sayer, 962 P.2d @ 167-168, "...the plaintiff has the burden of producing expert testimony to support a prima facie case of negligence," 962 P.2d @ 168. RONWIN's case is not a medical malpractice action for at least two reasons: (i) RONWIN is not suing the prescribing doctor and (ii) BAYER is not a medical practitioner. As to this latter reason, a medical practitioner is a human being with an MD, DO or similar degree who is licensed to perform medical services. BAYER, and other pharmaceutical companies are (a) not human, (b) are not granted MD, DO or similar degrees, (or any academic degree, for that matter), (c) are not licensed to practice medicine and (d) are best described as drug peddlers. Again, Sayer does not apply to RONWIN's case.

**19.** In the REPLY, RONWIN explained that as to cause all a medical practitioner can do is to testify as to what happened and generally would have to take the plaintiff's word and pharmacy evidence that the plaintiff took Baycol, for a certain period until medically informed that Baycol was dangerous and should be discontinued. That plaintiff came to him/her for medical help because the plaintiff

E-SERVED
07/06/04
03:15 PM ET
Baycol MDL 1431

was experiencing pain and/or dysfunction of bodily parts, that he/she found certain dysfunction to be present, that plaintiff assured he/she that no other trauma appeared to cause the plaintiff's injuries, that he/she was apprised of Baycol's dangerous propensity and that he/she therefore concludes that Baycol caused the plaintiff's injuries. In essence, the medical practitioner can only state WHAT body destruction Baycol caused--relying heavily on a plaintiff's statements, which the plaintiffs can give to a jury on their own, p. 9, REPLY. The medical practitioner is generally not qualified to give the Court WHY Baycol causes body component destruction. Since Baycol is a biochemical, the necessary expertise comes from biochemists, such as RONWIN, pp. 9-10, REPLY and the attached opinion to REPLY.

**WHEREFORE**, Plaintiff, RONWIN, asks this Court to reverse its Order, signed June 10, 2004 and put on Verilaw June 15, 2004, in so far as said Order applies to RONWIN.

DATED: June 25, 2004.

Edward Ronwin, pro se
945 Rolland Moore Dr., L-2
Fort Collins, CO 80526
970-221-3837

CERTIFICATE OF SERVICE

I, EDWARD RONWIN, have served this Motion by the Verilaw system and upon the Clerk of this Court with two copies to Judge Davis by mail this 25th day of June, 2004.

Edward Ronwin