**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *Edward Ronwin v. Bayer Corp., et al.* | : | Case No. 02-0200 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL**

Plaintiff Edward Ronwin served a Plaintiff's Fact Sheet ("PFS") and authorizations upon Defendant on December 2, 2002 (attached as Exhibit 1). Among other injuries, Plaintiff alleged in § VI.A.1 of his PFS that Baycol caused him pain in his left shoulder and arm. (*See id.* at ER000013er.) According to Plaintiff this left shoulder pain led to a rotator cuff tear that was surgically repaired in mid-2003. Plaintiff alleges that his left rotator cuff tear was caused by his use of Baycol. (April 17, 2006 Deposition of Edward Ronwin ("Ronwin Dep."), at 142-143, 145 (attached as Exhibit 2).)

Using authorizations provided by Plaintiff, Defendant obtained medical records from several of Plaintiff's health care providers, including Northern Colorado Orthopedic Associates; Adams & Giddings Physical Therapy, P.C.; Gary J. Luckasen, M.D.; University of Colorado Hospital; and Rose Medical Center.

These medical records indicate that, at some point in time, Plaintiff sustained an injury to his right shoulder and underwent subsequent rotator cuff surgery: "His history is positive for right shoulder arthrogram and subsequent rotator cuff repair in

the remote past for which he did well." (Ex. 3 at SAK000002er, SAK000031er. *See also id.* at SAK000011er ("PSH: Left shoulder transplantation of ulnar and radial nerve. Left elbow surgery for fracture. *Right RC repair*.") (italics added); Ex. 4 at AGPT000005er ("Additional medical history is significant for (R) rotator cuff repair 8-9 years ago, with full recovery afterward."))

On April 17, 2006, Counsel for Defendant attempted to depose Plaintiff, appearing pro se, on his right shoulder injury and surgery. Defendant's counsel questioned Plaintiff several times about his right shoulder injury and surgery. Plaintiff, however, repeatedly refused to answer those questions:

> Q. Listen to my question. I'm restricting it [to] only your left or right shoulder. Have you ever had surgery on either of your shoulders, other than the one in June of 2003?
>
> A: I'm going to tell you that under the – under the plaintiff's fact sheet rule, I do not think I have to answer that at this point.
>
> Q: Are you refusing to do so?
>
> A: Yeah. I think that that – I think that that's a point. I can't go back 82 years.
>
> * * *
>
> Q: Let me – let me take this one step at a time, okay? Have you ever had surgery on your right shoulder?
>
> A: I don't feel I should answer that question, because I told you, that's more than 10 years.
>
> Q: Have you ever had a rotator cuff repair on your right shoulder?
>
> A: Again, I say I believe that would be – if it were so, that would be more than 10 years.
>
> Q: Are you refusing to answer my question?
>
> A: Yes. . . .

* * *

Q: Did you report to Dr. Knauer that you had a right shoulder arthrogram and subsequent rotator cuff repair?

A: The only way she'd know about it was if I reported it to her.

Q: Did you do so?

A: I must have.

Q: Did you have a right shoulder anthrogram in the past?

A: Well, she says so.

Q: No, I'm asking you. In the past, have you had a right shoulder anthrogram?

A: Well, here's the point. Let's go off the record. Off the record.

* * *

Q: . . . Now, Mr. Ronwin, to move this forward, have you ever had a rotator cuff tear to your right shoulder?

A: No, I'm not going to discuss that. It's more than 10 years. My understanding was that we provide information of our medical situation that was within 10 years.

Q: Have you ever had any sort of injury to your right shoulder?

A: I'm not going to discuss that.

* * *

Q: And once again, Mr. Ronwin, I think it's highly relevant, and it's in these medical records. Have you ever had surgery to your right shoulder?

A: That's – I tell you, that's beyond it, and it has no relevance to my left shoulder, period. If we were talking about a disease, for example, that attacks rotator cuffs, and I had it, and there was a disease that caused it, then maybe that would be right.

* * *

Q: What was the reason for the right shoulder surgery?

A: You're asking me again, you know.

Q: Well, are you going to refuse to answer any –

A: It was not – I'm going to answer it this way: It was not Baycol.

Q: Just so the record is clear, are you refusing to answer any questions relating to your right shoulder injury that ultimately led to surgery?

A: Now, we've gone through that now, and I'm telling you that, that that's so, because there is no relationship between the right shoulder and the left shoulder.

Q: Well, we respectfully disagree, but I'll move on. And we will – I'm sure we'll be back together to talk about it.

A: Well, you can do that. You can do what you want to do. . . .

(Ronwin Dep., Ex. 2 at 130-40.)

## ARGUMENT

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Furthermore, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

At his April 17, 2006 deposition, Plaintiff Edward Ronwin, acting pro se, refused to answer questions concerning a prior injury and subsequent surgery to his right shoulder. He claimed that such discovery was irrelevant and/or limited by a so-called "ten-year rule."

Plaintiff's refusal to answer these questions about his prior shoulder injury is misplaced. His prior injury and surgery are clearly relevant to this case. Such inquiries are reasonably calculated to lead to discovery of admissible evidence that Plaintiff's current alleged injuries were not caused Defendant's product. Specifically, a prior shoulder injury and rotator cuff surgery could be probative of a pre-existing condition, such as a degenerative disease. Degenerative shoulder conditions and injuries are common among the elderly population, which includes the 82-year-old Plaintiff. Nothing in the medical records suggests that Baycol caused his current left shoulder injury. More likely than not it was a degenerative condition – a condition that may have also caused the prior injury and surgery to his right shoulder. In short, Defendant should be entitled to discover details about his prior shoulder injury and surgery to defend this case.

Furthermore, there is nothing in this litigation that imposes a time limitation on the discovery of medical history events. Plaintiff appears to be referring to the Plaintiff Fact Sheet in contriving his so-called "ten-year rule." (*See, e.g.*, Ex. 1 at ER000006er ("Please provide the following information for each doctor, clinic or healthcare provider that you have seen or who has treated you during the last ten (10) years.").) The fact that the PFS, as an instrument of initial discovery, may limit its scope to a period of ten years should not prevent further discovery of relevant evidence from earlier events in Plaintiff's medical history.

## CONCLUSION

Plaintiff's refusal to answer questions concerning his past medical and surgical history has obstructed discovery of relevant evidence, has prevented Defendant from fully evaluating Plaintiff's claims, and has thereby unduly prejudiced Defendant. Therefore, Defendant requests that the Court compel Plaintiff to respond to questions about a prior injury to and subsequent surgery on his right shoulder.

Dated: June 2, 2006

Respectfully submitted,

/signature on file/

Susan A. Weber
James W. Mizgala
Bryan R. Mason
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60603
(312) 494-4400

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Peter W. Sipkins (#101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

*Counsel for Bayer Corporation*