# Exhibit 1

IN RE: BAYCOL LITIGATION
MDL No. 1431

PLAINTIFF'S FACT SHEET

Each Plaintiff who used Baycol must complete this Fact Sheet. In completing this Fact Sheet, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can. You may and should consult with your attorney if you have any questions regarding the completion of this form.

If you are completing the form for someone who has died or who cannot complete the Fact Sheet him/herself, please answer as completely as you can for that person. You may attach as many sheets of paper as necessary to answer these questions.

I. Case Information

A. Please state the following for the civil action that you filed: Originally filed with the State District Ct. in Cheyenne Wyoming on ~~Sept~~ 5, 200~~1~~

1. Case caption: EDWARD RONWIN V. BAYER CORP. d/b/a BAYER PHARMACEUTICAL DIVIS,

2. Civil Action No: 159-4 (State Ct.)
Now Case No. 01-CV-172D U.S. DIST. Ct., DIST. of WYOMING

3. Court in which action was originally filed: a EDWARD RONWIN v. BAYER CORP.

4. Name, address, telephone number, fax number and e-mail address of principal attorney representing you:

EDWARD RONWIN - PRO SE
Name

Firm

945 ROLLAND MOORE DR., L-2
Street Address

FORT COLLINS CO 80526
City, State and Zip Code

970-881-3837
Telephone Number

None
Fax Number

None
E-mail address

B. If you are completing this Fact Sheet in a representative capacity (on behalf of the estate of a deceased person or a minor), please state:

1. Your name: N/A

2. Address:

ER000001er

3. In what capacity are you representing the person? ____________

4. If a court appointed you to act on behalf of the estate of the deceased person or minor, state the court and date of appointment: ____________

5. Your relationship to deceased or represented person: ____________

6. If you represent a decedent's estate, state the date of decedent's death: ____________

**The remainder of this Fact Sheet requests information about the person who used the Baycol. If you are completing this Fact Sheet for someone else, please assume that "you" means the person who used Baycol.**

## II. Personal Information

A. Name: EDWARD RONWIN

B. Have you ever used any other names and, if so, when: NO

C. Current Address: 945 Rolland Moore Dr., L-2

D. How long have you been living at this address? 13 months

E. List any prior addresses during the last ten (10) years and the dates when you lived at those addresses. If you cannot recall all of the details regarding those addresses, please provide as much information as you can. Can't recall addresses – Generally used P.O. Boxes for mail.
Lived in Cheyenne, WY; BEAVER CREEK, ~~[illegible]~~ MN; SIOUX FALLS, SD; DES MOINES, IOWA suburbs

F. Social Security Number: 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

G. Date and place of birth: 1/12/24 – NEW YORK

H. Sex: Male X Female ____

I. Marital Status: SINGLE

J. If applicable, name of current spouse and date of marriage: N/A

ER000002er

K. If applicable, name of former spouse(s) and date(s) of marriage within the last ten (10) years: N/A

L. Name(s) of children and date(s) of birth, if applicable: N/A

M. Current employer:

Name: none
Address:
Job Duties:
Job Title:
Dates Employed:
Full-time or Part-time:
Name of Supervisor:

Are you making a claim for lost wages or lost earning capacity? ____ Yes X (No)

N. Please complete the following information regarding any employers (other than your current employer) that you have had in the last ten (10) years:

1. Name: Self-Employed over 10 years
Address:
Job Duties:
Job Title:
Dates Employed:
Full-time or Part-time:
Reason for Leaving:
Name of Supervisor:

2. Name:
Address:
Job Duties:
Job Title:
Dates Employed:
Full-time or Part-time:
Reason for Leaving:
Name of Supervisor:

ER000003er

O. Please provide the following information about your education:

1. High School

Name: H. S. of Science
Address: ?
Grade completed: 4 years
Year graduated: 1941(?)

2. Did you attend school beyond high school? X Yes ____ No

If "yes," please complete the following for each school that you attended after high school:

| Name of School | Address | Dates of Attendance | Degree Awarded | Major or primary field |
|---|---|---|---|---|
| City Univ of N.Y. | N.Y. | 1946–1948 | BS | CHEM |
| Univ of Illinois | Urbana, Ill | 1949–1950 | MS | " |
| Univ of Calif (Berkeley) | Calif | 1950–1952 | PhD | Biochem |
| Az. St. Univ.–Coll of Law | Tempe, AZ | 1970–1972 | JD | Law |

P. Have you used a computer at any time during the past five (5) years?
X Yes ____ No

If "yes," please complete the following:

1. Did you have e-mail? ____ Yes X No

2. Did you have internet access? ____ Yes X No very limited – local library

3. Have you ever visited any website containing information regarding Baycol, statins or the treatment of high cholesterol or high triglycerides?

____ Yes X No ____ I don't know

4. Have you ever visited any chat rooms where Baycol, statins, or the treatment of high cholesterol or high triglycerides was discussed?

____ Yes X No ____ I don't know

5. Have you ever communicated via e-mail or chat room about Baycol, statins or the treatment of high cholesterol or high triglycerides?

____ Yes X No ____ I don't know

ER000004er

Q. Has any insurance or other company provided medical coverage to you or paid medical bills on your behalf in the ten (10) years before you took Baycol through the present?

X Yes ____ No

If "yes, please complete the following:

| Name of Company | Address |
|---|---|
| Medicare | (?) |
| Blue Cross/Blue Shield of MINNESOTA | MINNEAPOLIS (or St. Paul) MN. |
| BLUE CROSS/BLUE Shield of South Dakota / may have different trade name | SIOUX FALLS, SD |

R. Have you applied for worker's compensation, social security, or state or federal disability benefits in the past ten (10) years?

X Yes ~~No~~ I get social security which includes medicare

If "yes," please complete the following for each application. If you cannot recall all of the details regarding such application(s), please provide as much information as you can.

1. Date (or year) of application: (?)
2. Type of benefits: (?)
3. Amount awarded: regular monthly subsistence
4. Basis of your claim: over 65
5. If denied, reason for denial: N/A
6. To what agency or company you submitted your application (*e.g.*, Pennsylvania Division of Social Security): U.S. - Social Security Admin.

S. Were you ever rejected or discharged from military service for any reason relating to your health or physical condition?

____ Yes X No

If "yes," then state the reason for the health-related rejection or discharge and when this happened.

N/A

T. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury, illness or physical harm?

X Yes ____ No

ER000005er

If "yes," please state the court in which the lawsuit was brought and the civil action or docket number assigned to each such claim, action, or lawsuit. If you cannot recall all of the details, please provide as much information as you can.
Can't recall at present

## III. Your Health Care Providers

Re names of three (3) former providers have already been given to your atty's in Wyoming

A. Please provide the following information for each doctor, clinic or healthcare provider that you have seen or who has treated you during the last ten (10) years. If you cannot recall all of the details regarding the healthcare providers that you have seen, please provide as much information as you can.

