**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *Edward Ronwin v. Bayer Corp.* | : | Case No. 02-0200 |

**DEFENDANT BAYER CORPORATION'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION TO ORDER CERTAIN DEPONENTS TO RETURN FOR FURTHER DEPOSITION; TO ORDER THE RETURN OF EXTORTED FUNDS; AND TO ORDER OPPOSING COUNSEL TO CEASE CERTAIN ACTIVITIES**

In his Emergency Motion, Plaintiff Edward Ronwin asks the Court to take *second depositions of four of his treating physicians*. Ronwin argues that he needs 12 hours of additional deposition time because he was "flustered" and was not given enough time at the first depositions. He contends that these four physicians "dodged" his questions and failed to tell the truth. Ronwin also asks the Court to order one of the physicians to return $10 that was "extorted" from him and to order Bayer's counsel to cease unspecified activities. As explained below, Ronwin has not demonstrated good cause to take second depositions of the four physicians or to issue the other requested relief. Therefore, the Court should deny the Motion in its entirety.

**BACKGROUND**

Ronwin asserts that he ingested Baycol for approximately seven months. During that time, Baycol allegedly caused him to develop left shoulder pain, blurred vision, thigh pain, back pain, right arm pain, cataracts and gait problems. Plaintiff's Fact Sheet at 13. The left shoulder pain finally resulted in left rotator cuff repair surgery by Dr. Sally Knauer in June 2003.

To better understand Ronwin's alleged injuries and medical condition, Bayer noticed the depositions of eight of Ronwin's many physicians. These eight physicians (cardiologists, rheumatologists, internists and orthopedics) appeared to be the primary care providers for most of the relevant injuries and conditions.

As with any physician deposition, counsel for Bayer, Davis Graham & Stubbs LLP ("DGS") contacted the physician's office to schedule his or her deposition. DGS gave each office an estimate of the reasonable time that would be required to complete the deposition. DGS cleared each deposition with Ronwin's personal calendar. In accord with the custom and practice in Colorado and Wyoming, each physician charged (or is expected to charge) Bayer for the scheduled deposition time. The following times were reserved and fees billed:

| **Physician** | **Time Reserved** | **Fees Paid by Bayer** [1] |
|---|---|---|
| Dr. William Hiatt (treating cardiologist) | 2 hours | $600 |
| Dr. Kevin Deane (treating rheumatologist) | 2 hours | Bill to be submitted |
| Dr. Eugene Wolfel (treating cardiologist) | 4 hours | $2,000 |
| Dr. Richard Torkelson (treating orthopedic) | 2 hours | $1,000 |
| Dr. Jane Servi (treating orthopedic) | 2 hours | $1,500 |
| Dr. Mark Prince (VA physician) | 1 hour | Bill to be submitted |
| Dr. Sally Knauer (orthopedic surgeon) | 3 hours | $2,250[2] |

Before the start of these depositions, DGS advised Ronwin of the scheduled time. He knew and understood the time constraints. DGS and Ronwin also discussed that any deposition could be continued, if the deposition could not be completed in a reasonable amount of time.

The Motion complains about four of these depositions – Dr. Hiatt, Dr. Torkelson, Dr. Servi and Dr. Knauer (collectively, the "Four Physicians").[3] Three of the Four Physicians are orthopedic specialists (Drs. Torkelson, Servi and Knauer) who provided care and treatment for Ronwin's left shoulder. Bayer's questioning of these three physicians focused on Ronwin's complaints, the nature of his injury, the treatment and/or surgery provided, the prognosis and the cause of his injury. When asked about the cause

---

1 At these fees, it behooves all parties to be as efficient and reasonable as possible during the deposition. Ronwin's suggestion that each deposition should last four hours is misplaced and would result in a waste of resources.

2 Since the parties exceeded the allotted time for Dr. Knauer and Dr. Servi, Bayer was billed an additional $1,500 (two additional hours). Dr. Mark Keller's (treating cardiologist) deposition (the eighth medical deposition) is scheduled for three hours on July 14, 2006. Bayer has pre-paid Dr. Keller $2,000 for his deposition time.

