IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Baycol Products Litigation | : MDL No. 1431 (MJD) |
| This document relates to: | : |
| Ronwin v. Bayer Corp. | : |

MOTION TO RECONSIDER PLAINTIFF'S MOTION
FILED JULY 10, 2006

Plaintiff, ("RONWIN"), hereby moves this Court to Reconsider RONWIN's Motion to Order Certain Deponents to Return for further Deposition; to Order the Return of Extorted Funds and to Order Opposing Counsel to Cease Certain Activities, filed July 10, 2006, ("Motion-7/10/06").

CONSIDERATION OF THE COURT'S ORDER DENYING MOTION-7/10/06.

The Court's Order, ("ORDER"), denying Motion-7/10/06 was filed on July 25, 2006 and stated several reasons for the denial. The Court's reasons are considered below in the order stated in the ORDER.

A. The first basis for denial is presented on p. 1 to bottom p. 2, ORDER. This segment encompasses more than one point; all of which are related.

The Court states that under PTO 149, it is the Defendants, ("BAYER," herein), who are entitled to depose all case-specific fact witnesses[1] for up to four (4) hours of actual deposition time, p. 1, ORDER. The Court was clearly concerned with "defendants," but where is the right of Plaintiffs? If BAYER sets a deposition of a non-party fact witness, RONWIN had a right to relatively equal time and, in the least, a right to ask questions of the deponent to deflate, if RONWIN could, the assertions that the witness made in response to BAYER's interrogation.

Then, the Court quotes the terms of Fed.R.Civ.P. 26(b)(2), which, presumably, the Court was

[1] This refers to non-party witnesses. Plaintiff's fact deposition could run for 7 hours.

SCANNED
AUG 02 2006
U.S. DISTRICT COURT MPLS

FROM :EDWARD RONWIN FAX NO. :970-224-3838 Aug. 01 2006 05:28AM P2

intending to follow, p. 2, ORDER.

Prior to the comments in this segment, see p. 2, bottom to p. 3, l. 10, Motion-7/10/06. The Court proceeds to note that BAYER argues that RONWIN "had ample opportunity to ask questions of [the four deponents]." Not true. Of the approximately 2 hours of HIATT's deposition, which started at 8:00 a.m., BAYER's attorney, JEFF PILKINGTON, ("PILKINGTON"), took <u>1 hour and 40 minutes</u>. Then he turned the deposition over to RONWIN. Some activity took at least 5 minutes before RONWIN could start his questions at 9:45 a.m., p. 67, l. 23 to p. 68, l. 11, HIATT Depo., Exh. A to BAYER's Response to Motion-7/10/06; hereinafter, "BAYER's Response." At 10:00 a.m., an office aide to HIATT entered the room and "reminded" HIATT that he had a 10:00 o'clock appointment, p. 89, ls. 16-19, HIATT Depo., Exh.A to BAYER's Response. RONWIN got about 10 more minutes to interrogate. The assurance that BAYER gave this Court and that the Court uncritically accepted, (as the Court has done for every opponent in every motion or response to motion filed by RONWIN to date in this action), that RONWIN "had ample opportunity to ask questions [of the deponents]," is false.

In fact, BAYER admitted that BAYER's interrogation time was, in BAYER's words, BAYER Response, p. 8, last ¶:

> Of the nearly 500 pages of transcripts, [for all four deponents], RONWIN's questions covered nearly 40% of those pages...[and BAYER had] at least 60% of the questions.

In fact, BAYER's computations were in error. RONWIN had even less time, as will be demonstrated below, since RONWIN had interruptions, frequently noted in the transcripts but the interruption times were almost never set forth in the text of the depositions contrary to standard reporting practice. See also, pp. 6-8, RONWIN's Reply to BAYER's Response, hereinafter,



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Aug. 01 2006 05:29AM P3

RONWIN's Reply.

