Exhibit A

Depo., he dodges a question on whether the chemical structure of Baycol is such that it can cause negative interactions with various tissues in the body.

RONWIN was fed up and disgusted with the outrage perpetrated by the concerted action of PILKINGTON and HIATT and could really do nothing, in the circumstances, but give way. PILKINGTON knew that the Court has allowed depositions such as that of HIATT to proceed for at least four (4) hours and he should have so informed HIATT; instead, he gave HIATT the idea that HIATT can decide to leave after two hours, during which PILKINGTON had the lion's share of the interrogation time; and HIATT aided him with false assertions that he was confused, the question is too broad, he can't answer the question, all of which are sheer falsehoods.

PILKINGTON started his interrogation on p. 5 and went to p. 68, when RONWIN's cross examination began. Yet, by p. 89, ls. 16 to 18, HIATT's office aide entered to announce 10:00 a.m.

**COMMENTS ON TORKELSON'S DEPOSITION:**

On June 19, 2006 at 1:00 p.m., the Court Reporter, PILKINGTON and RONWIN assembled at TORKELSON's office in Cheyenne, Wyoming. Prior to this deposition, PILKINGTON, or his office aides, told TORKELSON or his office personnel that the deposition would take 2 hours. PILKINGTON started the interrogation and took at least an hour before RONWIN could start his cross examination.

On FIVE occasions, TORKELSON gave RONWIN 5 or 10 more minutes and threatened to leave the deposition at the end of those time limits:

p. 72, l. 25 to p. 73, l. 5: TORKELSON: "I ought to tell you, this is scheduled for two hours and I have another appointment in 10 minutes. I don't mean to rush you, if we're going to have to do much longer than that, we're going to have to reschedule."
RONWIN: "We're going to have to, because I've got questions here."



SCANNED
AUG 02 2006
U.S. DISTRICT COURT MPLS

PILKINGTON had started his interrogation on p. 5; RONWIN started on the bottom of p. 51. Yet, by p. 72, TORKELSON starts to threaten to end the deposition by walking out. Judge DAVIS can he do that in a courtroom trial?

p. 78, ls. 21-22: TORKELSON: "I'm just telling you my time constraints." Let's move it along, please."

p. 88, ls. 18-19: TORKELSON: "I don't know. I've got - I'm going to give you about 10 minutes and then I'm out of here."

p. 89, l. 24 to p. 90, l. 5: TORKELSON: "It's made of many different types. Now if you want to go through the pathophysiology, the anatomy, the microanatomy of a tendon, we could sure as hell do it, but I don't have the time, and it doesn't appear to me to be relevant and you're making me a little angry, to tell the truth. You got 10 minutes and then I'm out of here."

p. 98, ls. 12: TORKELSON: "I'll give you five minutes."

p. 99, ls 4-6: TORKELSON: "And within the five minutes, I'm happy to do that."

Fed.R.Civ.P. 26 does not give the deponent the right to decide when a deposition is over or how long it can run. This Court announced that depositions, such as TORKELSON's can run up to four (4) hours, and that more time can be had if the court approves. TORKELSON's continued threats to leave the deposition before it was finished interfered with proper interrogation because it caused unnecessary annoyance, argument and flustered RONWIN unnecessarily interrupting his chains of thought and objectives in his interrogation of TORKELSON. Meanwhile, PILKINGTON, who was not continually badgered and threatened as to time by TORKELSON, made no effort to stop TORKELSON's abuse and outrage.

But that is not all. Like HIATT, TORKELSON frequently dodged questions and never provided answer for some. To keep this motion as short as possible, one example is presented below:



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Aug. 01 2006 05:31AM P9

p. 96, l. 2-3: RONWIN: "Yeah, but can you rule out other possible causes?"
p. 96, ls. 4-6: TORKELSON: "I can't think of any other possible cause. Yes, I would rule out Bacal, (the reporter kept misspelling Baycol), as a cause, if that's your question.
p. 96, l. 7: RONWIN: "You would?"
p. 96, l. 8: TORKELSON: "Yes."
p. 96, l. 9: RONWIN: "On what grounds?"
p. 96, l. 10: TORKELSON: "Because Bacal doesn't cause this."
p. 96, l. 11: RONWIN: "How do you know?"
p. 96, ls. 12-13: TORKELSON: "Based on my experience as an orthopedic surgeon."
p. 96, ls. 14-17: RONWIN: "Uh-huh. And have you had -- how many patients have you had that had taken Bacal for sure and then you had to do a rotate -- you found a rotator cuff tear for sure?"
p. 96, ls. 18-19: TORKELSON: "As I'm standing here -- as I'm sitting here now, I can't give you any example one way or another."
p. 96, ls. 20-21: RONWIN: "Okay. Then how do you know Bacal wasn't the cause?"
p. 96, ls. 22-24: TORKELSON: "I've answered the question. My opinion is this is a degenerative tear based on experience of 30 years training as an orthopedic surgeon."
p.96, l. 25: RONWIN: "That's fine."
p.97, l. 1-2: TORKELSON: "And based on literature with regard to Bacal, but I'm not going to argue with you about it."
p.97, ls. 3-4: RONWIN: "I'm not asking you to argue. I'm asking [how - left out by reporter] you can you rule out any other cause?"
p.97, ls. 5-7: PILKINGTON: Objection. Asked and answered. He said he ruled out other -- in his opinion, the most probable cause is degenerative change."
p.97, l. 8: RONWIN: "That's his opinion."
p.97, l. 9: PILKINGTON: "That's what your asking."
p.97, ls. 1--14: RONWIN: "Yeah, but I asked how did he rule out other causes? And then he says, well, there was no physical injury. And then he says he rules out Bacal, so I asked him how he can rule out Bacal, and he doesn't give us an answer."
p.97, l. 15: PILKINGTON: "Oh, he did."
p.97, ls. 16-17: RONWIN: "No, he didn't. This is more like what he would like --"
p.97, ls. 18-19: TORKELSON: "Mr. -- we are pretty much done."
p.97, ls. 20-21: RONWIN: "Yeah, this is more like what he would like to rule out."
p.97, l. 22: PILKINGTON: "Are you done?"
p.97, ls. 23-24: RONWIN: "Well, I suppose, but I'd really like to go into that Bacal thing."

