# Exhibit 1

**H**

**Briefs and Other Related Documents**

United States Court of Appeals,
District of Columbia Circuit.
Samuel G. **KOORITZKY**, Appellee/Cross-Appellant,
v.
Alexis M. HERMAN, Secretary, United States Department of Labor,
Appellant/Cross-Appellee.
**Nos. 98-5424, 98-5438.**

Argued May 4, 1999.
Decided June 18, 1999.

After immigration law attorney obtained Court of Appeals ruling invalidating Department of Labor rule, 17 F.3d 1509, attorney sought award of attorney fees under the Equal Access to Justice Act (EAJA). The United States District Court for the District of Columbia, 6 F.Supp.2d 1, 6 F.Supp.2d 13, awarded fees for work done by attorney and for work done by others who assisted attorney. Secretary of the Department appealed, and attorney cross-appealed. The Court of Appeals, Sentelle, Circuit Judge, held that: (1) attorney-litigant who proceeds pro se is not entitled to award of attorney fees under EAJA's fee-shifting provision; (2) attorney could not recover "expert witness" expenses for time he allegedly spent acting as immigration law expert in his own case; and (3) attorney could not recover fees for work performed by co-counsel, absent evidence of genuine attorney-client relationship.

Reversed.

West Headnotes

**[1] United States 147(7)**
393k147(7) Most Cited Cases
Attorney-litigant who brought pro se action challenging Department of Labor rule was not entitled to award of attorney fees under fee-shifting provision of Equal Access to Justice Act (EAJA), as EAJA's reference to "attorney" suggested necessity of agency relationship, and denial of fees furthered policy of encouraging procurement of objective counsel to pursue claims against government for violation of federal rights. 28 U.S.C.A. § 2412(d)(1)(A), (d)(2)(A).

**[2] United States 147(7)**
393k147(7) Most Cited Cases
Attorney-litigant who brought pro se action challenging Department of Labor rule was not entitled to recover "expert witness" expenses, under Equal Access to Justice Act (EAJA), for time attorney allegedly spent acting as immigration law expert in his own case. 28 U.S.C.A. § 2412(d)(1)(A), (d)(2)(A).

**[3] United States 147(7)**
393k147(7) Most Cited Cases
Attorney-litigant who brought pro se action challenging Department of Labor rule could not recover attorney fees for work performed on his behalf by other attorneys, under Equal Access to Justice Act (EAJA), even though co-counsel were not employed by his law firm, as attorney-litigant had no genuine attorney-client relationship with other attorneys, in view of fact that none of co-counsel entered appearance during merits phase of case, no formal representation agreement existed, and attorney-litigant was not billed for services of co-counsel. 28 U.S.C.A. § 2412(d)(1)(A), (d)(2)(A).

**[4] United States 147(4)**
393k147(4) Most Cited Cases
A pro se attorney-litigant seeking to obtain attorney fees under the Equal Access to Justice Act (EAJA) for work performed by co-counsel must demonstrate that his colleagues are situated to offer independent legal advice and assistance. 28 U.S.C.A. § 2412(d)(1)(A), (d)(2)(A).

**[5] United States 147(4)**
393k147(4) Most Cited Cases
While Equal Access to Justice Act (EAJA) litigant need not, in every instance, show that each attorney for whom he is entitled to counsel fees entered an appearance in the case, such fees must be for a professional who has in fact acted in an attorney-client relationship with the fee claimant in the relevant EAJA litigation. 28 U.S.C.A. § 2412(d)(1)(A), (d)(2)(A).

***1316 **269** Appeals from the United States District Court for the District of Columbia (Nos. 91cv003011, 91cv03011).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Michael J. Ryan, Assistant U.S. Attorney, argued the cause for appellant/cross-appellee. With him on the briefs were Wilma A. Lewis, U.S. Attorney, R. Craig Lawrence, Assistant U.S. Attorney, and Vincent C. Costantino, Counsel, U.S. Department of Labor.

Christopher A. Teras argued the cause and filed the briefs for appellee/cross-appellant. Samuel G. Kooritzky entered an appearance.

Before: GINSBURG, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellant Alexis Herman, Secretary of the Department of Labor ("DOL" or "Department"), seeks reversal of the district court's award of attorney fees under the Equal Access to Justice Act ("EAJA") to Appellee Samuel G. Kooritzky. Kooritzky cross-appeals, alleging that the district court committed errors that resulted in an unwarranted reduction in the amount of attorney fees he was awarded. We conclude that an attorney acting *pro se,* such as Kooritzky, is not entitled to recover attorney fees under the EAJA. We therefore reverse the district court's award of fees, and conclude that Kooritzky's objections to the amount of fees awarded are moot.

I. BACKGROUND

Kooritzky, an immigration law attorney, commenced an action *pro se* in November 1991 against the Secretary of Labor, challenging promulgation of an "interim final rule" by DOL which terminated the right of employers to substitute one immigrant applicant for another in the labor certification process. The district court ruled in DOL's favor, but we reversed, concluding that DOL had promulgated its rule without adequate notice and comment. *Kooritzky v. Reich,* 17 F.3d 1509 (D.C.Cir.1994).

After prevailing on the merits, Kooritzky sought to recover attorney fees from the Department. Kooritzky asserted that, in addition to his own efforts, he received assistance from attorneys Christopher Teras, M. Sean Purcell, and Tae Kim, and law clerk Thomas Moore. None of these individuals, however, had entered an appearance on Kooritzky's behalf during the merits phase of the case.

On March 1, 1995, Kooritzky moved for an award of attorney fees of $427,662 under the EAJA, 28 U.S.C. § 2412(d)(1)(A), to compensate him for his and his colleagues' work. The district court referred the matter to a magistrate judge for a recommendation regarding the amount of attorney fees, if any, Kooritzky was entitled to recover. After seven days of hearings, the magistrate judge recommended that Kooritzky be awarded $31,798.71 for his own work only. Joint Appendix at 18-59. The magistrate judge concluded that Kooritzky had no representation agreement with any of his alleged co-counsel and, as a result, could not recover their attorney fees.

Both sides filed objections to the magistrate's report. On December 17, 1997, the district court issued a Memorandum on Attorney Fees, agreeing that Kooritzky was eligible for attorney fees and finding that he was entitled to the following amounts: $51,920.51 for Kooritzky, $47,689.03 for co-counsel fees, and $134.70 for photocopying charges. *Kooritzky v. Herman,* 6 F.Supp.2d 1 (D.D.C.1997) ("*Kooritzky I*"). The court ordered the parties to submit evidence relevant to the prevailing market rate for legal assistants working as independent contractors in the Washington, D.C. area in order to assess the amount Kooritzky could recover for the work of law clerk Moore.

