UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re BAYCOL LITIGATION | ) | |
| | ) | MDL No. 1431 (MJD) |
| This document relates to: | ) | |
| | ) | Case No. 02-0200 |
| RONWIN v. BAYER CORP. | ) | |

REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION SUGGESTING REMAND OF THIS SPECIFIC CASE

Plaintiff, Edward Ronwin, ("RONWIN") hereby Replies to Defendant BAYER CORP., ("BAYER") Opposition, ("BAYER OPPO"), to Plaintiff's Motion, ("MOTION") Suggesting Remand of this Specific Case.

In the 1st ¶, p. 1, BAYER OPPO, BAYER presents its notion of what RONWIN claims and asserts that same are not supportable. RONWIN's first claim is that case-specific discovery has ended; and BAYER cites to MOTION, pp. 6-7. The discourse in pp.6-7, MOTION shows that all fact depositions have been taken, including RONWIN's, and that Dr. REYES', (RONWIN's MD expert), deposition had been taken within the time allowed by PTO 149, (see Exh. E, bottom, p.3 to p.4, C.1.f,(BAYER OPPO). The discourse also shows that BAYER was given the opportunity to take RONWIN's expert deposition, but refused; and contrary to the representation by BAYER's Denver, CO attorney, JEFF PILKINGTON, ("PILKINGTON"), that a motion to compel would be filed by BAYER within "two weeks," BAYER filed its deposition, (i) approximately two months after the week of Oct. 2-6, 2006, and after the time per PTO 149 to complete ALL case-specific discovery in Phase I cases to which Phase this case belongs and without seeking court approval for the filing of its late motion. By the standards of law prevailing in both federal and state courts, BAYER's motion to compel was filed too late! Therefore, all case-specific discovery in this particular case is over!

SCANNED
JAN 08 2007
U.S. DISTRICT COURT MPLS

BAYER also alleges that RONWIN claims that this specific case "bears no commonality with any of the remaining cases in [this] MDL," item 2, 1st full ¶, p. 1, BAYER OPPO, citing to MOTION, p. 4. That is correct and BAYER's subsequent attempt to show to the contrary will be considered hereinbelow. As a third item, 1st full ¶, p. 1, BAYER OPPO., BAYER states that RONWIN claims that "the Court abused its discretion in propounding Pretrial Order 149, which [allegedly] coordinates case-specific discovery and common discovery," citing to MOTION, p. 5. The text of PTO 149 is presented in Exhibit E, BAYER OPPO. The first sentence of the opening ¶ of PTO 149, reads:

> In order to promote the fair and efficient administration of this litigation, to comply with its continuing obligations as an MDL court, and to ensure that cases are trial-ready prior to remand, the Court enters the following Order establishing the schedule for <u>case-specific discovery</u>. (emphasis added).

The Order then continues to layout the schedule and related comments for <u>case-specific discovery</u> for the remaining cases in this MDL. There is NOTHING in the Order about COMMON discovery which has been referred to as <u>generic</u> discovery and has been completed approximately two (2) years ago. BAYER's allegation that RONWIN's contention that PTO 149 is an abuse of the court's discretion and that PTO 149 does not deal with coordination of case-specific and common discovery is untrue, is itself untrue!

The 1st sentence, 1st ¶, p. 2, BAYER OPPO., states: "Case-specific discovery is on-going." Not according to PTO 149, pp.3-4, C.I.h. All Phase I case-specific discovery was closed as of November 29, 2006! In an effort to buttress its argument, BAYER asserts, in effect, that RONWIN's expert deposition has not yet been taken, 2nd ¶, p. 2, BAYER OPPO. But as explained in MOTION, pp. 6-7, and in the 3rd sentence herein, (and putting aside arguments about RONWIN's expertise, if any), BAYER's motion to compel filed beyond the November



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:21AM P3

29, 2006 deadline for all Phase I case-specific depositions per PTO 149 and filed without permission sought and received from the court to file a belated motion to compel, is now "out of the ballgame." Notably, and consistent with BAYER utterly persistent contempt for the use of truth, BAYER fails to acknowledge the lateness of its motion to compel and its failure to seek court approval for the filing of its late motion, which was brought to its direct attention in MOTION, bottom p. 6 to p. 7.