Plus -

1. Name: Dr. EUGENE E. WOLFEL, M.D.
Specialty, if any: CARDIOLOGY
Address: Univ. of Colorado Health Sciences Center, Div of Cardiology 4200 E, 9th Ave B130 Denver 80262
Phone: (303) 372-0654
Reason(s) for visit(s): heart condition
Medications prescribed or recommended: ZOCOR, ATENOLOL, Aspirin

2. Name: Dr. WILLIAM HIATT
Specialty, if any: Vascular area + general
Address: Univ of Clo Health Sci Ctr, Senior Clinic 4200 E. 9th Ave Denver Co. 80262
Phone: 303-372-7821 (?)
Reason(s) for visit(s): Cardiac + vascular (leg) problems and other problems
Medications prescribed or recommended: None at present

3. Name: Dr. Sally A. Knauer and Dr. Jane T. Servi
Specialty, if any: Orthopedic Surgery + Care
Address: 2121 East Harmony Rd, Suite 290 Ft. Collins CO
Phone: 970-224-9890
Reason(s) for visit(s): Bursa + arm problems.
Medications prescribed or recommended:

4. Name: Dr. Peter J. Standard
Specialty, if any: S. Urology
Address: 1500 Lemay, Fort Collins Co
Phone: 970-484-6700
Reason(s) for visit(s):
Medications prescribed or recommended:

ER000006er

Also Urology @ Mayo Clinic in Rochester MN (Can't remember urologist's name

5. Name: Dr. Gary J. Luckasen
Specialty, if any: Cardiology
Address: 2121 E. Harmony Rd, Suite 100, Fort Collins, Co
Phone: 970-221-1000
Reason(s) for visit(s): Cardiac problems — went to Dr. Wolfe after short interaction
Medications prescribed or recommended: Zocor

6. Name: DRS. RICHARD E. TORKELSON AND MARK RANGITSCH
Specialty, if any: Orthopedic Surgeons
Address: 1950 BLUEGRASS CIRCLE, SUITE 100 CHEYENNE, WY.
Phone: (307) 632-9361
Reason(s) for visit(s): Back pain
Medications prescribed or recommended: Cortisone injections (two at different times)

7. Name: DR. STANLEY R. GUNSTREAM, MD
Specialty, if any: Pulmonary disease
Address: 2121 East Harmony Rd Suite 300 Fort Collins CO 80526
Phone: 970-224-9102
Reason(s) for visit(s): Trouble in chest area
Medications prescribed or recommended: none

**[ATTACH ADDITIONAL PAGES, IF NECESSARY]**

**IV. Your Medical Background**

A. Height: 5'6"

B. Current Weight: 112 lbs.

C. Your Smoking History

1. Never smoked cigarettes X (Smoked two or three cigarettes during Army service in 1943-1946. Didn't like it and never smoked cigarettes again).

2. Past smoker of cigarettes ______
Date on which smoking ceased ______
Amount smoked: ____ packs per day for ____ years

3. Current smoker of cigarettes ______
Amount smoked: ____ packs per day for ____ years

ER000007er

4. Have you ever used any other form of tobacco (snuff, dipping, cigars)?

____ Yes X No ____ I don't know

If "yes," please identify:

a. What form: ________
b. Dates of use: ________
c. Amount of use: ________

D. Alcohol Consumption

On average, how much alcohol do you drink?

X None (virtually - social drink on rare occasions)
____ 1-5 drinks per week
____ 6-10 drinks per week
____ 10 or more drinks per week

E. Please provide the following information for each hospitalization that you have had during the last ten (10) years. If you cannot remember all of the details, please list as much information as you can.

I have been hospitalized a number of

1. Name of hospital: times in the last ten years for
Address: angiograms, angioplasties, stent
Phone: implantation & a double-pass
Reason(s) for hospitalization(s): Also for some urology work done
in connection w/ Mayo Clinic
and for treatment of leg vascular disease

I haven't got a record but the medicare

2. Name of hospital: payment status
Address: should provide some details
Phone:
Reason(s) for hospitalization(s):

3. Name of hospital:
Address:
Phone:
Reason(s) for hospitalization(s):

[ATTACH ADDITIONAL PAGES, IF NECESSARY]

ER000008er

F. Please complete the following information for each surgery that you had in the last ten (10) years. If you cannot remember all of the details, please list as much information as you can.

1. Name of operation:__________
   Name of surgeon:__________
   Address of surgeon:__________
   Reason for surgery:__________

2. Name of operation:__________
   Name of surgeon:__________
   Address of surgeon:__________
   Reason for surgery:__________

3. Name of operation:__________
   Name of surgeon:__________
   Address of surgeon:__________
   Reason for surgery:__________

**[ATTACH ADDITIONAL PAGES, IF NECESSARY]**

G. If you have ever consulted a doctor, clinic or other healthcare provider concerning any kidney condition, illness or disease including kidney failure, polynephritis, nephrosclerosis, kidney stones, proteinuria or hematuria (blood in the urine), please complete the following. If you cannot remember all of the details, please list as much information as you can.

N/A

Name of doctor or facility:__________
Address:__________
Date:__________
Diagnosis:__________
Treatment:__________
Medications:__________
Did condition resolve?__________
Current status of condition:__________

H. If you have ever consulted a doctor, clinic or other healthcare provider concerning any liver condition, illness or disease including but not limited to hepatitis, cirrhosis or fatty liver, please complete the following. If you cannot remember all of the details, please list as much information as you can.

Name of doctor or facility:__________
Address:__________
Date:__________
Diagnosis:__________
Treatment:__________
Medications:__________
Did condition resolve?__________

ER000009er

Current status of condition:____________________

I. If you have ever consulted a doctor, clinic or other healthcare provider about any musculoskeletal condition or disease including muscle pain or weakness, extreme fatigue, myopathy, polymyositis, fibromyalgia, arthritis, tendonitis, or other muscle related concerns or problems, please complete the following. If you cannot remember all of the details, please list as much information as you can.

Name of doctor or facility: Drs Konner, Servi and Heitt as
Address: noted above.
Date:____________________
Diagnosis:____________________
Treatment:____________________
Medications:____________________
Did condition resolve?____________________
Current status of condition:____________________

J. Have you had any of the following tests or procedures in the past ten (10) years?

| **Test/ Procedure** | **Yes** | **No** | **I don't know** |
|---|---|---|---|
| Creatine kinase (CK)/ Creatine phosphokinase (CPK) | | | X (not sure) |
| EMG/Nerve conduction Studies | | | X |
| Cystoscopy | | | |
| Liver biopsy | | | X |
| Other diagnostic test(s) or imaging of the kidneys, liver or muscles | | | X |

If "yes," please complete the following. If you cannot remember all of the details, please list as much information as you can.

a. Type of test:____________________
b. Date administered:____________________
c. Reason for test:____________________
d. Facility name and address:____________________
e. Ordering doctor:____________________
f. Results/diagnosis:____________________
g. Treatment:____________________

**[ATTACH ADDITIONAL PAGES, IF NECESSARY]**

K. Have you been tested for any of the following in the last ten (10) years:

**ER000010er**

| **Condition** | **Yes** | **No** | **I don't know** |
|---|---|---|---|
| Diabetes | | X | |
| Atherosclerosis | X | | |

| Condition | Yes | No | I don't know |
|---|---|---|---|
| Myocardial infarction/ heart attack | X | | |
| Abnormal heart rhythm | | | X |
| Congestive heart failure | | | X |
| Angina | X | | |
| Thyroid disorder | | X | |
| Autoimmune disease | | X | |