3 Because Ronwin served a copy of his Emergency Motion on these physicians, Bayer will provide each with a courtesy copy of its Response.

of his rotator cuff tear, each of the three orthopedic specialists stated that *Ronwin's rotator cuff tear was caused by degenerative changes in his left shoulder*. Servi Dep. 54:11-55:7, 67:17-68:10, 76:6-18; Torkelson Dep. 44:4-44:15, 94:5-95:1, 103:3-103:16; Knauer Dep. 73:4-73:18, 96:22-97:10.[4] Each orthopedic physician further testified that *Baycol was not the cause of his rotator cuff tear*. Servi Dep. 69:4-24; Torkelson Dep. 95:17-96:13; Knauer Dep. 70:18-73:3, 96:5-21. They further testified that there is no valid scientific evidence to support Ronwin's assertions. Servi Dep. 30:12-31:17, 111:8-112:21; Torkelson Dep. 46:20-47:12; Knauer Dep. 70:18-73:3. The fourth physician, Dr. Hiatt, is one of Ronwin's treating cardiologists. Most of Bayer's questioning related to Ronwin's long and serious history of coronary and peripheral vascular disease, the need for statins to control Ronwin's serious hypercholesterolemia and the care and treatment provided. As a prescriber of statins, Dr. Hiatt also testified that he was not aware of any scientific support for Ronwin's assertion that Baycol caused his injury. Hiatt Dep. 66:14-67:16, 91:17-92:25.

Ronwin's questioning, on the other hand, roamed from the relevant – his left shoulder – to the irrelevant – Nazi Germany. Ronwin tried to challenge the physicians' conclusions that his shoulder injury was caused by degenerative changes and not Baycol. But, as Ronwin points out in his brief, he failed. Motion at 7-8. Ronwin often posed

---

[4] Since the depositions of each of the Four Physicians is at issue, Bayer has attached the entire condensed deposition transcript of each physician: Dr. William Hiatt deposition ("Hiatt Dep.") attached as Exhibit A; Dr. Richard Torkelson deposition ("Torkelson Dep.") attached as Exhibit B; Dr. Jane Servi deposition ("Servi Dep.") attached as Exhibit C; and Dr. Sally Knauer deposition ("Knauer Dep.") attached as Exhibit D.

many bizarre and confusing questions, which went beyond the knowledge and/or expertise of the Four Physicians. For example, he asked questions about:

- The composition of the human body and of different cells. Servi Dep. 115:5-118:1; Knauer Dep. 118:9-121:20.
- The chemical properties and structure of Baycol. Hiatt Dep. 97:3-98:1; Torkelson Dep. 98:15-100:12; Knauer Dep. 122:22-127:4, 140:18-145:23; Servi Dep. 114:4-115:23.
- The difference between cells in the animal kingdom versus the plant kingdom. Knauer Dep. 126:25-127:25.
- Titles and conclusions of some scientific literature and Baycol-related documents. Hiatt Dep. 74:6-77:15, 81:12-83:11; Knauer Dep. 128:8-140:14, 152:7-159:18.
- The fluorene atom in Baycol. Knauer Dep. 140:25-148:24; Servi Dep. 114:10-114:22; Torkelson 98:15-100:12.
- Adverse event reports and incidence. Hiatt Dep. 83:24-87:17.
- Ethics of drug companies. Hiatt Dep. 89:2-89:15.
- A number of judgments against and convictions of Bayer. Knauer Dep. 160:2-170:18.
- The alleged use of female slaves by I.G. Farben in Nazi Germany some 60 years ago. Knauer Dep. 170:23-175:19.

Whenever any of the Four Physicians felt that they did not understand the question or lacked the expertise to provide an answer, they told Ronwin.[5]

---

[5] For example, Dr. Hiatt explained to Ronwin that he was "uncomfortable answering questions that are very sweeping in nature. If you have a specific question about a specific drug effect, please ask that." Hiatt Dep. 97:18-97:21. Then, Ronwin asked this confusing question: "Do you know if the structure, the chemical structure of Baycol is such that it could cause negative interactions with various tissues in the body?" To which Dr. Hiatt truthfully and honestly answered, "I'm not aware of that." Hiatt Dep. 97:22-98:1.