B. The Court next argues that RONWIN "affirmatively indicated that his questioning was complete," p. 2, 2nd full ¶, ORDER; though the Court admits that did not happen in SERVI's deposition. Another example where RONWIN certainly signalled that he really wasn't finished occurs near the end of TORKELSON's deposition, p. 97, ls. 23-24, Exh. B to BAYER's Response, were, after being met with a dodge instead of an answer to a question, [which will feature again below], RONWIN is quoted as saying, "Well, I suppose, but I'd really like to go into that Bacal[2] thing." As the Court will have pointedly shown to it hereinbelow, TORKELSON's interruptions and threats to walk out before the deposition was brought to a close occurred only when RONWIN was interrogating him, which detracted from RONWIN's interrogating time, annoyed RONWIN greatly and flustered RONWIN, who surmised in the situation that continuation of his interrogation was virtually useless unless TORKELSON was informed by the Court that his conduct was not permissible in a legal procedure. PILKINGTON made no effort to get TORKELSON to conform to proper witness decorum.

Similarly, as to HIATT, it is noted near the end of his depo., p. 90, ls. 3-7, Exh.A to BAYER's Response, that RONWIN had other questions but the situation with HIATT acting like he was going to get up and leave to an alleged 10:00 a.m. appointment, was futile to continue with questioning. However, for PILKINGTON, HIATT sat thereafter and answered all questions without any attempt to dodge answering any question, p. 90, l. 12 to p. 96, l. 14, HIATT Depo., Exh. A to BAYER's Response.

In all of the 4 depositions in question, the conditions were that RONWIN was shorted on time

---

[2]The reporter in the TORKELSON deposition persistently misspelled Baycol as Bacal.

to interrogate; frequently interrupted and the atmosphere was clearly such that proper interrogation was next to impossible with much question dodging by each of the 4 deponents, see p. 8, 1st Full and last ¶s. RONWIN's Reply.

C. The Court notes BAYER's arguments that (i) further deposing the 4 MDs "would be cumulative and duplicative" of their prior testimony, and (ii) that "the burden and expense of further deposing these physicians outweigh any conceivable benefit," p. 2, last full ¶. ORDER. Nowhere has BAYER presented any proof of these arguments nor has the Court cited where the proofs can be found in the record of Motion-7/20/06.

D. The Court also argues that RONWIN, "has not made a showing that the physicians 'dodged' questions or were otherwise uncooperative," p. 3, ls. 5-8, ORDER. An example of antagonistic lack of cooperation and dodging of questions is given in the text of Motion-7/10/06, pp. 5-9, on TORKELSON and accompanies this Motion as Exhibit 1. Clearly, TORKELSON's threats to leave the deposition started early in RONWIN's interrogation and were persistent, p. 5, last ¶ to p. 6, Exhibit 1 hereto. And, as to those activities, PILKINGTON remained silent though he must be held to know that TORKELSON's conduct could not be displayed before the judge and jury at trial, nor in his deposition. In Exh. 1, hereto, we also see an example of TORKELSON's dodging answer an important question, p. 6, bottom 3 lines to p. 7.

On HIATT, see discussion of his answer dodging, p. 3, 2nd full ¶ to p. 5, 1s full ¶, Motion-7/10/06, (and references therein to HIATT's depo., Exh. A, BAYER's Response).

SERVI dodged answering questions, example: p. 111-113, Exh. C to BAYER's Response, (RONWIN could not get SERVI to admit the obvious that just because she didn't know about a thing, the thing or action was <u>not</u> excluded). The dodging continued, pp. 114-117, and p. 117,



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Aug. 01 2006 05:30AM P5

ls. 2-19, Exh. C to BAYER's Response.

As to KNAUER, direct answers were lacking which effectively were dodges, see p. 100, l. 10 to p. 103, l. 21, Exh. D to BAYER's Response, where, as to length of the arthritic spurs in RONWIN's left shoulder, KNAUER never answers directly; see specifically p. 101, ls. 6-11, where the question is first broached and p. 103, ls 4-11, Exh. D to BAYER's Response; see also p. 138 to p. 148, l. 12, Exh. D. BAYER's Response.