RONWIN, speaking now as an expert in Biochemistry and Molecular Biology (the latter being merely biochemistry concentrated on chemical reactions and related matters in living things), Baycol is a chemical with great propensity to react with cell membranes of all sorts of cells, e.g., muscle, nerve, chondrocytes (tendon cells), etc., and can tear up non-cellular components



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Aug. 01 2006 05:32AM P10

of body tissues such as cartilage and the protein collagen which gives much of cartilage its form and strength. It is that subject that RONWIN was trying to get at, but was thwarted by TORKELSON's dodge. That he has been an orthopedic surgeon for 30 years, does not answer the questions on whether or not Baycol can cause cartilage and collagen destruction and hence rotator cuff tears, as well as other body tissue damages.

But TORKELSON's offenses went further. At the "end" of the deposition, TORKELSON left the room and took with him X-ray film that he was subpoenaed to bring and which was used in the deposition but had not yet been marked. It is now exhibit 4 to the deposition. That occurred only after considerable argument with TORKELSON's office.

Before leaving the deposition room, it became obvious that TORKELSON took the X-ray film. Brief search in his office area was not successful. The next day, Tues., June 20, 2006, RONWIN called TORKELSON's office and spoke to the manager. She said she would talk with TORKELSON and get back to RONWIN. If she did, she did not leave a message on RONWIN's telephone line. RONWIN contacted the manager again on Wed., June 21, 2006. The manager said that TORKELSON would not release the X-ray film. RONWIN explained that the X-ray film was part of a court record, and that it was unlawful to take any part of a court record without court knowledge and permission. The manager said she would talk to TORKELSON again and latter that day informed RONWIN that RONWIN could have copies of the X-ray film if RONWIN paid for the copies. RONWIN would not pay for copies of what was part of a court record unlawfully taken by TORKELSON and which RONWIN wanted to use on Fri., June 23, 2006 in the scheduled deposition of KNAUER and then return same to the court reporter.

RONWIN asked PILKINGTON, who clearly had a good rapport with TORKELSON, to call

TORKELSON's office and to inform them that they had to release the X-ray film to the court reporter. PILKINGTON refused. The next day, Thurs., June 22, 2006, RONWIN again asked PILKINGTON to intervene. This time PILKINGTON said he had intervened successfully because he decided that he would like to use the X-ray film with an expert for BAYER. Regardless of whether or not he had use for the X-ray film, PILKINGTON had a duty to demand the return of the X-ray film to the court reporter from whom RONWIN wished to borrow the film for KNAUER's deposition, but refused to do his duty.

**COMMENTS ON THE SERVI DEPOSITION:**

At the time of preparation of this motion, the SERVI deposition transcript has not been made available. On June 20, 2006 at 9:00 a.m., the court reporter, PILKINGTON, RONWIN and SERVI convened for the purpose of taking SERVI's deposition. PILKINGTON went on for about an hour, then it was RONWIN's turn. Shortly after RONWIN started, SERVI explained that she had a patient appointment at 11:00 a.m., and clearly was playing the same game as TORKELSON, but without threats to get up and leave or "giving us 10 minutes." PILKINGTON, or his office staff, has told SERVI that the deposition would take no more than two (2) hours. RONWIN was not privy to the original arrangements. SERVI also dodged questions particularly on the action of Baycol similar to TORKELSON's dodge.

**COMMENTS ON THE KNAUER DEPOSITION:**

At 1:30 p.m., June 23, 2006, the court reporter, PILKINGTON and RONWIN assembled in a "Board Room" of the large Poudre Valley Harmony Medical facility in Fort Collins, Colorado. KNAUER entered the room slightly after 1:30 p.m. To start the deposition and with PILKINGTON's acquiescence, RONWIN read some preliminary information to KNAUER to



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Aug. 01 2006 05:33AM P12