On May 7, 1998, following further submissions by the parties, including Kooritzky's ****270 *1317** motion for reconsideration and DOL's opposition, the district court issued its final judgment on attorney fees. *Kooritzky v. Herman,* 6 F.Supp.2d 13 (D.D.C.1998) ("*Kooritzky II*"). The court directed that DOL pay Kooritzky the following fees by June 15, 1998: $55,992.06 for Kooritzky, $82,754.98 for co-counsel fees, and $134.70 for photocopying expenses.

On May 21, 1998, DOL moved for reconsideration based on an intervening decision by this court, *Burka v. United States Department of Health and Human Services,* 142 F.3d 1286 (D.C.Cir.1998), in which we affirmed a decision denying attorney fees under the Freedom of Information Act ("FOIA") to a *pro se* attorney for his work and the work of his colleagues. Our decision in *Burka* was based on our reading of the Supreme Court's decision in *Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). In *Kay,* the Court ruled that the word "attorney" in the fee-shifting provision of the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, assumes an agency relationship, and therefore precludes recovery of attorney fees for work done by an attorney acting *pro se.* In *Burka,* we held that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reasoning of *Kay* compelled denial of attorney fees to a lawyer acting *pro se* under the similar fee-shifting provision in FOIA. 142 F.3d at 1288-89. On June 9, 1998, the district court denied DOL's motion, concluding that there were differences between FOIA and EAJA that counseled against application of the *Kay* decision in EAJA cases. The parties subsequently filed these appeals.

II. ANALYSIS

The Department challenges the district court's award of attorney fees for both (1) Kooritzky's own work and (2) the work of Kooritzky's co-counsel. Since the analysis for the two categories of fees differs, we address them separately.

*A. Attorney Fees for Work Performed by Kooritzky*

[1] DOL argues that the district court erred in awarding attorney fees to Kooritzky since he was acting *pro se*. In particular, DOL contends that the district court mistakenly relied upon this court's decision in *Jones v. Lujan,* 887 F.2d 1096 (D.C.Cir.1989), allowing recovery of attorney fees by a *pro se* attorney-litigant under the EAJA. *See Kooritzky I,* 6 F.Supp.2d at 3. DOL submits that our decision in *Jones* was implicitly overruled by the Supreme Court in *Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), disallowing recovery of attorney fees to *pro se* plaintiffs under the fee-shifting provision found in 42 U.S.C. § 1988. Kooritzky contends that the district court correctly relied on this court's decision in *Jones,* which he asserts remains the controlling law of this circuit despite the Supreme Court's subsequent decision in *Kay.* He argues that the *Kay* opinion was limited to cases brought under the Civil Rights Attorney's Fees Awards Act and that, while *Kay* resolved a "statutory ambiguity" by examining the specific legislative history of that Act, the *Jones* holding was based on the clear and unambiguous language of the EAJA. Upon review, we conclude that the fee-shifting provision of EAJA does not differ in any material way from the statutes construed by the Supreme Court in *Kay* and by this court in *Burka.* We therefore hold that our decision in *Jones* has been overruled by the Supreme Court, and that the district court erred in awarding fees to the *pro se* litigant under EAJA.

In the United States, fee shifting is a departure from the norm. In the general run of litigation, the "American rule" dictates that each party to a lawsuit bears his own attorney fees. *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Congress has specified exceptions to this American rule in a number of statutory schemes in the form of fee-shifting provisions which allow recovery of attorney fees ***1318 **271** by a "prevailing party." *See West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 89, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) (noting that "[a]t least 34 statutes in 10 different titles of the United States Code explicitly shift attorney's fees *and* expert witness fees"). The governing fee-shifting statute for EAJA awards is 28 U.S.C. § 2412(d)(1)(A):

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The EAJA elsewhere defines "fees and expenses" to include "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees." *Id.* § 2412(d)(2)(A).

In *Kay v. Ehrler,* the Supreme Court considered the entitlement to fees of a lawyer litigating *pro se* in a civil rights action. The Civil Rights Attorney's Fees Awards Act provided that in such an action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). After noting that it was already fixed law "that a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees," *Kay,* 499 U.S. at 435, 111 S.Ct. 1435 (emphasis in original), a unanimous Supreme Court held that the same rule applied to a *pro se* litigant who *is* a lawyer. While the Court allowed that neither the text nor the legislative history of the statute provided "a clear answer," it firmly declared that "the word 'attorney' assumes an agency relationship, and it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award under § 1988." *Id.* at 435- 36, 111 S.Ct. 1435. In so declaring, the Court cited the definition of the word "attorney" as " '[O]ne who is legally appointed by another to transact business for him; *specif:* a legal agent qualified to act for suitors

and defendants in legal proceedings.' " Id. at 436 n. 6, 111 S.Ct. 1435 (quoting *Webster's New Collegiate Dictionary* 73 (1975)). The Court therefore concluded that the *pro se* litigant, even though a qualified lawyer, is not entitled to attorney fees for his own time, but may only collect fees for work performed by third parties employed to act as his attorneys at law in the litigation.

Although the definitional support for the holding might have been sufficient, the Court buttressed its conclusion with an examination of the purpose of the statute. While recognizing that the fee-shifting provision "was no doubt intended to encourage litigation protecting civil rights," the Court further noted that "it is also true that its more specific purpose was to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." *Id.* at 436, 111 S.Ct. 1435. There is no limiting language in the *Kay* opinion to make us believe that the Supreme Court intended its reasoning to apply only to the specific statute before it. Other fee-shifting statutes also speak of "attorney's" fees. The definitional implication of an agency relationship in the EAJA provision is therefore just as strong as in the Civil Rights Act. Therefore, in *Burka,* we had no difficulty in holding that the fee-shifting provision of the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E) (1994), was governed by *Kay* and that a *pro se* attorney-litigant pursuing a remedy under FOIA, like his counterpart in a civil rights action, was not entitled to an award of attorney fees. As the Supreme Court had done in *Kay,* we noted in *Burka* that a ***1319 **272** contrary rule would be counter to one purpose of the statute-- that is, " 'to encourage potential claimants to seek legal advice before commencing litigation.' " *Burka,* 142 F.3d at 1289 (quoting *Kay,* 499 U.S. at 435 n. 4, 111 S.Ct. 1435) (other citations and internal quotations omitted).