In the 1st sentence, 2nd ¶, p. 2, BAYER OPPO., BAYER puts parenthesis around the word, expert, to characterize its notion of RONWIN's expertise. Nevertheless, BAYER demands that it be allowed to take RONWIN's expert deposition. If RONWIN is not an expert, then such deposition would be a fact deposition. RONWIN has already appeared for two (2) fact depositions prior to the time for taking Phase I Plaintiff fact depositions per PTO 149, p. 4, C.I.h. When RONWIN filed his expert report on or about June 26, 2004, BAYER was fully informed that RONWIN was advancing in this specific case as both a fact witness and an expert witness. If BAYER believed that RONWIN was not an expert then BAYER was obligated to (i) approach the court and formally challenge RONWIN's status as an expert, or (ii) to be satisfied with RONWIN's two (2) fact depositions.

Additionally, RONWIN offered at his first fact deposition to explain the scientific basis for Baycol's murderous action on patients, (which is expert testimony), but the offer was refused; and PILKINGTON asked RONWIN to agree to have his expert deposition taken later.

RONWIN's first fact deposition was taken on April 17, 2006. The following discourse appears on p. 176, lines 5-16:

(Questioning by PILKINGTON; Answers by RONWIN)

Q. How -- what -- on what basis have you concluded that Baycol can cause blurred vision?

A. Right. We've got to get into that chemistry that I talked to you about the other time. You want to get into all that?

Q. Well, let's do this: We have agreed before this deposition that we will return to take your expert witness deposition, correct?

A. You want to do that?

Q. At a later point, correct?

A. Then, that would be fine with me. Yeah, otherwise, we've got a whole lot to go into. (emphasis added).

Clearly, BAYER was (i) recognizing RONWIN as an expert and (ii) an agreement was made to take RONWIN's deposition as an expert. The deposition continued, pp. 176, line 17 to p. 177, line 16:

Q. And, Mr. Ronwin, do you recall us having a telephone conversation during which you told me that you're going to testify as an expert at trial?

A. What? As an expert, yes.

Q. And when you told me that -

A. And you want to take my deposition.

Q. -- I said, Let's take your plaintiff's deposition first, and then take your expert deposition.

A. I don't believe you told me that. What I think you told me was that you didn't -- you weren't going to agree that I was an expert. That's the idea.



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:22AM P5

Q. Well, let's see if we can make sure we agree now.

A. Let's agree now.

Q. You've designated yourself as an expert, right?

A. Yes.

Q. And I was not planning on getting into any of your expert opinions today.

A. That will be fine.

Q. Okay. Provided, however, I have the opportunity to come back and ask you about your expert opinions.

A. You can always come back at a suitable, mutual time.

As can be seen, BAYER's attorney insisted that he said, "let's take your plaintiff's deposition first and then your expert deposition." Being honest, RONWIN noted that PILKINGTON, (in the telephone conversation) said that he "wasn't going to agree that [RONWIN] was an expert." Then the deposition continued and BAYER makes a definite agreement with RONWIN to take RONWIN's expert deposition.

BAYER cannot have it two (2) ways. If BAYER wants an expert deposition from RONWIN, BAYER cannot at the same time maintain that RONWIN is not an expert! And, as above, the time has more than run to take any Phase I case-specific depositions and BAYER's motion to compel the taking of RONWIN's expert deposition is long past!

In the last ¶, p. 2, last 2 lines cont'g. to page 3, BAYER OPPO., BAYER alleges that "[r]emand is proper where core discovery proceedings remain, (emphasis supplied). RONWIN takes "core" to mean "common." There are no common discovery proceedings remaining in this MDL. PTO 149 clearly represents this court's acknowledgement that common discovery is



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:23AM P6

completed!