If you responded "yes" to any of the above, complete the following information for each condition. If you cannot remember all of the details, please list as much information as you can.

a. Type of condition and date of testing: As indicated above, my
Testing doctor: cardiac condition & leg
Treatment: vascular condition have been
the subject of hospital stays &

b. Type of condition and date of testing: medical treatment
Testing doctor: ______
Treatment: ______

c. Type of condition and date of testing: ______
Testing doctor: ______
Treatment: ______

L. Have you ever been diagnosed as having:

| Condition | Yes | No | I don't know |
|---|---|---|---|
| High cholesterol | X | | |
| Elevated trigylcerides | X | | |
| Hypertension/high blood pressure | | X | |
| Obesity | | X | |
| Diabetes | | X | |
| Thyroid disorder | | X | |
| Autoimmune disease | | X | |
| Abnormal heart rhythm | | | X |
| Congestive heart failure | | | not sure |
| Angina | X | | |
| Myocardial infarction | X (probably) | | |
| Atherosclerosis | X | | |

ER000011er

If you responded "yes" to any of the above, please complete the following information for each condition. If you cannot remember all of the details, please list as much information as you can.

a. Condition and date of diagnosis: The information has been
Name of diagnosing doctor: detailed above.
Treatment: Get the medical provider records.

b. Condition and date of diagnosis:
Diagnosing doctor:
Treatment:

c. Condition and date of diagnosis:
Diagnosing doctor:
Treatment:

## V. Baycol

A. Have you ever taken Baycol? X Yes ____ No

If "yes," then complete the following:

| Dates of use | Dosage | Prescribed by (name and address) | Dispensing pharmacy (name and address) |
|---|---|---|---|
| 1/10/01 – 8/10/01 | 0.4 mg. | Dr. Mark W. Keller, | K-mart in Cheyenne, WY. |
| | | One of the M.D's for whom I gave | |
| | | an authorization to release records and from whom you have rec'd records. | |

B. Were you given any **written** instructions, warnings or other information regarding your use of Baycol?

____ Yes X No — not at time of prescription ____ I don't know

1. If "yes," when did you receive the information? Got information from journal articles and pharmaceutical reports around time Baycol pulled off the market

2. Who gave you the information?

3. If you no longer have the written information in your possession, please describe the written information that you received to the best of your ability.
Have already produced such info copies to your WY atty.

C. Were you ever given any **oral** instructions, warnings or other information regarding your use of Baycol?

____ Yes ____ No ____ I don't know see just above

ER000012er

1. If "yes," when did you receive them?

2. Who gave them to you?

3. Please describe the oral instructions you received to the best of your ability.

D. Please list any prescription or over-the-counter drug, any dietary supplement, vitamin, or herbal remedy that you were taking at the same time you were taking Baycol.

| Name of Drug | Date(s) Taken | Prescribing Doctor | Name and Address of Pharmacy Where Obtained |
|---|---|---|---|
| Aspirin | Since 1996 | not prescribed | - just suggested Over the counter |
| Vit C 500mg. | more than | } "myself" | } over the counter. |
| Vit E 800 I.U. | 10 yrs ago | | |
| | | | |
| | | | |
| | | | |
| | | | |

## VI. Physical Injuries, Illness and Damages

A. If you are making a claim for physical injuries or illness from taking Baycol, please describe the following:

NOT necessarily a complete list of problems →

1. Nature of physical injuries or illness: Left. Knee and arm pain; had blurred vision on occasion; forced to walk one leg one time other times; Pain in back of thighs both legs; some back pain above legs; some right arm pain; slight cataract formation in both eyes.

2. The date that you first became aware of the physical injuries or illness: About 5-6 weeks after taking Baycol (Feb, 2001) Cause trigger

3. How you first became aware of the physical injuries or illness: Pain & the effects

4. Whether those injuries or illnesses are continuing: yes.

Did you see a doctor, clinic or other healthcare provider for the physical injuries or illness listed above?

X Yes ____ No ____ I don't know

ER000013er

If "yes," please complete the following for each healthcare provider:

a. Name: Saw the orthopedic surgeon in Cheyenne, named above.

b. Address: Also mentioned to Dr. Kumpe - info previously provided and to Dr. Hiatt, listed above

c. Date of first consultation with that healthcare provider: Cheyenne doctors — about 6 weeks after start of [illegible] pains

d. Date of last consultation: After decided to see other orthopedic surgeon in Fort Collins [illegible] 4/2005 [illegible] w/ Dr. [illegible]

e. Do you plan to continue to consult with that healthcare provider? ____ Yes ✓ No — not the Cheyenne doctors

B. Have you had any discussions with any doctor or other healthcare provider about whether Baycol contributed to your physical injuries or illness?

✓ Yes (Somewhat) ______ No

If "yes," provide the doctor's or healthcare provider's name and address, and the date of that discussion. Dr. Fort Collins orthopedic surgeon + Dr. Hiatt — both mentioned above

C. If you are making claims for out-of-pocket expenses as a result of taking Baycol, please complete the following:

1. For what: Too, too early to state w/any accuracy.

2. Amount of fees or expenses: ______

3. Person or company paid or to be paid: If an award is obtained by me, I would have to reimburse medicare + Blue Cross Blue Shield of Minnesota

D. If you are making a claim for emotional distress or psychological injuries, please complete the Supplemental Fact Sheet for Claims of Emotional Distress and Psychological Injuries and Harm.

E. Are there persons (other than those already identified in this Fact Sheet) whom you believe are witnesses to your claimed injuries or damages? If yes, please provide their name(s) and address(es): Can't commit a response at this time

1. ______
2. ______
3. ______
4. ______
5. ______

## VII. Other Medications

Have you taken any of the following medications during the past ten (10) years? If you cannot recall all of the details requested, please provide as much information as you can.

ER000014er

| Drug | Yes | No | I don't know | If yes, date(s) taken and prescribing doctor | Name and address of pharmacy where obtained |
|---|---|---|---|---|---|
| **CHOLESTEROL-LOWERING DRUGS** | X | | | Dr. Mark W. Keller<br>Dr Eugene Wolfel | Veteran Admin. Pharmacy in Cheyenne Ctr. |
| Lescol [Fluvastatin] | | | | | |
| Lipitor [Atorvastatin] | | | | | |
| Mevacor [Lovastatin] | | | | | |
| Pravachol [Pravastatin] | | | | | |
| Zocor [Simvastatin] | X | | | ↓ | ↓ |
| Niacin [Vitamin B3] | | | | | |
| LoCholest [Cholestyramine] | | | | | |
| Questran [Cholestyramine] | | | | | |
| Prevalite [Cholestyramine] | | | | | |
| **TRIGLYCERIDE-LOWERING DRUGS** | | | | | |
| Lopid [Gemfibrozil] | | | | | |
| Tricor [Femofibrate] | | | | | |
| Bezafibrate | | | | | |
| Ciprofibrate | | | | | |
| **ANTI-INFECTIVE DRUGS** | | | | | |
| Diflucan [Fluconazole] | | | | | |
| Erythrocin & Others [Erythromycin] | | | | | |
| Flagyl [Metronidazole] | | | | | |
| Nizoral [Ketoconazole] | | | | | |
| Sporanox [Itraconazole] | | | | | |
| **IMMUNO-SUPPRESSIVE DRUGS** | | | | | |
| Neoral [Cyclosporine] | | | | | |
| Sandimmune [Cyclosporine] | | | | | |
| **OTHER** | | | | | |
| Anticoagulants | | | | | |
| Heart Drugs | | | | | |
| Thyroid Medications | | | | | |
| Other | X | — atenolol | | Dr. Wolfel | VA Pharmacy – Cheyenne |

Also always carry a bottle of 0.4 mg. nitroglycerin tablets (Parke Davis' Nitrostatin)

ER000015er

## VIII. Family History

A. To the best of your knowledge have any of your children, parents, grandparents or siblings had diabetes, any type of kidney or liver disease, or any type of muscle disorder?