Ronwin failed to tell the Court that each of the Four Physicians stayed at his/her deposition much longer than the time allotted *in order to answer all questions and complete the depositions*. As shown below, each party had ample time to ask its questions:

| **Physician** | **Total Time** | **Bayer Questions** | **Ronwin Questions** |
|---|---|---|---|
| Dr. Hiatt | 2:15 (8:05-10:20) | 71 pp. (5-68; 90-96) | 27 pp. (68-90; 96-99) |
| Dr. Torkelson | 2:20 (1:10-3:30) | 53 pp. (3-51; 100-103) | 54 pp. (51-100; 103-106) |
| Dr. Servi | 2:26 (9:08-11:44) | 73 pp. (4-73; 120-122) | 49 pp. (74-120; 122-123) |
| Dr. Knauer | 3:57 (1:30-5:27) | 100 pp. (5-98; 176-181) | 79 pp. (98-176) |

In addition, DGS paid the physicians for their additional time, when requested. Ronwin has paid nothing. Indeed, he has refused and continues to refuse to pay for any of the deposition time.

For three of the Four Physician depositions, *Ronwin affirmatively stated that he was finished* – the depositions were completed:

- **Dr. Torkelson Deposition** – When asked by Pilkington if Ronwin had any further questions, Ronwin replied "I think call it a night." Torkelson Dep. 100:18-23.

- **Dr. Knauer's Deposition** – When asked by Pilkington "[a]re you done with your questions?", Ronwin responded "yeah." Knauer Dep. 175:20-25.

- **Dr. Hiatt's Deposition** – At the end of this deposition, Ronwin conceded that the questions that he was asking were "not absolutely critical[,] but interesting." Hiatt 90:3-90:5. He agreed to "wrap up" the deposition and ask the questions of another witness. Hiatt Dep. 98:3-98:4.

Finally, Ronwin knew and understood that each deposition could be continued if necessary.[6] In short, Ronwin knew, understood and agreed that each of the four depositions was completed.

## ARGUMENT

The simplest means to address the Motion is to analyze each of the five prayers for relief (Motion at 13-14), in turn.

### I. RONWIN'S REQUEST FOR AN ORDER THAT REQUIRES THE FOUR PHYSICIANS TO BE REDEPOSED FOR UP TO THREE ADDITIONAL HOURS WITHOUT COMPENSATION AND AT THEIR EXPENSE.

Ronwin requests the Court to order each of the Four Physicians to:

- Sit for an *additional three hours of questioning* by Ronwin in Fort Collins (even though two of the Four Physicians do not practice in Fort Collins).
- Sit for the second deposition *without any compensation* for his/her time.
- *Pay for the cost*s of the court reporter, transcripts and premises for the deposition.
- Not "*dodge answers to questions*."
- Make arrangements for *absolutely no interruptions* of any kind during the second deposition.

Motion at 13. This request for relief has no support as a matter of fact or law.

Under Fed. R. Civ. P. 30(a)(2)(B), a party must obtain leave of court to take the deposition of a person who has already been deposed in the case, unless the parties stipulate in writing to the second deposition. A second deposition may be allowed only

[6] Ronwin argues that Dr. Torkelson threatened to leave the deposition if Ronwin did not finish. Motion at 5-6. This is untrue. Dr. Torkelson offered to reschedule the deposition for another time if it could not be finished on that date. Torkelson Dep. 72:25-73:5, 97:18-98:14.

"to the extent consistent with the principles stated in Rule 26(b)(2)." Fed. R. Civ. P. 30(a)(2). According to those principles, a second deposition should not be allowed where, among other things:

- The party seeking the second deposition "has had ample opportunity" at the first deposition to obtain the testimony;
- The second deposition "is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;" or
- The "burden or expense of the proposed discovery outweighs its likely benefit. . . ."

Fed. R. Civ. P. 26(b)(2). In consideration of these factors, "*[c]ourts generally disfavor second depositions, and absent a showing of need or good reason, a court generally will not require a deponent to appear for a second deposition*." 7 James Wm. Moore et al., *Moore's Federal Practice* § 30.05[1][c] (3d ed. 1999) (emphasis added). Good reason does not include an attorney who gets flustered or fails to ask certain questions or follow-up questions. It does not include a deponent who does not give the responses sought by the questioner. Ronwin has failed to establish any reason to take a second deposition of each of the Four Physicians.

First, Ronwin had *ample opportunity* to ask relevant questions of the Four Physicians at the first depositions. Of the nearly 500 pages of transcripts, Ronwin's questions covered nearly 40% of those pages. It is neither unfair nor unreasonable to allow Bayer, whose only means of securing information about Ronwin's medical condition is through these depositions, to ask at least 60% of the questions. Indeed,

Ronwin asked pages and pages of questions. Yet, he never requested that the depositions be continued to another date. Rather, he stated that he was finished with his questions.