E. The Court also argues, as did BAYER, that RONWIN should pay $10.00, as was extorted from him by KNAUER for an X-ray film which was discussed and used in KNAUER's depo., but because of an oversight by the reporter was not marked as an exhibit. KNAUER took the X-ray film, (an arthrogram was also later retrieved along with the X-ray film), unnoticed when she left the deposition room. The X-ray film for which KNAUER charged RONWIN $10.00 was and is a part of the Court's record and needs to be listed as an Exhibit, (along with the arthrogram film); yet, the ORDER, in effect, approves charging monies to the person trying to retrieve Court records that were improperly taken by the deponent. That's an outrage, see p. 10, last ¶ to p. 11, Motion-7/10/06; p. 100, l. 10 to p. 103, l. 21, KNAUER Depo., Exh. D to BAYER's Response.

TORKELSON did the very same thing and charged BAYER $30.00 for the 3 X-ray films that he walked off with without permission, which were used in his deposition, pp. 8-9, Motion-7/10/06 and p. 85, l. 11 to p. 87, l. 24, TORKELSON Depo., Exh. B to BAYER's Response.

F. As to PILKINGTON's conduct in the 4 depositions, the ORDER is again in error. The chumminess of each of the 4 deponents with PILKINGTON as compared to the antagonistic approach to RONWIN by these same deponents was evident at each of the 4 depositions to

which the Court was <u>not</u> an observer. Just the games exhibited by these 4 deponents as discussed above is corroborative of RONWIN's charges against PILKINGTON; p. 2, last ¶ to p. 4, and p. 5, 1st and 2nd full ¶s, RONWIN's Reply.

Further, PILKINGTON at first refused to retrieve the X-rays that TORKELSON unlawfully took, but then changed his mind. The reason for the change, as explained directly to RONWIN, was that he decided he would need the X-ray films with a BAYER expert.

PILKINGTON also failed to give RONWIN any advance input on the deposition times that he assured these 4 deponents would govern each of their depositions; p. 2, 1s and 2nd full ¶s, RONWIN's Reply.

PILKINGTON talked to SERVI during a deposition break, p. 7, last ¶ to p. 8, RONWIN's Reply. The weren't talking about how to make moonshine.

**WHEREFORE**, Plaintiff asks this Court to Reconsider Plaintiff's Motion filed July 10, 2006, in this Court and to grant as much of the prayer in said motion as appears reasonable.

DATED: AUGUST 1, 2006.

Edward Ronwin, Plaintiff pro se
945 Rolland Moore Dr., L-2
Fort Collins, CO 80526
970-221-3837

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing motion upon the following persons or entities by FAX, this 1st day of August, 2006: The Court Clerk's Office at FAX No. 612-664-5044; Chief Judge James M. Rosenbaum at FAX No. 612-644-5054; Defendant's counsel, Sidley Austin, LLP, Chicago, Ill at FAX 312-853-7036; Defendant's counsel, Jeffrey Pilkington at Davis Graham &Stubbs, FAX 303-893-1379 Plaintiff's Liaison Counsel, Deanna Dailey, at Larson-King,St.Paul, MN 651-312-6618.

Edward Ronwin



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Aug. 01 2006 05:30AM P7

From: Dr. Edward Ronwin, FAX No. 970-224-3838

To: The persons and entities who will be receiving this FAX listed on p. 6 of the enclosed Motion.

Date: August 1, 2006

There are 11 pages in this FAX. Six are part of the text of the motion and 5 are part of Exhibit 1 to the motion.

Edward Ronwin

Edward Ronwin, PhD, JD

P.S.—To the Clerk's Office. I just faxed a 6 page motion + 5 page Exhibit as Exhibit 1. The first page of the Exhibit is marked as p. 5 and comes right after p. 6 of the motion. Please mark that page of the exhibit as "EXHIBIT 1." Thank you,

From: Dr. Edward Ronwin, FAX No. 970-224-3838

To: The persons and entities who will be receiving this FAX listed on p. 6 of the enclosed Motion.

Date: August 1, 2006

There are 11 pages in this FAX. Six are part of the text of the motion and 5 are part of Exhibit 1 to the motion.

Edward Ronwin, PhD, JD