As both the *Burka* and *Kay* opinions further note, "although a *pro se* attorney possesses legal expertise, he is unlikely to have the 'detached and objective perspective necessary to fulfill the aims of the Act.' " *Burka,* 142 F.3d at 1289 (quoting *Kay,* 499 U.S. at 435 n. 4, 111 S.Ct. 1435) (other internal quotations and citations omitted). Thus, *Burka* reflects a conviction that nothing in the Supreme Court's *Kay* opinion limits its reasoning to the specific facts or statute before it. Nor does anything in the reasoning of *Kay* or *Burka* draw a line excluding the EAJA from the analysis controlling the application of the other fee-shifting statutes.

The EAJA uses precisely the same wording--"attorney's fees"--construed to imply the necessity of an agency relationship in the other acts. Nothing in the statute defeats that implication. Not only does this similarity in wording suggest that the EAJA, like the FOIA, is controlled by the same reasoning applied by the Supreme Court to the Civil Rights Act, the Supreme Court itself has noted in the past the similarity between the fee-shifting provisions of the EAJA and Section 1988, observing that the EAJA is "the counterpart to § 1988 for violation of federal rights by federal employees." *See West Virginia Univ. Hosps.,* 499 U.S. at 89, 111 S.Ct. 1138; *see also Independent Fed'n of Flight Attendants v. Zipes,* 491 U.S. 754, 758 n. 2, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989) ("[F]ee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike.").

The district court, faced with an apparently controlling precedent from this court in *Jones* compelling one result and a later decision of the Supreme Court arguably but not directly overruling that decision, concluded that Kooritzky "presented a persuasive argument that the [EAJA] differs in both language and purpose from the attorneys' fee provisions of the Civil Rights Act and the Freedom of Information Act." *Kooritzky I,* 6 F.Supp.2d at 3. We cannot agree. The relevant fee-shifting provisions of the Civil Rights Attorney's Fees Awards Act and the EAJA are the same in one controlling particular: both provide for recovery of "attorney's fees." Thus, a straightforward analysis of the statutory text is sufficient to conclude that, as in the case of the Civil Rights Attorney's Fees Awards Act provision, a *pro se* attorney-litigant may not recover attorney fees under the comparable fee-shifting provision of the EAJA.

Neither is there a difference of purpose in the statute that impels us toward any different result. In concluding that the plaintiff had "presented a persuasive argument that the [EAJA] differs in both language and purpose from the attorneys' fee provision of the Civil Rights Act and the [FOIA]" construed in *Kay* and *Burka,* the district court cited *Spencer v. NLRB,* 712 F.2d 539, 550 (D.C.Cir.1983), as "enumerating purposes of the Equal Access to Justice Act." *Kooritzky I,* 6 F.Supp.2d at 3. We have reviewed the goals we set forth in *Spencer*: (1) to provide relief to victims of abusive governmental conduct without assuming "enormous financial burdens"; (2) "to reduce the incidence of such abuse"; and (3) to "expos[e] a greater number of governmental actions to adversarial testing." 712 F.2d at 550. We find none of these to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

inconsistent with the corresponding goals of the Civil Rights Act underlying the fee-shifting provision of 42 U.S.C. § 1988. Indeed, we must echo the Supreme Court's declaration in *West Virginia University Hospitals* that EAJA is in a sense a counterpart of the civil rights statute. In neither instance does the general goal of encouraging vindication of rights warrant an award of attorney fees where no attorney-client relationship exists and where the goal of the filtering of ***1320 **273** litigation through an independent professional is not met.

In *Kay,* the Court determined that a lawyer who appears *pro se* is "deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." 499 U.S. at 437, 111 S.Ct. 1435. Thus, the Court concluded that "[t]he statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." *Id.* at 438, 111 S.Ct. 1435.

The same policy goals undergird the EAJA. As this court has observed, "[b]oth the Civil Rights Attorney's Fees Award Act ... and the EAJA were designed to supplement a host of more specific provisions allowing for the award of attorneys' fees in suits brought under statutes granting or protecting various federal rights." *Spencer,* 712 F.2d at 545 n. 18; *see also* *Celeste v. Sullivan,* 988 F.2d 1069, 1070 (11th Cir.1992) ("The fee shifting provisions in section 1988 and in the EAJA serve the same purposes."). Like the Civil Rights Attorney's Fees Awards Act, the policy goals underlying the fee-shifting provision found in the EAJA support the conclusion that Congress sought to encourage the procurement of objective counsel to pursue claims against the government for violation of various federal rights. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9 (1980) (fee-shifting enacted to aid citizens for whom "the inability to recover attorney fees preclude[d] resort to the adjudicatory process"); *id.* at 12 (noting that under the EAJA, "fee shifting becomes an instrument for curbing excessive regulation and the unreasonable exercise of Government authority"). In doing so, Congress contemplated that attorney and client would be distinct individuals. *See id.* at 15 ("[T]he computation of attorney fees should be based on prevailing market rates without reference to the fee arrangements between the attorney and client."). Thus, as in *Kay,* our interpretation of the EAJA is consistent with underlying policy goals and congressional purpose.

Our prior applications of the Supreme Court's decision in *Kay* further support our ruling in this case. We have already held that the Supreme Court's holding in *Kay* extends beyond the Section 1988 context. In *Burka v. United States Department of Health and Human Services,* 142 F.3d 1286 (D.C.Cir.1998), we ruled that *pro se* plaintiffs could not recover attorney fees under the fee-shifting provision in FOIA. In doing so, we concluded that *Kay* overruled prior decisions of this court holding that a *pro se* attorney-litigant was entitled to recover attorney fees under the fee-shifting provisions of FOIA. *Id.* at 1288 (citing *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1366 (D.C.Cir.1977)). As a result of our analysis of the *Kay* decision, we concluded that "the Supreme Court intended its ruling to apply beyond section 1988 cases to other similar fee-shifting statutes, particularly the one in FOIA. It is, in short, impossible to conclude otherwise than that *pro se* litigants who are attorneys are not entitled to attorney's fees under FOIA." *Id.* at 1289; *see also* *Benavides v. Bureau of Prisons,* 993 F.2d 257, 259 (D.C.Cir.1993) (denying attorney fees under FOIA to a *pro se* non-attorney on the grounds that "the Supreme Court believes that the word 'attorney,' when used in the context of a fee-shifting statute, does not encompass a lay-person proceeding on his own behalf"). Thus, in *Burka,* we stated the position of this court that the Supreme Court's decision in *Kay* applies outside of the Section 1988 context, extending to all similarly-worded fee-shifting provisions. We reaffirm that holding today.