In the 1st full ¶, p. 3, BAYER OPPO, BAYER states that PTO 149 @ Sec. VI, (p. 7), requires that no case be transferred to its transferor court unless this court "has ruled upon Daubert motions directed to generic experts." (second emphasis provided). At this point, RONWIN believes that the result of such motions are very probably of no bearing to this specific case.

Moreover, this court should NOT be entertaining Daubert motions for the following reasons:

Since the PSC has a motion due for hearing on January 30-31, 2007 in this court seeking remand for all remaining cases in this MDL and in said motion has discussed this question in detail, RONWIN reproduces that discussion herein from the PSC's Memorandum of Law in Support of Dissolution of MDL NO. 1431 and Suggestion of Remand to the Judicial Panel on Multidistrict Litigation: RONWIN will place his own comments at suitable points in brackets.

> There is no basis and little authority for this Court to hold Daubert hearings. As this Court candidly acknowledged, any such rulings would be "advisory" only. Tr. of Dec. 19, 2005 at p. 10. Under the circumstances there is no reason for this Court to hold such hearing since Daubert issues may be applied differently in the individual trial courts throughout the country. For example, when the defendants in the Parlodel, [the total identity of this case is nowhere cited in the PSC's Memorandum], litigation tried to argue that an Eighth Circuit decision excluding expert testimony carried weight in an Alabama case under Alabama law, the Court swiftly rejected the idea, Brasher v. Sandoz Pharmaceutical Corp., 160 F.Supp.2d 1291, 1298 (N.D.Ala. 2001). See also Hollander v. Sandoz Pharmaceutical Corp., 289 F.3d 1193, 1206 (10th Cir. 2002), cert. den. 537 U.S. 1088 (2002).
>
> The cost to the PSC and plaintiffs of litigating such an "advisory" opinion in the MDL will be enormous and entirely wasteful. The constitutionality of such an "advisory" opinion is also questionable. Early in its history, the Supreme Court held that it had no power to issue advisory opinions, Hayburn's Case, 2 Dall. 409 (1792), as interpreted in Muskrat v. United States, 219 U.S. 346, 351-353, 31 S.Ct. 250, 251-252 (1911), and it has frequently repeated that federal court are without power to decide questions that cannot affect the rights of litigants in the case before them. As the Court noted in North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404 (1971), a federal court



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:23AM P7

has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them. Local No. 8--6, Oil Chemical and Atomic Workers Intern. Union v. Missouri, 361 U.S. 363, 367, 80 S.Ct. 391, 394 (1960). Its judgments must resolve "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." North Cairo-ligna, 404 U.S. at 246 quoting Aetna Life Ins. Co. v. Hartford, 300 U.S. 227, 241, 57 S.Ct. 461, 464 (1937). See also Peiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330 (1975); U.S. Nat. Bank of Oregon v. Independent Ins.Agents of American, Inc., 508 U.S. 439, 113 S.Ct. 2173 (1993).
[RONWIN believes that there is only one court in these United States that legally issues advisory opinions. That is the Supreme Judicial Court of Massachusetts., said state's highest court. RONWIN does not know if said court issues advisory opinions pursuant to state statute or by its own precedent or if it issues said opinions only to requests from the state legislature.]

[It is notable that the authority cited by the PSC is that of the U.S. Supreme Court and this court must not go against that authority!]

While a few MDL court have conducted some limited Daubert hearings, specifically PPA, [In re PPA Prods.Liab.Litig., (MDL No. 1407), CMO 17C (W.D.Wash.June 23, 2004], that was done in the context of very serious cases with common issues and where the parties apparently agreed to be bound by the results.