_____ Yes _____ No __X__ I don't know

B. If "yes," please complete the following:

Relative's name:______________________________
Relationship to you:____________________________
Type of health problem:__________________________
Date and cause of death, if applicable:____________________

Relative's name:______________________________
Relationship to you:____________________________
Type of health problem:__________________________
Date and cause of death, if applicable:____________________

Relative's name:______________________________
Relationship to you:____________________________
Type of health problem:__________________________
Date and cause of death, if applicable:____________________

Relative's name:______________________________
Relationship to you:____________________________
Type of health problem:__________________________
Date and cause of death, if applicable:____________________

## IX. Documents

Please provide a copy of all of your documents and things which fall into the categories listed below. This includes documents and things in your personal possession, as well as items being held for you by another person, including your lawyer or any relative.

1. A copy of all medical records (excluding psychiatric or psychological records) from any physician, hospital, clinic, healthcare provider or pharmacy that treated you, or filled your prescriptions, in the last ten (10) years.

   *Some documents are included herewith*

2. If you have been the claimant or subject of any worker's compensation, Social Security or other disability proceeding, all documents relating to such proceeding.

   *N/A*

3. All instructions, product warnings, package inserts, advertising materials, pamphlets, magazine or newspaper articles, internet information, promotional materials, any documents or materials from defendants, or pharmacy handouts that you have regarding Baycol. *Your atty in WY has already been provided w/same*



ER000016er

which you people can inspect - will not be sent to your possession.

Have a bottle of Baycol tablets gotten from K-mart

4. Copies of the entire packaging, including the bottle, box and label for the Baycol you allege caused you injury and any remaining medication.

5. N/A If you are claiming lost wages or a loss of earning capacity, your federal tax returns for each of the last five (5) years.

6. If you claim any loss from medical expenses, copies of all bills for which you are seeking reimbursement from any physician, hospital, pharmacy or other health care provider. Many bills paid by Medicare + BC/BS of MN are being provided

7. Copies of letters testamentary or letters of administration relating to your status as plaintiff. Don't know what you're asking - If you think I'm not the Plaintiff - go to the Court w/ your facts + proofs showing the contrary.

8. Decedent's death certificate (if applicable). N/A

9. All documents of any kind related to other drugs that you took at the same time you were taking Baycol. Don't have any

Discard

## X. Authorizations

Complete and sign the attached Authorization for Release of Medical Records (No Psychological Injuries Claimed), and attached Authorization for Release of Employment and Unemployment Records (No Psychological Injuries Claimed). Employment + Unemployment records are (1) N/A (2) don't exist.

If you have filed a Workers' Compensation or Social Security disability claim, please complete and sign the attached Authorization for Release of Workers' Compensation and Social Security Records. N/A

## XI. Declaration

I declare under penalty of perjury that all of the information provided in this Plaintiff's Fact Sheet is true and correct to the best of my knowledge, information and belief, that I have supplied all the documents requested in Part IX of this Plaintiff's Fact Sheet, as required above.

Further, I acknowledge that I have an obligation to supplement the above responses if I learn that they are in some material respects incomplete or incorrect.

November 27, 2002 — Dated

Edward Bezanson — Signature

ER000017er

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

IN RE: BAYCOL PRODUCTS LITIGATION : MDL Docket No. 1431

AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS
(No Psychological Injury is Claimed)

To: ______________________________
Name

______________________________
Address

______________________________
City, State and Zip Code

This will authorize you to furnish copies of all medical records, including, but not limited to, medical reports, blood tests, radiographic films, CT scans, X-rays, MRI films, MRA films, correspondence, progress notes, prescription records, echocardiographic recordings, written statements, employment records, wage records, disability records, medical bills, and other documents in your possession, except for records for treatment of psychological, psychiatric or emotional problems, concerning EDWARD RONWIN
Name of Patient

whose date of birth is JANUARY 12, 1924 and whose social security number is 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.

You are authorized to release the above records to the following representatives of defendants in the above-entitled matter, who have agreed to pay reasonable charges made by you to supply copies of such records.

______________________________
Name of Representative

______________________________
Representative Capacity (e.g., attorney, records requester, agent, etc.)

ER000018er

Street Address

City, State and Zip Code

This authorization does not authorize you to disclose anything other than documents and records to anyone.

This authorization is not valid unless the record requester named above has executed the acknowledgement at the bottom of this authorization

This authorization shall be considered as continuing in nature and is to be given full force and effect to release information of any of the foregoing learned or determined after the date hereof. It is expressly understood by the undersigned and you are authorized to accept a copy or photocopy of this authorization with the same validity as through as original had been presented to you.

Date: November 27, 2003 — Edward Romoni — Patient ~~or Guardian~~ Signature

Date: ______________ — ______________ Witness Signature

ACKNOWLEDGEMENT

The undersigned, as the record requester named in the above medical authorization, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the attorney for the patient named in the foregoing medical authorization has been given notice that the authorization will be used to request records from the person or entity to whom it is addressed, if named in Plaintiff's Fact sheet; or, if the authorization is addressed to a third party not listed in Plaintiff Fact Sheet, the attorney for the patient named has been given ten (10) days advance notice and has been afforded an opportunity to object to the request, and any objections have been resolved. The attorney for the patient named in the foregoing medical authorization has also been afforded an opportunity to order copies of the records from the undersigned requestor at a reasonable cost.

______________

ER000019er



19

# Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MDL No. 1431 (MJD), Case No. 02-0200

---

DEPOSITION OF: EDWARD RONWIN, Ph.D.
April 17, 2006

---

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| Edward Ronwin, et al., v. Bayer Corp., et al. | : | Case No. 02-0200 |

TAKEN PURSUANT TO NOTICE on behalf of the Defendant Bayer Corporation at 419 Canyon Avenue, Suite 300, Fort Collins, Colorado 80521 at 9:04 a.m. before Sylvia E. Noneff, Registered Professional Reporter and Notary Public within Colorado.