Ronwin's repeated argument that he was "flustered" at each deposition is no reason to schedule 12 additional hours of deposition time. Motion at 6, 10. Ronwin represents himself to be an attorney, a biochemist and a molecular biologist – a person who is uniquely qualified to represent himself. At each deposition, he brought a laundry list of prepared questions and a pile of exhibits. He went through his questions and exhibits in great detail. He had ample opportunity to ask all of his questions or request that the depositions be continued or rescheduled. In short, the depositions were completed.

Second, second depositions of the Four Physicians would be *unreasonably cumulative and duplicative of the testimony provided during their first depositions*. Contrary to Ronwin's argument, none of the Four Physicians "dodged" his questions or gave false testimony. Each of the Four Physicians gave intelligent, thoughtful and truthful testimony. Their answers will not change. Ronwin simply disagrees with their answers[7] – especially their testimony that his rotator cuff tear was caused by degenerative changes, and not Baycol. Mere disagreement, however, is no reason to take a second deposition. Further, when the Four Physicians told Ronwin that they did not understand a question, did not know the answer or lacked the expertise to give an answer, they were

---

[7] This disagreement is reflected in the three-page "Attorney's Statement of Changes" to Dr. Hiatt's deposition (attached as Exhibit E). Bayer anticipates that Ronwin will submit similar statements for the depositions of Dr. Torkelson, Dr. Servi and Dr. Knauer.

providing truthful responses – they were not dodging questions as suggested by Ronwin. Ronwin's complaints rest in the nature of the questions asked.[8] Questions about the Baycol molecule, plant and animal kingdom cells, Bayer's prior convictions and Nazi Germany have nothing to do with the care and treatment provided by these cardiology and orthopedic specialists.

Third, *the burden and expense of four additional depositions of the same witnesses outweigh any conceivable benefit*. As explained above, there is no benefit from second depositions. Ronwin will only argue with the physicians and pose many more irrelevant questions. The burden and expense of the second depositions will be significant to Bayer and the Four Physicians. Bayer will be forced to prepare for travel to and participate in about 12 hours of depositions. The physicians will expect payment from someone – presumably Ronwin (which he opposes). There also will be additional transcript and court reporting costs. The second depositions of each of the Four Depositions is burdensome, expensive and wasteful.

Fourth, Ronwin's accusations that Dr. Torkelson and Dr. Knauer violated Court Rules by taking radiology images from their depositions is wrong, because *none of the*

[8] For example, Ronwin disagrees with Dr. Hiatt's answer to the following question: "Well, don't statins attack muscles, muscle tissue?" Motion at 3. Dr. Hiatt truthfully and properly answered that "Statins primarily block an enzyme that makes LDL cholesterol." Hiatt Dep. 68:25-69:1. Ronwin continued his questioning and Dr. Hiatt gave complete and truthful responses about how CK leaks from muscle cells. Hiatt Dep. 69:2-70:7. The fact that Ronwin disagrees with this testimony as "absurd" (Motion at 3) is no reason to have a deposition.

*images were marked as exhibits during the deposition*.[9] Each of the physicians complied with the subpoena by bringing Ronwin's chart and radiology images to the deposition. Both Bayer and Ronwin reviewed those materials at the deposition. As none of the images were marked as exhibits, Ronwin has no right to the images – they remain the property of the physicians. The mere subpoena or use of medical records during a deposition does not make them "court records." Of course, Ronwin can get access to those records and request and pay for copies of those images.

Finally, the other elements of relief are improper. None of these Four Physicians should be compelled to travel to Fort Collins and sit for a deposition without compensation for their time. Bayer paid each physician for Bayer's and Ronwin's questioning. If the Court orders second depositions (which they should not be), Ronwin should be ordered to make the same payments. Likewise, they should not be compelled to pay for the costs of the court reporter, transcripts or premises. An additional three hours would be unreasonable – each deposition would then be between five to seven hours. The physicians should not be ordered to refrain from taking any calls or emergencies – this is unfair to them and their practice.

## II. RONWIN'S REQUEST FOR AN ORDER THAT REQUIRES DR. KNAUER TO REPAY RONWIN $10 FOR THE X-RAY.

Ronwin paid $10 to Dr. Knauer to obtain a copy of the radiology images. He describes this $10 payment as "extortion." Motion at 1. Again, Ronwin is simply wrong.