In so ruling, we join a number of other circuits that have ruled that *Kay* compels ***1321 **274** the conclusion that *pro se* plaintiffs may not recover attorney fees under the EAJA. In *SEC v. Waterhouse,* the Second Circuit applied *Kay* to bar recovery of attorney fees by a *pro se* attorney-litigant, observing that the "agency relationship [is absent] in the *pro se* context." 41 F.3d 805, 808 (2d Cir.1994). Similarly, in *Celeste v. Sullivan,* the Eleventh Circuit concluded that because the fee-shifting provisions in the Civil Rights Attorney's Fees Awards Act and the EAJA serve the same purposes, the Supreme Court's decision in *Kay* barred recovery of attorney fees under the EAJA by a *pro se* non-attorney. 988 F.2d 1069, 1070 (11th Cir.1992). Finally, in *Demarest v. Manspeaker,* the Tenth Circuit denied attorney fees under the EAJA to a *pro se* litigant, concluding that,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

like the Civil Rights Attorney's Fees Awards Act, the EAJA "attempts to enable meritorious litigation to take place, not to reward individuals who obtain legal redress." 948 F.2d 655, 656 (10th Cir.1991).

*B. "Expert Witness" Expenses*

[2] Not content to rest on his argument that this court's decision in *Jones* is controlling, however, Kooritzky further claims that he is entitled to recover fees under 28 U.S.C. § 2412(d)(2)(A) for time he spent acting as an immigration law "expert" in his own case. Kooritzky contends that the district court correctly found that he played a "dual role" in the litigation and that he both "participated in the advocacy role of an attorney" and "participated as an expert in immigration law as a supporter of his colleagues in the 'study ... and analysis' of the specialized immigration law and policy issues presented by this litigation." *Kooritzky I*, 6 F.Supp.2d at 4. Kooritzky extrapolates from this finding to the conclusion that he is entitled to recover fees for his work as an "expert witness" even if he is not entitled to recover "attorney fees" for the same work.

DOL argues that Kooritzky should not be allowed to "sidestep" his preclusion from recovering attorney fees by characterizing the fees as "expert" expenses. DOL observes that the district court agreed that this was a "routine APA case" and contends that therefore no expert studies were required and that "the substantial amounts of time wasted by plaintiff hardly qualify him for compensation as an expert." DOL Reply Brief at 2, 10. DOL also maintains that Kooritzky characterized the fees he claimed as attorney fees and that he cannot now claim that these amounts represent compensation for time he spent preparing the case as an expert witness.

We agree that a *pro se* attorney-litigant may not evade the prohibition against recovery of attorney fees under the EAJA by seeking to characterize himself as an "expert witness." The EAJA provides that litigants may recover "fees and other expenses" incurred in pursuing claims regarding alleged violations of various federal rights. Elsewhere, this phrase is defined as follows:

> "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees.

28 U.S.C. § 2412(d)(2)(A). On its face, therefore, the statutory language provides for the recovery of "reasonable expenses of expert witnesses" in addition to "reasonable attorney's fees." Unlike the term "attorney," the phrase "expert witness" arguably does not connote as readily the sort of agency relationship that would support a reading of the statute requiring that the litigant and expert witness be separate individuals before expenses may be awarded.

However, it is not at all unlikely that Congress intended that expert witnesses, like attorneys, should be distinct from litigants. EAJA with its net worth threshold, ***1322** *****275*** *see* 28 U.S.C. § 2412(d)(2)(B), apparently contemplates placing less solvent litigants facing the government as an adversary on a basis similar to the multimillionaire engaged in the same type of litigation. Appellee has shown us no precedent for a litigant, wealthy or otherwise, receiving witness fees, expert or plain, for his own litigation. Indeed, it would seem a strange incentive to provide witness fees not for the purpose of reimbursing a litigant for his out-of-pocket costs, but as salary for time spent as a witness in his own litigation. Moreover, as the Supreme Court noted in *Kay* "[e]thical considerations may make it inappropriate for [a *pro se* lawyer] to appear as a witness." *Kay*, 499 U.S. at 437 n. 9, 111 S.Ct. 1435 (citing the ABA Model Code of Professional Responsibility: "[t]he roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."). We find decidedly uncompelling an argument that we should enter a novel holding providing an incentive to tread that questionable ethical ground.

The rationale of *Kay* further counsels in favor of barring recovery of expenses incurred by a litigant acting as his own expert. The Court in *Kay* noted that Congress in enacting various fee-shifting provisions sought to encourage plaintiffs to hire objective outside counsel:

> A rule that authorizes awards of counsel fees to *pro se* litigants--even if limited to those who are members of the bar--would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case.

499 U.S. at 436, 111 S.Ct. 1435. By analogy, the same congressional policy is served by a rule that encourages plaintiffs to retain objective outside experts. Thus, Kooritzky's claim for fees, whether characterized as "attorney fees" or "expert expenses"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

must fail.

In any event, the statutory language also makes plain that "attorney fees" and expert witness expenses are separate and distinct items of expense. *See West Virginia Univ. Hosps.,* 499 U.S. at 92, 111 S.Ct. 1138 (concluding that under the background against which Congress enacted the fee-shifting provision of the Civil Rights Attorney's Fees Awards Act, "[e]xpert fees were regarded not as a subset of attorney's fees, but as a distinct category of litigation expense"). Allowing a *pro se* attorney-litigant to recover fees for legal services rendered during the course of litigation by characterizing them as "expenses of expert witnesses" or the "reasonable cost" of various studies, rather than "attorney fees" would vitiate the holding of *Kay* as applied to the EAJA and would make the determination of fee eligibility rest solely on the semantics of the litigant's fee petition. Therefore, we hold that a lawyer-litigant acting *pro se* may not recover fees for acting as an "expert witness" in his own case, at least, where the "expertise" possessed by the litigant is essentially legal in nature.