Furthermore, many states do not require expert opinions and have differing standards for the admissibility of expert testimony. Indeed, Rule 702 of the Federal Rules of Evidence provides, in pertinent part, that "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert...may testify thereto in the form of an opinion or otherwise." (emphasis added in PSC Memorandum). Here, virtually all of the remaining claims are based on state law tort principles, [that is the situation in this specific case]. Moreover, the trier of fact in each case will be different. As argued by defendants in the class certification motions, and determined by this Court in its Order denying class certification, the claims involve numerous individual issues, particularly with respect to causation and damages. Additionally, there are variations in the state laws underlying the individual plaintiffs' claims. What may or may not assist the trier of fact in any particular case, also depends on the elements of the individual plaintiff's state law claim. Thus, Daubert hearings, even if they were intended to be more than merely advisory, would be unnecessary and of no value, [in many of the individual cases].

If there were ever a case where Daubert hearings should not be conducted, it is this Baycol MDL, (emphasis in original). First, any such results will be advisory only. Second, this Court knows that defendants will re-litigate and adverse Daubert determination by this Court in every single individual case. Third, many states do not require such



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:23AM P8

opinions so any Daubert determination by this Court would be of no value. Fourth, in the event, the validity, or lack thereof, of various experts' opinions must also take into account the individualized nature of each plaintiff's state law claims.

While BAYER states that this court has resolved "to consider and decide pretrial motions in preparing coodinated cases for trial before remand...," and that such practice is allegedly validated by the practice of other MDL courts, 1st full ¶, p. 3, BAYER OPPO, such practice is contrary to the wealth of authority including that of the U.S. Supreme Court in Lexecon v. Milberg, Weiss et al., 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998).

In Lexecon, 523 U.S. @ 39, 118 S.Ct. @ 964, the Court upheld the supremacy of 28 U.S.C. § 1407(a),(over 28 U.S.C. § 1404(a)), requiring remand either (in the statutes words), "at or before the conclusion of such pretrial proceedings to the district from which [the case] was transferred unless [the case] shall have been previously transferred..." The Court referred to the legislative history of § 1407(a) quoting Senator Tydings as follows: "When the deposition and discovery is completed, then the original litigation is remanded to the transferor district for trial." (emphasis supplied). We may certainly interpret the word "deposition" to be a part of "discovery." That leaves no room for this court to persist in holding settlement conferences, (below the settlement matter will be further discussed). Also, Daubert motions are not "discovery." Since all discovery in Phase I specific cases, as in this specific case, is now completed, this case must be remanded pursuant to the holding in Lexecon.

In addition to Lexecon, there are a number of cases decided by the Judicial Panel on Multi-district Litigation which are cited in MOTION at p. 5, and which hold that case-specific discovery is only permissible in MDL's if conducted CONCURRENTLY with COMMON discovery. In this action, the court waited until all COMMON discovery was completed;

therefore, no case-specific discovery should have been had and the current cases including this case should have been remanded. Since in this Phase I case, the case-specific discovery has been completed, since a Daubert hearing would be advisory, since advisory opinions are, according to the U.S. Supreme Court not proper for federal courts, since, as below, BAYER has told this court that it would not settle any remaining cases, there is nothing left for this court to do but remand this specific case, (and all the other remaining cases).

Encompassing this specific case, which is one of the remaining cases in this MDL, a Mr. BECK, an attorney for BAYER, has referred to the remaining cases as "bogus" or worthless, (Dec. 19, 2005 Tr. at pp. 32, 69), and BECK has made it clear that no settlement or settlement discussion will be had as to the remaining cases. BAYER cannot come in now and change its posture. BECK was fully authorized to speak for BAYER and no dissent was filed by BAYER. The situation is analogous to the above at pp. 3-5, where BAYER has the gaul to tell this court that it wants RONWIN's expert deposition while maintaining at the same time that RONWIN is no expert.

BECK also told this court at the April 15, 2003 hearing, Tr. at pp. 22-23, that the court's "job" is to complete generic [common] discovery and remand the cases so that case specific discovery can proceed. BECK also suggests in this citation that the court's principal function is to get the generic discovery done so that the cases can be tried. Now BAYER is on the other side of the fence. BAYER must not be allowed to continue to play fast and loose in this action.