APPEARANCES

For the Plaintiff Ronwin (pro se): EDWARD RONWIN, Ph.D., ESQ.
945 Rolland Moore Drive L-2
Fort Collins, Colorado 80526

For the Defendant: JEFFREY PILKINGTON, ESQ.
Davis Graham & Stubbs, LLP
1550 17th Street
Suite 500
Denver, Colorado 80202

Also Present: None

WHEREUPON, the within proceedings were taken pursuant to the Federal Rules of Civil Procedure:

EDWARD RONWIN, Ph.D.,

having been first duly sworn to state the whole truth, was examined and testified as follows:

EXAMINATION

BY MR. PILKINGTON:

Q. Good morning, Mr. Ronwin.
A. Good morning.
Q. We're here to take your deposition in your lawsuit against Bayer Corporation. Before this deposition began, we went over several issues, one of which included your request to have the deposition tape-recorded, right?
A. Right.
Q. And in fact, you have your tape recorder in the middle of the table here to have it recorded for your benefit; is that correct?
A. That's right.
Q. Mr. Ronwin, you're a lawyer?
A. Well, I'm not a practicing lawyer.
Q. Let me go over some basic ground rules of the deposition so we're on the same page. You understand that I'm here to ask you questions to better understand the facts and circumstances of your case?

but I don't think Dr. Wolfel.
Q. If Dr. Keller recommended that you take a nitrate, did you follow his advice?
A. No, because that would be utterly unnecessary. I carry nitroglycerin with me all the time. In fact, I have it right here in my pocket. Do I? Yeah, in this pocket. These are my Parke-Davis nitroglycerin pills.
Q. We'll get to that in a moment. Mr. Ronwin --
A. Yeah.
Q. -- you had surgery on your left shoulder in June of 2003?
A. That's right.
Q. Okay. Have you ever had any other shoulder surgeries?
A. The 10-year rule.
Q. At any point in your life, have you had any other surgeries?
A. Other surgery?
Q. Yeah.
A. Yeah, lots of them, all kinds, but I don't -- I can't go through all of them. Incidentally, considered under surgeries are angioplasties, angiograms.
Q. Listen to my question. I'm restricting it

only your left or right shoulder. Have you ever had surgery on either of your shoulders, other than the one in June of 2003?

A. I'm going to tell you that under the -- under the plaintiff's fact-sheet rule, I do not think I have to answer that at this point.

Q. Are you refusing to do so?

A. Yeah. I think that that -- I think that that's a point. I can't go back 82 years.

Q. I understand. Here's -- listen to me, and I'm making this for the record, that there are medical records that show that you have had surgeries on your right shoulder and surgeries on your left arm, and I think that those are relevant to this litigation. Now, I'm going to -- I plan on asking you questions about those surgeries and to further ask you questions about those surgeries.

A. About my left arm, yes. That's definitely relevant to this litigation.

Q. Let me -- let me take this one step at a time, okay? Have you ever had surgery on your right shoulder?

A. I don't feel I should answer that question, because I told you, that's more than 10 years.

Q. Have you ever had a rotator cuff repair on

your right shoulder?

A. Again, I say I believe that would be -- if it were so, that would be more than 10 years.

Q. Are you refusing to answer my question?

A. Yes. I told you, it's more than 10 years. If that occurred, it's more than 10 years. Look, I've had all kinds of operations, but if they occurred more than 10 years, I -- I don't feel I have to tell you about it, period.

MR. PILKINGTON: Let's mark this as 18. I'm going to need some more stickers.

THE REPORTER: Okay.

(Deposition Exhibit 18 was marked.)

Q. (BY MR. PILKINGTON) Mr. Ronwin, I marked as Exhibit Number 18 --

A. Yes.

Q. -- a medical record that I received --

A. Yes.

Q. -- from Northern Colorado Orthopedic Associates. It's dated May 12, 2003.

A. Yes.

Q. And I'll read this sentence: "His history is positive for right shoulder arthrogram and subsequent rotator cuff repair in the remote past for which he did well." Did I read that correctly?

A. Let's see. Hold on. (Deponent read to himself.) Yes.

Q. Did you report to Dr. Knauer that you had a right shoulder arthrogram and subsequent rotator cuff repair?

A. The only way she'd know about it was if I reported it to her.

Q. Did you do so?

A. I must have.

Q. Did you have a right shoulder arthrogram in the past?

A. Well, she says so.

Q. No, I'm asking you. In the past, have you had a right shoulder arthrogram?

A. Well, here's the point. Let's go off the record. Off the record.

Q. Okay. We can go off the record, but let me -- let me state my position on the record --

A. Okay.

Q. -- and then we can talk about it. One of the injuries that you're claiming in this case is a left rotator cuff tear.

A. Um-hum.

Q. And I am entitled to go into your surgeries relating to your -- your prior medical history. It's

clear from your prior medical history that you've had a right shoulder rotator cuff repair, you've had some surgeries on your left arm and the nerves in your left arm, and I am entitled to go into those and to find out about those, regardless of this so-called 10-year rule that you're referring to.

The 10-year rule does not apply to this deposition. That's Bayer's position. And we can move forward with the deposition. I guarantee you that if you refuse to answer questions relating to these surgeries, we will go and ask the court to come back and take the deposition.

A. Yeah, um-hum.

Q. So you can answer -- respond to my comment on the record, or, as you want -- you want to go off the record, apparently. So it's your choice.

A. Well, the off the record -- we're off the record?

Q. Okay. You want to go off the record. That's fine.

(Discussion off the record.)

MR. PILKINGTON: We're on the record.

Q. (BY MR. PILKINGTON) And, Mr. Ronwin, I think for the sake of this, I'm not -- if you want to go off the record again, I want to stay on the record from

now on. Is that okay?
A. No, it isn't okay.
Q. Why?
A. Because everyone has the right to go off the record. I told you, you've got a right to go off it, and go off it whenever you want to. I'll go off it whenever I want to.
Q. I understand. Now, Mr. Ronwin, to move this forward, have you ever had a rotator cuff tear to your right shoulder?
A. No, I'm not going to discuss that. It's more than 10 years. My understanding was that we provide information of our medical situation that was within 10 years.
Q. Have you ever had any sort of injury to your right shoulder?
A. I'm not going to discuss that.
Q. Have you ever had any surgeries to your left shoulder?
A. Left shoulder?
Q. Yes.
A. Yes.
Q. When?
A. Well, the left arm or left shoulder?
Q. Well, let's start with left shoulder.