[9] Contrary to Ronwin's representations to the Court (Motion at 8), none of the radiology films have since been marked as deposition exhibits. Torkelson Dep. 2; Knauer Dep. 3-4.

Like Ronwin, Bayer paid Dr. Knauer for copies of the images (not to mention for her deposition time). Bayer did so according to the standard and acceptable practice in Colorado and Wyoming. It is fair, reasonable and just for medical providers to charge reasonable prices for copies of patient's records and images. Ten dollars for radiology images is fair, just and reasonable. Ronwin's accusation that his $10 payment was secured by extortion is simply without merit.

## III. RONWIN'S REQUEST FOR AN ORDER THAT CAUTIONS THE FOUR PHYSICIANS ABOUT THE REMEDY OF CONTEMPT.

Ronwin requests the Court to "caution" the Four Physicians that any further violations would subject them to contempt of Court. Motion at 14. Since the Court should deny the motion in its entirety, Ronwin's contempt caution is without merit. *See* Part I, above.

## IV. RONWIN'S REQUEST FOR AN ORDER THAT ESTABLISHES A MECHANISM TO RESOLVE DISPUTES DURING A DEPOSITION.

Ronwin requests the Court to establish a "mechanism whereby the Judge can be contacted, or a substitute contacted" for disputes arising during a deposition. Motion at 14. Such a mechanism is unnecessary.

Ronwin has not demonstrated that any rules or orders have been violated. As explained elsewhere, the physicians have provided intelligent, coherent and truthful testimony, and counsel for Bayer has acted appropriately and professionally.

## V. RONWIN'S REQUEST FOR AN ORDER THAT JEFF PILKINGTON'S "ADVOCACY ACTIVITIES MUST BE REORIENTED TOWARD A PROPER ETHICAL APPROACH IN THE COURSE OF HIS WORK ON BEHALF OF BAYER."

Ronwin has made several allegations about Pilkington's conduct in this case. For example, he alleges that Pilkington:

- Aided and encouraged the "unsavory conduct" of the Four Physicians. Motion at 1.
- Gave physicians the impression that the depositions were finished. Motion at 3.
- Violated certain duties that would assist Ronwin. Motion at 3, 5, 9, 11.
- May have had prior interactions with the Four Physicians. Motion at 11.

There is nothing to support Ronwin's assertions other than his blind paranoia.

Pilkington has never spoken to any of these Four Physicians before the depositions. Further, he has never discussed the care and treatment of Ronwin outside of Ronwin's presence at a deposition. Throughout this case, Pilkington has fairly and zealously represented Bayer's interest as he is obliged to do. Yet, Pilkington has done so with fairness and professionalism to Ronwin. For example, he has:

- Provided copies of all medical records at no charge to Ronwin.
- Had Bayer pay for all of the treating physician deposition time (including Ronwin's questions).
- Made arrangements with the court reporters that allows Bayer to provide copies of all deposition transcripts at a reduced copy charge.
- Patiently accommodated Ronwin's questions during the depositions.
- Patiently discussed discovery and other issues with Ronwin during many lengthy telephone calls.

The bottom line – Ronwin just does not like the testimony of these Four Physicians – so he blames Pilkington. The Court should caution Ronwin that such reckless and unsubstantiated allegations about Pilkington's character and ethics will not be tolerated.

## **CONCLUSION**

For the above reasons, the Court should deny the Emergency Motion to Order Certain Deponents to Return for Further Deposition; to Order the Return of Extorted Funds and to Order Opposing Counsel to Cease Certain Activities in its entirety.

Dated: July 14, 2006

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

*Counsel for Bayer Corporation*

CERTIFICATE OF SERVICE

I, David L. Barlett, certify that a true and correct copy of the foregoing Defendant Bayer Corporation's Response to Plaintiff's Emergency Motion to Order Certain Deponents to Return for Further Deposition; to Order the Return of Extorted Funds; and to Order Opposing Counsel to Cease Certain Activities and exhibits were electronically filed and served, and copies of same were sent by U.S. Mail to

Dr. Edward Ronwin
945 Rolland Moore Drive, L-2
Fort Collins, CO 80526

on July 14, 2006.

[signature]