Such a rule is particularly warranted in a case such as this where the legal "expertise" claimed by the litigant is of limited relevance to the subject matter of the underlying suit. Kooritzky's alleged legal expertise consists of his knowledge of immigration law. His suit, however, challenged a DOL regulation on the ground that it was promulgated in violation of the notice and comment provisions of the Administrative Procedure Act--an issue of administrative, not immigration, law. Moreover, the record contains evidence that Kooritzky lacked the very expertise that was most required in this case--experience trying administrative law cases in the federal courts. Indeed, the district court observed that Kooritzky "admitted [his] absence of court experience." *Kooritzky,* 6 F.Supp.2d at 8. Such circumstances*1323 **276 demonstrate the danger of a holding that would allow attorney-litigants to evade the Court's pronouncement in *Kay* by proclaiming themselves legal "experts" and thereby allowing them to recover attorney fees relabeled as "expert expenses."

*C. Attorney Fees for Work Performed by Kooritzky's "Co-Counsel"*

[3] In addition to seeking reversal of the district court's award of attorney fees for legal work performed by Kooritzky in his own case, DOL argues that Kooritzky should not have been permitted to recover attorney fees for the work of his colleagues. The Department relies primarily on our ruling in *Burka* that a *pro se* attorney-litigant must demonstrate that he and his co-counsel have a "genuine attorney-client relationship" and that his co-counsel are exercising "independent" judgment before he may be awarded attorney fees for their work under the EAJA. 142 F.3d at 1291-92. DOL argues that the rationale of *Burka* applies in this case even though Kooritzky's co-counsel are not employees of his law firm, as were the attorneys in *Burka.* DOL Reply Brief at 12. Kooritzky responds that he need only demonstrate that a valid attorney-client relationship existed between him and his co-counsel. While admitting that he never had a written agreement with any of his co-counsel, Kooritzky asserts that no such agreement is necessary for there to be a valid attorney-client relationship.

DOL is correct that our analysis in *Burka* is controlling. Our holding in *Burka* dictates that a *pro se* attorney-litigant must demonstrate that he and his co-counsel have a "genuine attorney-client relationship" and that his co-counsel are "independent" before attorney fees may be awarded. 142 F.3d at 1291-92. We concluded that this requirement followed from the Supreme Court's ruling in *Kay* that the term "attorney" used in a similarly-worded fee-shifting statute " 'assumes an agency relationship' " that bars recovery of attorney fees for work performed by all those who are not "independent third part[ies]." *Id.* at 1291 (quoting *Kay,* 499 U.S. at 435-36, 437, 111 S.Ct. 1435). Adhering to the Supreme Court's reasoning we denied recovery of fees to a *pro se* attorney-litigant who (1) controlled the legal strategy and presentation in his own case, (2) was the only attorney to enter an appearance in the case, and (3) directed the work of his colleagues who were employed by the attorney-litigant's law firm. *Id.* We distinguished cases relied upon by the plaintiff in *Burka* in which *pro se* litigants were allowed to recover fees, noting:

> In all three cases, the court awarded attorney's fees to a *pro se* attorney-litigant for the work of co-counsel. Yet, as the district court noted below, all three cases involved attorneys who were not affiliated with the litigant's law practice. As a result, these outside counsel, unlike the colleagues employed by Burka, enjoyed a genuine attorney-client relationship with the litigants, were situated to offer "independent" legal advice and assistance, and were presumably paid for their services by the attorney-litigants involved. This was not true here. Instead, Burka controlled the legal strategy and presentation, he was the only attorney to enter an appearance in the case, and his colleagues worked under his direction. These are material

differences.

*Id.* We concluded that, based on these factors, co-counsel in *Burka* lacked the requisite independence necessary for recovery of attorney fees under the fee-shifting provision found in FOIA.

[4] The same analysis applies under the EAJA. A *pro se* attorney-litigant seeking to obtain attorney fees under the EAJA for work performed by co-counsel must demonstrate that his colleagues are situated to offer "independent" legal advice and assistance. As we demonstrated above, the Supreme Court's conclusion in *Kay* that the term "attorney" contemplates an agency relationship between a litigant and an independent lawyer applies not ***1324 **277** only to the fee-shifting provisions of the Civil Rights Attorney's Fees Awards Act, but to all similarly-worded fee-shifting provisions, including that found in the EAJA.

Applying the test we outlined in *Burka,* we conclude that Kooritzky has not shown that his co-counsel evidenced the independence necessary for recovery of fees under the EAJA. We further conclude that Kooritzky and his co-counsel did not enjoy a genuine attorney-client relationship for purposes of the fee-shifting provision of the Act. As the district court noted, the relationship between Kooritzky and his "co-counsel" was "unusual." *Kooritzky I,* 6 F.Supp.2d at 5. As in *Burka,* none of Kooritzky's co-counsel entered an appearance on his behalf during the merits phase of the case. The only appearance by co-counsel on behalf of Kooritzky occurred after Kooritzky had prevailed on the merits when the district court was determining the amount of attorney fees, if any, Kooritzky was entitled to receive. There was no formal agreement between Kooritzky and his colleagues concerning fees for legal services rendered. None of Kooritzky's alleged co-counsel ever billed him for legal services rendered. Moreover, his co-counsel did not even keep accurate records of the time they allegedly spent on Kooritzky's case. After reviewing the evidence, the magistrate judge observed that " '[n]obody expected to get paid.' " *Id.* (citing Magistrate Report and Recommendation at 39).

Indeed, as Kooritzky's counsel acknowledged during oral argument, it was only after Kooritzky had prevailed on the merits that he and his colleagues realized that they might be able--in his words--to "stick the government" for attorney fees. Once this realization dawned upon them, they proceeded to reconstruct the hours spent working on this case, leading to protracted litigation below concerning the amount of fees to which they were entitled. *See id.* at 8 (noting that "plaintiff's inexperience and disorderly recordkeeping imposed an enormous and unnecessary burden on the Court and the Magistrate Judge"). In engaging in such practices, Kooritzky and his colleagues ignored the admonition of the Supreme Court in *Hensley* that "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437, 103 S.Ct. 1933. While the facts in this case differ from those in *Burka* in that Kooritzky's co-counsel, unlike the attorneys in *Burka,* are not employed by his law firm, this fact alone is not dispositive.