In In re Baycol Products Litigation, 218 F.R.D. 197, 207-208, this court emphasized the fact that each case had individual legal issues and individual fact issues and that other distinctions characterize each case such as the prescription of Baycol at different times for different plaintiffs

and that BAYER's knowledge in each case will differ. This court has also gone on record that it intended to remand cases once common discovery was completed by stating, Feb. 9, 2005 Tr. at p. 22:

> I am sending them back to the transferor jurisdictions who have policies and procedures and due process for both the plaintiffs and defendants.

It appears that the remand did not occur because Mr. Zimmerman for PSC and BECK started negotiation to obtain an overall settlement. The negotiations failed. Hence, this court should return to its original position.

BAYER's misuse of authority is legion in this action. As one example, the court's attention is directed to BAYER's citation and comment on the case of In re Patenaude, 210 F.3d 135 (3rd Cir. 2000) at pp. 3-4, BAYER OPPO.

The PSC Memorandum, referred to and quoted herein above at p. 6-7, also considered the Patenaude case and stated as follows, (only the footnote in the PSC's comment is deleted; RONWIN's comments are placed in brackets):

> In re Patenaude, 210 F.3d 135 (3rd Cir. 2000) is particularly instructive. That case arose out of the asbestos litigation. Some 1,000 cases, in fact had been remanded. [BAYER does not notice that fact.] Id.at 141-42. The primary reason why the court did not grant the further remands requested at this time was because settlement discussions in the MDL were active and ongoing and producing significant results. [BAYER does not notice that fact]. Here, [in this MDL], of course, all settlement discussions have ended and there will be no settlement of remaining cases, [as noted above at pp. 8-9]. In a discussion of the legislative history, the Court further noted as follows:
>
>> The Plaintiffs [in Patenaude](PSC's brackets) also point to legislative history suggesting that Congress contemplated that additional discovery might be conducted following remand as evidence that such individual discovery is not appropriate for the transferee court. See Multidistrict Litigation: Hearings Before the Subcommittee on Improvements in Judicial Machinery of the Committee of the Judiciary, 89th Cong. 56 (1966); H.R.Rep.No. 1130, 1968 U.S.C.C.A.N. at 1901-02. The House Report states that "the committee recognizes that in most cases there will be a need for local discovery proceedings to supplement coor-

dinated discovery proceedings, and that consequently remand...for this purpose is desirable. H.R.Rep. No. 1130, 1968 U.S.C.C.A.N. at 1901-02. Furthermore, during the hearings, the following exchange occurred:

SENATOR TYDINGS: The intent of the coordinating committee...apparently, is that the necessary additional discovery with regard to issues of fact not national or not common to other cases could be conducted once the case was remanded...(italics in PSC's Memorandum).

Do you agree that the intent of the bill is to allow additional discovery after remand...and if so, is the language of the legislation sufficiently broad to permit that? (Emphasis added). (The emphasis and comment thereon are in the PSC's Memorandum).

JUDGE MURRAH: Yes

Patenaude, 210 F.3d at 145. Thus, Patenaude instructs that once common discovery has been completed, mass remands are appropriate as demonstrated by the 1,000 or so cases remanded [in the case] and that the ONLY reason to preclude further remands is where active and on-going settlement discussions are occurring. [Capital letters in PSC's Memorandum].

The argument presented herein on pp.7 to this point on the question of the need to take case specific discovery only when concurrent with common discovery also serves as a reply to BAYER's arguments presented in Sec. IV,pp. 5-7, BAYER OPPO. RONWIN's arguments on this issue are also presented in MOTION at p. 5. Furthermore, the claim by BAYER that RONWIN has not offered any authority for his position on this issue is shown to be false, which is par for BAYER's course.