A. Well, it's more than 10 years for that one, if you're -- if you're referring to the nonrotator cuff. Is that what you're referring to?
Q. Any -- any surgeries to your left shoulder.
A. Yes, the rotator cuff tear in, you said, June of 2003.
Q. Other than the surgery -- the rotator cuff surgery in June of 2003, have you had any other surgeries to your left shoulder?
A. Well, there's one that's beyond the 12 -- the 10 years. I would make an exception there and tell you about it. That's -- that occurred, and there was -- for some reason, this orthopedic surgeon decided he wanted to transpose two of my arm nerves, the radius and the ulnar, that run in that area of the -- of the arm.
Q. When was that?
A. Well, I think it was 1982, but I'm not certain. I think it was pretty much 19 -- it was definitely -- it was definitely before my first angioplasty, which was 1983.
Q. Where was the surgery?
A. In Des Moines.
Q. Do you know what hospital?
A. It wasn't a hospital, but it wasn't -- it was an outpatient-type thing. I left right after the

surgery.
Q. Would you further explain the type of surgery that was done?
A. Yeah. He transposed my radius and ulnar nerves in that part of my arm. Now, why he did it, I don't know. I had a big scar that went about 10 inches long. Now there's no scar even visible.
Q. Who was the surgeon?
A. I can't remember his name.
Q. And do you know who the orthopedic was who cared for you?
A. What?
Q. Do you know who the orthopedic person was who cared for you?
A. Well, there's no care after that. I cared for myself.
Q. Who treated you for this injury?
A. That's that doctor.
Q. The surgeon?
A. But I don't remember his name.
Q. Okay. Other than the -- that was sometime in 1982, right?
A. I think it was, yeah.
Q. Okay. You also had a surgery on your left elbow as a child?

A. Yeah, in 1930.
Q. And what happened?
A. I broke it, broke the elbow.
Q. What type of surgery did you have?
A. Repairing the elbow. Never repaired it right.
Q. When you say "never repaired it right," what do you mean?
A. (Deponent indicated.)
Q. What are you doing?
A. I can't straighten my arm (indicated).
Q. You can't straighten your left arm?
A. That's right.
Q. And you believe you can't straighten it because it wasn't repaired correctly?
A. That's right.
Q. Have you had any other surgeries to your left shoulder or left arm?
A. Not that I can think of, no.
Q. So to summarize, you've had three surgeries to your left shoulder or left arm?
A. Yeah, three.
Q. One in 1930, one in 1982, and one in 2003, correct?
A. I think that's probably right, yeah.

Q. And once again, Mr. Ronwin, I think it's highly relevant, and it's in these medical records. Have you ever had surgery to your right shoulder?
A. That's -- I tell you, that's beyond it, and it has no relevance to my left shoulder, period. If we were talking about a disease, for example, that attacks rotator cuffs, and I had it, and there was a disease that caused it, then maybe that would be right.
Q. Well, do you agree that the doctors, your orthopedic doctors, found that you had --
A. Which doctors?
Q. -- some degeneration in your left shoulder?
A. Some degeneration?
Q. Yes.
A. Which doctors?
Q. Dr. Servi or Knauer.
A. Both?
Q. Yes.
A. Yes, they did. That was -- that was the result of X-rays, I believe.
Q. And did -- are you aware of any degenerative changes in your right shoulder?
A. No, I'm not.
Q. What --
A. Not offhand, I'm not.

Q. What was the reason for the right shoulder surgery?
A. You're asking me again, you know.
Q. Well, are you going to refuse to answer any --
A. It was not -- I'm going to answer it this way: It was not Baycol.
Q. Just so the record is clear, are you refusing to answer any questions relating to your right shoulder injury that ultimately led to surgery?
A. Now, we've gone through that now, and I'm telling you that, that that's so, because there is no relationship between the right shoulder and the left shoulder.
Q. Well, we respectfully disagree, but I'll move on. And we will -- I'm sure we'll be back together to talk about it.
A. Well, you can do that. You can do what you want to do. What else you got? Do you have much more to go?
Q. Yeah. It's taking a lot longer than I thought, which is unfortunate.
A. It doesn't surprise me.
Q. What, if -- nor me. What, if anything, did you do to prepare for your deposition today?

A. What did I do?
Q. Yes.
A. Looked over the papers I had.
Q. That you brought to your deposition?
A. Some of these, yes. You have others.
Q. Did you discuss your deposition with anyone?
A. No. Hold up a minute. I -- I mentioned to Deanna Dailey that I was going to have the deposition --
Q. Who is that?
A. -- and that it was -- and that it was postponed from the 8th to the 17th. Deanna Dailey is the key person in Larson-King, which is the -- the designated attorneys for the plaintiffs for MDL for communications in St. Paul.
Q. Have you ever been disbarred?
A. Off the record.
Q. I'll ask it on the record.
A. No.
Q. If you refuse to answer, that's fine.
A. Off the record.
Q. You can go off the record. Fine.
A. No question will be answered until I explain something. I have the materials here.
MR. PILKINGTON: Off the record.
(Break taken from 12:30 p.m. until 12:37

p.m.)

Q. (BY MR. PILKINGTON) Mr. Ronwin requested that we go off the record. I accommodated his request. During the break he asked me to spend some time with him going through the circumstances of this so-called disbarment that I put in my question. In the interests of moving this forward, I'm not going to require an answer from Mr. Ronwin at this time, but I may do so in the future. And we want to keep this deposition moving forward; fair to say, Mr. Ronwin?

A. Go ahead, right.

(Discussion off the record.)

Q. Mr. Ronwin, what injuries do you claim were caused by your ingestion of Baycol?

A. Well, the primary injury is that it ultimately caused my left shoulder rotator cuff tear which had to be operatively repaired. I also had other effects, some of which are no longer present. One effect was, I was beginning to get blurred vision. So I'd be reading -- and as I indicated to you, I read a lot -- and suddenly the words began to blur. That lasted for awhile. I can't tell you how long. But it -- it did go away.

A second effect I had was that in walking, I would put, let's say, my right foot forward, and then my

left foot, instead of going straight forward, would tend to overlay and get in front of the right foot. And I tended to almost trip, see. And that has also gone away over the -- over this period of time.

Let's see. What else? I had some back pain from the point of the back where your -- the top of your buttocks, so to speak, down to the knees in the back of the legs -- not in the front, in the back of the legs. And I still get that, particularly when I try to walk uphill. And that is something I didn't used to have.

I also -- let me see what else I had here. Let me take a look and refresh my memory. I thought that I might have some slight cataracts in both eyes, but I -- I think -- I can't exactly say that that was necessarily due to Baycol. I may have had that without realizing it before Baycol.

I'm just not certain on that, on that question. And I think I may still have very slight cataracts in the eyes. And I might say that the -- you want me to tell you about the Baycol and when I began to get these effects?

Q. No. I want a complete listing of any injuries that you attribute to your use of Baycol.

A. That, I think, is pretty much it.

Q. And I'll represent to you that you did list

some in your fact sheet --
A. Yeah.
Q. -- which we've marked as Exhibit Number 9.
A. Yeah, that's right.
Q. Why don't you turn to that. I'm not trying to trick you at all.
A. No.
Q. It's right in that stack.
A. Oh, okay. There it is, fact sheet, yes.
Q. Because you would agree with me it's very important for me to understand what injuries you claim --
A. Yes.
Q. -- were caused by Baycol, correct?
A. Yes. What page was that on?
Q. It's on page 13.
A. 13, 11 -- there we are. Oh, yeah, okay. I see, yeah. "Left bursar and arm pain, had blurred vision at other times." Also -- let's see. "On occasion tended to walk one leg" -- one leg -- "one leg over the other at times," yes, and that tended to cause tripping.
"Pain in the back of the thighs, both legs." Well, I said in the back of the -- the top of the buttocks. But, you know, the thighs sort of start at the bottom of the buttocks. So I'll kind of correct that. "Some pain above legs." That's where I may have meant

the back.