[5] We are not holding that in every instance an EAJA litigant must show that each attorney for whom he is entitled to counsel fees entered an appearance in the case. We do however hold that such fees must be for a professional who has in fact acted in an attorney-client relationship with the fee claimant in the relevant EAJA litigation. Kooritzky has not made the necessary showing. Did the lawyers for whom he claims recompense receive or contemplate fees? According to the record they did not. Did they appear for him in the merits phase of the case? According to the record they did not. Did they enter an attorney-client relationship with reference to this litigation? So far as the record shows, they did not. They may have counseled him, they may have advised him, but they did not provide the function recognized in *Kay v. Ehrler* of "filtering out meritless claims." 499 U.S. at 437, 111 S.Ct. 1435. The litigant himself acted as sole trial counsel. He was the final filter. He, like the FOIA litigant in *Burka,* "controlled the legal strategy and presentation," and "was the only attorney to enter an appearance," at least in the merits phase of the case. 142 F.3d at 1291. Like the litigant in *Burka,* he cannot collect attorney fees for professionals who did not act as his attorneys. [FN1]

FN1. The exact status of the law clerk "Thomas Moore" for whom Kooritzky claims fees is the matter of gravest confusion in the record. Apparently he was a student for the bar under a "reading law" method of eligibility in a state adjoining the District of Columbia. So far as we can tell, he was neither eligible for nor did he receive any sort of fees.

*D. Kooritzky's Cross-Appeal*

Having concluded that Kooritzky may not recover attorney fees for work performed ****278 *1325** by either himself or his colleagues, we need not reach

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the merits of Kooritzky's objections to the amount of the fee award. Specifically, Kooritzky argues that the district court erred by (1) failing to increase his attorney fee award to compensate him for "special factors" permitted under 28 U.S.C. § 2412(d), (2) failing to permit him to submit a supplemental fee request, and (3) refusing to allow him to submit a fee petition for work conducted in preparation for hearings before the magistrate judge. However, because Kooritzky is not entitled to any attorney fees under the EAJA, his objections to the amount of the fee award are moot.

III. CONCLUSION

For the foregoing reasons, we hold that a *pro se* attorney-litigant may not recover attorney fees under EAJA, 28 U.S.C. § 2412(d)(1)(A). We further hold that a *pro se* attorney-litigant may not recover attorney fees under the EAJA for the work of his co-counsel where the attorney and his colleagues lack a genuine attorney-client relationship. Accordingly, the district court's award of fees is reversed.

178 F.3d 1315, 336 U.S.App.D.C. 268

**Briefs and Other Related Documents** (Back to top)

- 98-5438 (Docket) (Aug. 28, 1998)

- 98-5424 (Docket) (Aug. 20, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit 2

# DECLARATION OF JEFFREY R. PILKINGTON

1. I am a Partner in the law firm of Davis Graham & Stubbs LLP, and maintain an office at 1550 Seventeenth Street, Suite 500, Denver, Colorado 80202. The firm of Davis Graham & Stubbs LLP has been retained to assist in the representation of Defendant Bayer Corporation in the above-captioned matter, which is pending in this Court.

2. I submit this Declaration in support of Bayer Corporation's Response to Plaintiff Edward Ronwin's "Motion Based on Fed. R. Civ. P. 11 Against Defendant Bayer Corp. and Demand for Oral Argument on Bayer's Motion to Compel or, in the Alternative, to Consider this Document as a Counter Reply to Bayer's Motion to Compel." The statements made herein come from personal knowledge of facts relating to this case.

3. Dr. Ronwin proffered himself as a putative expert in this matter, and Bayer Corporation sought to depose him in this context. I was charged with scheduling and ultimately taking Dr. Ronwin's expert deposition.

4. Dr. Ronwin agreed to be deposed on September 28, 2006. In reaching this agreement, Dr. Ronwin never demanded a fee for his deposition as a putative expert in this case. Accordingly, a notice of expert deposition was served on Dr. Ronwin. Ex. A, September 6, 2006 Letter and Notice of Expert Deposition.

5. In late August and early September, the parties were attempting to schedule the deposition of Dr. Paul Reyes, an expert witness retained by Dr. Ronwin. The parties, however, had difficulty with Dr. Reyes' fee and the protocol for Dr. Reyes' deposition.

For example, Bayer refused to pay for Dr. Reyes' deposition time consumed by Dr. Ronwin's lengthy questions.

6. In response to this dispute, Dr. Ronwin for the first time demanded that he be compensated for his deposition time. On September 6, 2006, Dr. Ronwin faxed me a letter that demanded $3,000 for four hours of his expert deposition with time beyond four hours to be payable pro rata based on that rate. Ex. B, September 6, 2006 Letter from Ronwin to Counsel for Bayer. Less than two hours later that same day, Dr. Ronwin sent me additional correspondence that increased his demand to $5,000 for four hours of his expert deposition with time beyond four hours to be payable pro rata based on that rate. Ex. C, September 6, 2006 Letter from Ronwin to Counsel for Bayer. Plaintiff reiterated his demand by correspondence on September 7, 2006. Ex. D, September 7, 2006 Letter from Ronwin to Counsel for Bayer.

7. In telephone conversations with Dr. Ronwin, he explained that he demanded the $5,000 fee because of the problems with Dr. Reyes' deposition. The $5,000 demand was identical to the fee demanded by Dr. Reyes, and Dr. Ronwin believed that he was entitled to the same fee. I informed Dr. Ronwin that Bayer Corporation refused his demand for payment. I also informed him that I would continue to work with him to resolve this dispute.

8. Nine days before his scheduled deposition, Dr. Ronwin informed me that he had fallen ill and may require hospitalization. He requested that the deposition be postponed until at least the week of October 2, 2006. I agreed to postpone his expert deposition. Ex. E, September 19, 2006 Letter from Counsel for Bayer to Ronwin. In

subsequent conversations, Dr. Ronwin requested that his deposition be postponed until at least the week of October 9, 2006, again due to illness. I again agreed to postpone his expert deposition.

9. On October 12, 2006, Dr. Ronwin presented me with a new demand for payment for his expert deposition testimony. He reduced his demand to $1,000. Ex. F, October 12, 2006 Letter from Ronwin to Counsel for Bayer. I again informed Dr. Ronwin that his demand for payment was refused, but that I would continue to try to resolve this dispute in a mutually agreeable manner.