In the 2nd ¶, p. 4, BAYER OPPO, BAYER poses an absurd notion, which is that as RONWIN contends that "'Baycol can cause bodily injury,'"...RONWIN's case "...is not unique..." What nonsense! In every drug MDL, the basic complaint will be that the drug caused bodily injury. Without such allegation a case cannot get into a drug injury MDL! The reason RONWIN's case differs from most or all of the rest is that RONWIN suffered a left shoulder



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:26AM P12

rotator cuff tear which required surgery and other injuries; and some of the effects of those injuries are still plaguing RONWIN. Furthermore, RONWIN took a certain dose of Baycol; whereas only some of the other plaintiffs took the same dose. The degree of injuries are related to the dosage levels as well as to the sex of the plaintiff and to the plaintiffs physical condition at the time of taking Baycol; and whether other drugs were taken at the same time, the length of time that Baycol dosage was taken, etc, etc. When all the factors affecting a plaintiff's injury by Baycol, in this MDL, are taken into consideration, the cases bear little of commonality to each other. If BAYER's absurd criterion for commonality were recognized there would be no such thing as case-specific discovery needed.

The infantile advocacy, which RONWIN suggests is deliberate, has multiplied the paper in this overall MDL by an enormous factor; caused unnecessary extra effort for all involved and reflects BAYER's consummate contempt for truth and fair play in judicial proceedings.

In the 1st full ¶, p. 5, BAYER OPPO, BAYER claims that RONWIN proceeds herein on the same tort grounds as other plaintiffs in this MDL. Therefore, BAYER argues that RONWIN's case is common to the other cases herein. As with the claim, discussed above at p. 10, on Baycol injury, the argument is specious.

Preliminarily, if one is hurt by a drug, there are only a few tort claims that will fit the complaint, but that does not, in and of itself as BAYER seeks to establish, make each Baycol claim identical. The facts of the injury and the other factors, see p. 11 and above, are the deciding factors which distinguish each case from most or all of the others. Additional distinguishing factors are the variances in state law which apply to the different tort claims.

That is a most important distinction since this court, if it tried each case in addition to those that



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:26AM P13

emanated from Minnesota, would be required to apply the law of the several different states from which the remaining cases came. No small obligation! Furthermore, no matter how erudite the judge or judges of the Dist. of Minn. are in questions of law, it would stretch belief to accept that the judges in each particular state are not as versed or even better versed on their law than the judges in this federal district. If BAYER's absurd point were accepted, there would be no case-specific discovery required in this action and PTO 149 would be a fraud!

## CONCLUSION

For the reasons presented hereinabove, this court should remand this case to the transferee court which is the Dist. of Wyoming, headquartered in Cheyenne, Wyoming.

DATED: January 8, 2007.

Edward Ronwin, pro se
945 Rolland Moore Dr.,L-2
Fort Collins, CO 80526
970-221-3837

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Reply to Defendant's Opposition to RONWIN's Motion upon the following by FAX, this 8th day of January, 2007:

The Court's Clerk's office at FAX No. 612-664-5044
Defendant's Counsel at FAX No. 312-853-7036
Courtesy copy to Jeff Pilkington, Def't's Denver, CO attorney at FAX No. 303-893-1379
Plaintiff's Liaison Counsel, Deanna Dailey at Larson-King at FAX No. 651-312-6618.

Edward Ronwin



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:26AM P14

From: Dr. Edward Ronwin, 945 Rolland Moore Dr., L-2, Fort Collins, CO 80526
Telephone: 970-221-3837; FAX: 970-224-3838

To the following parties by FAX:

The Clerk's Office, U.S.Dist.Ct., Dist. of Minnesota
Sidley Austin, Defendant's attorneys in Chicago, IL. (Weber or Mizgala)
Courtesy Copy: Jeff Pilkington, Denver, CO attorney for Def't.
Plaintiffs Liaison Counsel, Deanna Dailey at Larson-King, St. Paul, MN.

Date: January 8, 2007

Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion Suggesting Remand of this Specific Case is hereby transmitted for filing and service upon the listed parties.

If there is any question or problem, please call me at 970-221-3837

Edward Ronwin, PhD, JD