Q. Some back pain --

A. Yeah.

Q. -- above the legs?

A. Yeah, above the legs. That's what I must have meant. "Some right arm pains," yes. And I think that was in the elbow. And "A slight cataract formation in both eyes." That's what I put down.

Q. Mr. Ronwin, is that a full and complete set of the injuries that you allege may have been caused by your use of Baycol?

A. I think so.

Q. And -- and just so I understand it, and we'll take a break for lunch, you're complaining of left bursa or arm pain that ultimately resulted in the rotator cuff tear?

A. That's the main one, yes.

Q. Two, you --

A. Now, the back of the leg, thighs --

Q. Let me interrupt. Let me take them one at a time, okay?

A. All right.

Q. The second one that you attribute to your use of Baycol is blurred vision on occasion?

A. Yes.

# Exhibit 3

### Patient information

**Patient Name:** RONWIN, EDWARD

**Patient ID:** 1441222

**Patient Sex:** M

**Date of Birth:** 12-Jan-24

**Status:**

**Pregnancy Status:** Unknown

**Medical Alerts:** N/A

**Contrast Allergies:** N/A

### Study Information

**Accession Number:** 000855069

**Referring Physician:** KNAUER, SALLY

**Reason For Study:** N/A

**Study Date:** 11-Sep-02

**Study Time:** 10:01:00 AM

**Requesting physician:** KNAUER, SALLY

**Study Description:** SHOULDER, COMP MIN 2 VIEWS

**Procedure code:** SH

**Procedure description:** SHOULDER, COMP MIN 2 VIEWS

**Resource Name:** HRAD

**Modality:** CR

### Report Information

**Report Status:** APPROVED

**Diagnostic Code:** N/A

**Impression:** N/A

**Interpretation Date:** N/A

**Interpretation Time:** N/A

**Interpretation transcribed:**

DICTATED 09/11/02 1428



Confidential Subject to
Protective Order

**Northern Colorado Orthopedic Associates**
2121 E. Harmony Road, Ste. 290 - Fort Collins, CO 80528 - (970)224-9890
Sally A. Knauer, MD, P.C.
Jane T. Servi, MD

DATE: 05/12/03

PATIENT: EDWARD RONWIN

Edward returns at this time having recently been hospitalized for traction for left low back and buttock pain. He states that he still has some left buttock soreness that is greatly improved and states that he can now tie his shoes and is much more functional although he still states that he has some muscle spasm. He is here today primarily for the left shoulder problem, stating that in January of 2001 he started taking BAYCOL. In February 2001 he began to experience a left shoulder and arm soreness without any known injury. His history includes treatment first in Cheyenne and then in Fort Collins with Cortisone injections to the subacromial space of the left shoulder, initially with good results but more recently without significant benefit. His history is positive for right shoulder arthrogram and subsequent rotator cuff repair in the remote past for which he did well. He states that the shoulder is quite bothersome to him now and he does desire further evaluation and even would consider surgery because the problem is so significant to him. PE: Does reveal flexion to approximately 145 degrees with pain. He will abduct to 90 degrees and then it is only with great effort that he can take it up to 100 degrees due to pain and also weakness. He also has definite weakness and pain with external rotation of the shoulder in the dependent position and also has subacromial tenderness. AP left shoulder radiograph obtained today does show some degenerative changes of the AC joint and with perhaps some inferior osteophyte formation of the glenoid but these findings are mild. IMP 1) Recent improvement of low back pain after hospitalization for traction. 2) Left shoulder mild degenerative arthritis, rule out rotator cuff tear. REC: The implications of these problems were discussed and at this time he is assisted in arrangements for arthrogram. He states that he does not desire to proceed with an MRI scan, having had one in the past which was very troublesome for him and he states that he does have some claustrophobia. He is assisted in arrangements for this and I will plan to be in contact with him with those results.

SAK,MD/mip

Confidential Subject to
Protective Order

NORTHERN COLORADO
ORTHOPEDIC
ASSOCIATES

Sally A. Knauer, M.D.
*Board Certified Orthopedic Surgeon*

Jane T. Servi, M.D.
*Sports Medicine Specialist*

DATE: September 4, 2001

PATIENT: EDWARD RONWIN

HISTORY: Edward is a 77-year-old retired white male biochemist and lawyer who presents with left shoulder pain. He is right hand dominant. His shoulder pain was of insidious onset first noted in February or March diagnosed as bursitis and resolved with a CORTISONE INJECTION. He states that 2 months ago he had the insidious onset of pain initiating over the superior aspect of the shoulder radiating down the proximal lateral humerus, which is worse with abductive type maneuvers but at its worst is present with behind the back maneuvers during the night. He describes that pain at that point as a 10 out of 10, dull to sharp in nature, without nocturnal symptomatology unless he gets into that position, or paresthesias. Treatment thus far has consisted only of CORTISONE INJECTION into the subacromial space 3 weeks ago without resolution. He states he has a many year history of cervical DJD. It was recommended that he have fusion, which he declines. He also has a history of left shoulder surgery for ulnar and radial nerve transplant back in 1984.

PMH: Hypercholesterolemia and CAD. MEDICATIONS: ZOCOR and ASPIRIN. NKDA. ROS: Occasional cephalgia, blurry vision, and vertigo. Occasional chest pain, tachycardia, and urinary frequency. SOCIAL HISTORY: Single. No tobacco, recreational drug use, caffeine, or alcohol consumption. Exercise is on a weekly basis in terms of walking. PSH: Left shoulder transplantation of ulnar and radial nerve. Left elbow surgery for fracture. Right RC repair. CABG. FAMILY HISTORY: CAD and cancer.

OBJECTIVE: General: Elderly, NAD, cooperative with exam. Left shoulder is without atrophy, ecchymosis, edema, scapular winging, apprehension, and stability. There is tenderness to palpation mildly at the C-joint and over the coracoid process. Range of motion forward flexion: 120 degrees actively, 160 degrees passively. Abduction: 160 degrees actively, 180 degrees passively. IR to T8. This is equal to the contralateral side. ER: 45 degrees. Also equal to the contralateral side. Strength, abduction, ER IR, biceps, triceps 5/5, no pain. Supraspinatus 4-/5 and painful. Impingement test positive in forward flexion IR with a mildly positive cross arm test. No subacromial crepitation. UE NVI. Neck: FROM extension 5 degrees, lateral gauge 30 degrees, lateral bends 10 degrees, with pain reproduced in the left base of the neck on a right lateral bend and gauge. There is no tenderness to palpation over the cervical paraspinous musculature or spinous processus with a negative head compression test, and Spurling maneuvers.

RADIOGRAPHS: Review of Radiography demonstrating mild degenerative changes of glenoid fossa, no proximal migration of the humerus, mild spurring at the distal AC joint with a Type II acromion.