10. Throughout October and early November, I had several conversations with Dr. Ronwin about this dispute and other matters. Despite my efforts to resolve this dispute, Dr. Ronwin repeatedly told me that he would refuse to be deposed unless he was paid in advance. I told Dr. Ronwin that Bayer Corporation disagreed with his position and that if he continued his position, Bayer Corporation would seek intervention from the Court. Dr. Ronwin persisted in his demand for an expert fee to sit for his own expert deposition through the scheduled end of discovery. Accordingly, Bayer filed its motion seeking the assistance of the Court. Contrary to Dr. Ronwin's assertions, I did not represent that the motion would be filed by a certain date.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of January 2007, at Denver, Colorado.

JEFFREY R. PILKINGTON

# Exhibit A

DGS LAW

Davis Graham & Stubbs LLP

September 6, 2006

**Via Facsimile and U.S. Mail**

Edward Ronwin
945 Rolland Moore Drive, L-2
Fort Collins, CO 80526

Re: *Edward Ronwin v. Bayer (MDL No. 1431)*

Dear Mr. Ronwin:

Enclosed is the notice for your expert testimony deposition. I understand you have agreed to the September 28, 2006, 8:00 a.m. schedule.

If you have any questions, please call me at (303) 892-7218.

Sincerely,

Deborah J. Werth
Paralegal to Jeffrey Pilkington
for
DAVIS GRAHAM & STUBBS LLP

Encl.
cc: Counsel on Certificate of Service

Deborah J. Werth . 303 892 7218 . debbie.werth@dgslaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *Edward Ronwin, et al. v. Bayer Corp., et al.* | : | Case No. 02-0200 |

**NOTICE OF DEPOSITION OF THE EXPERT**
**DEPOSITION OF EDWARD RONWIN**

YOU ARE HEREBY NOTIFIED that, pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, the deposition of Edward Ronwin will take place on September 28, 2006 at 8:00 a.m. at the offices of Atomik Business Solutions, 419 Canyon Ave., Ste 300, Ft. Collins, CO 80521, 970-484-2226. Please see Attachment A attached to this Notice for the documents to be produced. The deposition will be stenographically recorded by a court reporter authorized to administer oaths and will continue day to day, excluding Saturdays, Sundays and holidays, until completed.

You are invited to attend and cross-examine.

DATED this 6 day of September 2006.

DAVIS GRAHAM & STUBBS LLP

Jeffrey Pilkington
1550 Seventeenth Street, Suite 500
Denver, CO 80202
Telephone: 303/892-9400
Facsimile: 303/893-1379
Attorneys for Defendant Bayer Corporation

Of Counsel:

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60603
(312) 494-4400

Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Douglas R. Marvin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Peter W. Sipkins (#101540)
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402
(612) 340-2600

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

**CERTIFICATE OF SERVICE**

Copies of the foregoing were sent on this 6th day of September, 2006 via electronic mail and U.S mail, postage prepaid, to:

Edward Ronwin
945 Rolland Moore Drive, L-2
Fort Collins, CO 80526
(*via facsimile and U.S. Mail only*)

Deanna D. Dailey, Esq.
ddailey@larsonking.com
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, Minnesota 55101

**Attorneys for Plaintiffs**

Peter W. Sipkins (#101540)
Sipkins.Peter@dorsey.com
Elizabeth Wright
Wright.elizabeth@dorsey.com
DORSEY & WHITNEY LLP
Suite 1500
50 South Sixth Street
Minneapolis, MN 55402

Richard Schneebeck
rschneebeck@hirstapplegate.com
HIRST & APPLEGATE, P.C.
1720 Carey Avenue, Suite 200
Cheyenne, WY 82003

**Attorneys for Bayer Corp.**

## ATTACHMENT A

A. The term "document or other tangible things" means any and all material, wherever located, that is subject to production under Federal Rules of Civil Procedures. The term includes, but is not limited to, any and all material that is written, printed, typed, photographed, recorded (electrically, electronically, magnetically, graphically or otherwise) or which is capable of being recorded in any form, such as transcripts, books, letters, correspondence, reports, memoranda, extracts, charts, diskettes, tapes, data sheets, photographs, bills, invoices, contracts, proposals, communications, electronic mail messages, notes, business cards, pamphlets, reports and recording of telephone or other conversations, or of interviews, or of conferences, or of other meetings, statements, summaries, opinions, studies, analyses, evaluations, manuals, publications, newspaper articles, appointment books, any mechanical or electronic sound recordings or transcripts thereof, any notes or drafts relating to the foregoing, and all things similar to any of the foregoing, however denominated, in the possession or control of the witness.

B. The terms "personal possession" or "possession" means in the personal possession, custody or control of the witness in his office, home, automobile, or any other location.

C. The singular of any word shall include the plural, and the plural shall include the singular.

D. The words "and" and "or" as used in this request shall be interpreted as conjunctive, disjunctive, or both, depending on context, so that the fullest production of information is provided.

E. All documents and other tangible things are to be produced as they are kept by the witness so that one can ascertain the files in which they were located, their relative order in the files and how the files were maintained.

F. If the witness does not respond to a request on the basis of privilege, with respect to each document or other tangible thing for which it claims a privilege, state the type of document or other tangible things, the date thereof, the person who prepared it, each person to whom it was circulated, each person who received a copy of it, the subject matter of the document or other tangible things, and the particular privilege claimed.

G. The deponent is instructed to bring to the deposition and to allow counsel to inspect, and copy the following documents and/or tangible things, whether maintained in written or electronic form, which are in the deponent's control, possession or custody:

1. A current curriculum vitae and bibliography of the deponent.
2. The complete file maintained by the deponent in connection with this case.
3. All documents and other tangible things reflecting, concerning, referring to, or in any way relating to communications with any member of the press or any public interest group and/or their representatives, concerning, referring to, or in any way relating to Baycol, including, but not limited to, notes of conversations, correspondence, and facsimile cover sheets.
4. All medical or other literature of any nature, kind or description read, reviewed, relied upon or consulted by the deponent in reference to the review of this case.
5. All documents upon which the deponent has relied or will rely upon, in forming opinions as disclosed in connection with this case.

6. Any chart, data compilation, graphic, exhibit, or demonstrative aid that the deponent intends to use in rendering testimony in any trial of this case.

7. All expert reports, disclosures or other documents which set forth the deponents opinions and/or testimony to be offered in this case.