Confidential Subject to
Protective Order

SAK000011er

2121 East Harmony Road Suite 290 Fort Collins, CO 80528 (970) 224-9890 FAX (970) 224-9800

EDWARD RONWIN
Page 2

IMPRESSION: 1) Left RC tendonitis versus tear,

PLAN: 1) Implications of this problem was discussed at length with patient and he is very adamant about not receiving medication secondary to their side effect profile. He does desire another trail of CORTICOSTEROID INJECTION, which was done with 9 cc of XYLOCAINE, 1 c of DEPO-MEDROL done in the normal sterile fashion without complications. No improvement in post injection resisted supraspinatus testing. He does understand that he is a candidate for MRI, which he has had a bad experience with closed machine, or an arthrogram of the left shoulder should his symptoms not improve. He will return to clinic in 3 weeks.

Jane T. Servi, MD/ba

**Northern Colorado Orthopedic Associates**
2121 E. Harmony Road. Ste. 290 - Fort Collins. CO 80528 - (970)224-9890
Sally A. Knauer. MD, P.C.
Jane T. Servi, MD

DATE: 05/12/03

PATIENT: EDWARD RONWIN

Edward returns at this time having recently been hospitalized for traction for left low back and buttock pain. He states that he still has some left buttock soreness that is greatly improved and states that he can now tie his shoes and is much more functional although he still states that he has some muscle spasm. He is here today primarily for the left shoulder problem, stating that in January of 2001 he started taking BAYCOL. In February 2001 he began to experience a left shoulder and arm soreness without any known injury. His history includes treatment first in Cheyenne and then in Fort Collins with Cortisone injections to the subacromial space of the left shoulder, initially with good results but more recently without significant benefit. His history is positive for right shoulder arthrogram and subsequent rotator cuff repair in the remote past for which he did well. He states that the shoulder is quite bothersome to him now and he does desire further evaluation and even would consider surgery because the problem is so significant to him. PE: Does reveal flexion to approximately 145 degrees with pain. He will abduct to 90 degrees and then it is only with great effort that he can take it up to 100 degrees due to pain and also weakness. He also has definite weakness and pain with external rotation of the shoulder in the dependent position and also has subacromial tenderness. AP left shoulder radiograph obtained today does show some degenerative changes of the AC joint and with perhaps some inferior osteophyte formation of the glenoid but these findings are mild. IMP 1) Recent improvement of low back pain after hospitalization for traction. 2) Left shoulder mild degenerative arthritis. rule out rotator cuff tear. REC: The implications of these problems were discussed and at this time he is assisted in arrangements for arthrogram. He states that he does not desire to proceed with an MRI scan, having had one in the past which was very troublesome for him and he states that he does have some claustrophobia. He is assisted in arrangements for this and I will plan to be in contact with him with those results.

SAK,MD/mip

DATE: 06/24/03
PATIENT: EDWARD RONWIN

Ed is a 79-year-old gentleman who has persistent left shoulder pain with arthrogram evidence of a full thickness rotator cuff tear. He has considered his options thoroughly and at this time has elected to proceed with surgical intervention. We have also been in contact with his primary care physician who has indicated no significant risk for surgery. PMH: Reviewed with him at this time. He states that he does take NITROGLYCERIN on a very rare basis. He will bring his medicine to the hospital. He notes his normal heart rate is about 92. PE: Reveals a healthy appearing, slim, elderly gentleman. HEENT: Exam is unremarkable. Neck supple. Chest is clear. CV: Normal sinus rhythm without murmur. Abdominal exam deferred. Left shoulder reveals active flexion and abduction to approximately 90 degrees with pain. Internal rotation to approximately L4. He does have significant pain and weakness produced with external rotation of the shoulder against resistance. He is non tender over the AC joint and biceps. IMP 1) Left shoulder rotator cuff tear. 2) Left shoulder adhesive capsulitis. 3) History of low back pain. REC: The implications of the problem were discussed with the patient at length. Risks and benefits of surgery have been thoroughly discussed with him and he appears to understand and wishes to proceed.

SAK,MD/mip

7/2/03: 6 days post-op

SAK000031er

CONFIDENTIAL, SUBJECT TO PROTECTIVE ORDER

# Exhibit 4

ADAMS & GIDDINGS
PHYSICAL THERAPY, P.C.
720 W. Drake, Bldg. E, Ste. A ♦ Fort Collins, CO 80526
970-416-8342 ♦ Fax 970-416-8344

August 4, 2003

Sally Knauer, MD
Northern Colorado Orthopedic Associates
2121 East Harmony Road, Ste 290
Fort Collins, CO 80528

**RE: Initial Evaluation on Edward Ronwin**
Dx: S/P (L) Shoulder Manipulation with Rotator Cuff Repair

Dear Dr. Knauer,

**SUBJECTIVE:** Thank you for referring Edward to physical therapy. He reportedly underwent closed manipulation of (L) shoulder adhesive capsulitis, followed by repair of a full thickness rotator cuff repair on 6-28-03. He has some continued pain with use of the UE, as well as a feeling of loss in ROM and functional strength. He reports that one week prior to this evaluation, he did have an episode of sharp pain in the (L) shoulder when he awoke on his (L) side. He has had no repeats of that same sharp pain since. Pre-surgical history is significant for multiple cortisone injections over the previous year, both with you and a different physician. Edward reports that he had a positive arthrogram on the shoulder prior to surgery, which revealed the extent of injury. Additional medical history is significant for (R) rotator cuff repair 8-9 years ago, with full recovery afterward. He did also have (L) elbow fracture as a child and has had a flexion contracture since then. Edward did also undergo a nerve transposition of the (L) upper arm in 1982; however, the details of that surgery are unclear.

**OBJECTIVE:** Edward presents in minimal obvious pain or distress. He is a very thin elderly gentleman with moderately forward shoulders. There is not much muscle mass about the shoulder. The incision appears to have healed well and is without adhesions. AROM in the shoulder is approximately 120° overhead elevation, both in the forward and lateral plane and approximately 60° external rotation. Edward is able to reach behind his back to about the T6 level, which is surprisingly good. He can reach the opposite axilla, as well as the top and back of his head without complaint. There is some pain and inhibition due to guarding of the (L) shoulder for external rotation, forward flexion, and abduction maneuvers. He has strong extension, adduction, and internal rotation. There is minimal tenderness to palpation of the (L) shoulder landmarks and soft tissues. Initial treatment was instruction in home active assisted ROM exercises with use of a dowel. We did also look at some tabletop and wall stretches for assisted ROM.

**ASSESSMENT:** Edward presents with loss of ROM, strength, and functional use of the (L) UE following recent surgical repair of the rotator cuff in closed manipulation. He does have some residual capsular restrictions of motion, as well as weakness from the rotator cuff surgery. He should progress favorably with some ROM and low-level

AGPT000005er



CONFIDENTIAL, SUBJECT TO PROTECTIVE ORDER

**ASSESSMENT, con't:**
exercise therapy. We will look at getting him back to unrestricted function and full independence with an exercise program in the next few weeks.

**PLAN:** I will see Edward twice weekly for the next month, with the hopes that we can get him fully independent in that time or at least close to that point. Should we need to continue beyond that time, I will forward a progress note to you to discuss his status and any concerns that may exist.

Thank you again for the courtesy of this referral. Please call should you have any other questions regarding initial findings or plans for care.

Respectfully,

Ron Adams, PT

AGPT000006er

CONFIDENTIAL, SUBJECT TO PROTECTIVE ORDER