# Exhibit B

945 Rolland Moore Dr., L-2
Fort Collins, CO 80526
Tele: 970-221-3837
Fax: 970-224-3838

September 6, 2006

Mr. Jeff Pilkington
Davis Graham & Stubbs, LLP
1550 - 17th St., Ste. 500
Denver, CO 80202

BY FAX TO: 303-893-1379

Dear Mr. Pilkington:

With regard to my deposition as an expert currently set for Sept. 28, 2006 at 8:00 a.m., at the offices of Atomik Business Solutions in Fort Collins, CO, you are hereby informed that my expert fee for appearance and testimony at the deposition is $3,000.00 for four (4) hours. Any time spent in being deposed beyond the four (4) hours are additionally charged on a pro rata rate.

I wish to have a response concerning this letter by Friday, Sept. 8, 2006.

Sincerely

Edward Ronwin

Edward Ronwin, PhD, JD

FROM :EDWARD RONWIN FAX NO. :970-224-3838 Sep. 06 2006 01:23PM P1
RCV BY:D.G.&S. : 9- 6- 6 : 2:21PM :

# Exhibit C

945 Rolland Moore Dr., L-2
Fort Collins, CO 80526
Tele: 970-221-3837
Fax: 970-224-3838

September 6, 2006

Mr. Jeff Pilkinton
Davis, Graham & Stubbs, LLP
1550 - 17th St., Ste. 500
Denver, CO 80202

BY FAX TO: 303-893-1379

Dear Mr. Pilkington:

Disregard the earlier letter that I sent to you this date, (by fax).

With regard to my deposition as an expert currently set for Sept. 28, 2006 at 8:00 a.m., at the offices of Atomik Business Solutions in Fort Collins, CO, you are hereby informed that my expert fee for appearance and testimony at the deposition is $5,000.00, payable by cashier's check in advance of the deposition for four (4) hours of deposition. Any additional deposition time will be pro rated.

I wish to have a response concerning this letter by Friday, Sept. 8, 2006.

Sincerely

Edward Ronwin

Edward Ronwin, PhD, JD

FROM :EDWARD RONWIN FAX NO. :970-224-3838 Sep. 06 2006 02:52PM P1
RCV BY:D.G.&S. : 9- 6- 6 : 3:46PM : 970 224 3838→ D.G.&S.:# 1

# Exhibit D

5

945 Rolland Moore Dr., L-2
Fort Collins, CO 80526
Tele: 970-221-3837
Fax: 970-224-3838

September 7, 2006

Mr. Jeff Pilkington
Davis Graham & Stubbs, LLP
1550 - 17th St., Ste 500
Denver, CO 80202

BY FAX TO: 303-893-1379

Dear Mr. Pilkington:

With respect to the last letter I faxed to you yesterday, I would like to know if my terms are accepted or if your client wishes to cancel the deposition. To make sure we are on the same beam, the terms are a professional fee to me for $5,000 for four (4) hours of deposition and pro rated for any additional time, with the initial $5,000 paid by cashier's check in advance of the start of the deposition.

Sincerely

Edward Ronwin

Edward Ronwin, PhD, JD

# Exhibit E

DGS LAW

Davis Graham & Stubbs LLP

September 19, 2006

**VIA FACSIMILE AND U.S. MAIL**

Edward Ronwin
945 Rolland Moore Drive, L-2
Fort Collins, Colorado 80526

Re: *Edward Ronwin v. Bayer* (MDL No. 1431)

Dear Mr. Ronwin:

As you know, the deadline to complete the depositions of Plaintiff's case-specific experts is September 29, 2006. *See* Pretrial Order No. 149. Since you designated yourself as an expert, your "expert" deposition has been scheduled for September 28.

During a telephone call this morning, you expressed concerns about your health. These concerns are significant enough that you believe that you may be hospitalized at Poudre Valley Hospital.

Because of your concerns, we agreed to reschedule your deposition after the deposition deadline of September 29, 2006. We also agreed to try to reschedule the deposition during the week of October 2, 2006, depending on your health.

If this does not accurately set forth our understanding, please contact me immediately. In the meantime, I wish you a speedy recovery.

Sincerely,

Jeffrey R. Pilkington
for
DAVIS GRAHAM & STUBBS LLP

JLP/dv



1550 Seventeenth Street • Suite 500 • Denver, Colorado 80202 • 303 892 9400 • fax 303 893 1379
www.dgslaw.com

# Exhibit F

To: Jeff Pilkington, Davis Graham & Stubbs, Denver, CO at FAX: 303-893-1379

From: Ed Ronwin, 945 Rolland Moore Dr., L-2, Fort Collins, CO 80526;
Telephone: 970-221-3837; Fax: 970-224-3838

Date: October 12, 2006

This fax is being sent pursuant to our conversation earlier today.

With respect to your intent to take my deposition as an expert, I hereby notify you, that as an expert, I will charge the fee of $1,000.00 for my appearance at such deposition. I would expect the funds to be paid immediately prior to the start of the deposition. It is difficult to say how much time the deposition will require; however, I suggest that at least five to six hours would be involved; possibly more. The above fee will cover whatever time is required for the deposition to be completed.

This notice supercedes prior notice of my fee requirement to appear at my expert deposition.

There is case law that a party can appear as an expert and there is ample case law that an expert is entitled to a fee. I want to remind you that Rule 11 requires motions made with sufficient justification and after sufficient investigation of the law and facts.

Sincerely

Edward Ronwin

Edward Ronwin, PhD, JD

# Exhibit 3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD) |
| This Document Relates to: | : | |
| *Edward Ronwin v. Bayer Corp., et al.* | : | Case No. 02-0200 |

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL**

PLEASE TAKE NOTICE that Defendant Bayer Corporation moves the Honorable Susan Richard Nelson, United States District Court, U.S. Courthouse, Suite 9E, 300 South Fourth Street, Minneapolis, Minnesota, pursuant to Fed. R. Civ. P. 37(a)(2)(B), to compel Plaintiff Edward Ronwin to produce himself for his expert witness deposition without compensation. This motion is supported by the attached Memorandum and documents.

Dated: December 4, 2006

Respectfully submitted,

/signature on file/

Susan A. Weber
James W. Mizgala
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Jeffrey Pilkington
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, CO 80202
(303) 892-9400

*Counsel for Bayer Corporation*

CERTIFICATE OF SERVICE

I, David L. Barlett, certify that a true and correct copy of the foregoing Defendant's Motion to Compel, supporting memorandum, proposed order, and exhibits were electronically filed and served, and served by U.S. Mail, postage prepaid to:

Dr. Edward Ronwin
945 Rolland Moore Drive, L-2
Fort Collins, CO 80526

on December 4, 2006.

[signature]
_______________________________