UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re BAYCOL LITIGATION | ) | |
| | ) | MDL No. 1431 (MJD) |
| This document relates to: | ) | |
| | ) | Case No.02-0200 |
| RONWIN v. BAYER CORP. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION BASED ON FED.R.CIV.P. 11 AGAINST DEFENDANT AND DEMAND FOR ORAL ARGUMENT ON BAYER'S MOTION TO COMPEL, OR IN THE ALTERNATIVE, TO CONSIDER THIS DOCUMENT [THE MOTION] AS A COUNTER REPLY TO BAYER'S MOTION TO COMPEL**

Plaintiff, Edward Ronwin, ("RONWIN"), hereby Replies to Defendant's ("BAYER") Response, ("RESPONSE") to RONWIN's Motion based on Fed.R.Civ.P. 11 against BAYER and Demand for Oral Argument on BAYER's Motion to Compel, or in the Alternative, to consider RONWIN's Motion, ("MOTION"), as a Counter Reply to BAYER's Motion to Compel.

The verbiage in RESPONSE found on p. 1 to and including the 1st full ¶, p. 2, complains that MOTION is a sur-reply not permitted by local rules and that RONWIN did not contact BAYER before submitting MOTION to the court.

MOTION was prompted by the fact that BAYER held back mention of the Kooritzky case, Kooritzky v. Herman, 178 F.3d 1315 (D.C.Cir.1999), until its Reply to RONWIN's Response to BAYER's Motion to Compel knowing that (i) without oral argument, (every request for which from RONWIN to this court has not been granted), RONWIN would have no way to counter BAYER's reliance on the Kooritzky case, which (ii) BAYER, in the continued use of lie, deceit and fraud, and (iii) because as RONWIN suspected, BAYER deliberately mischaracterized the essence of the Kooritzky case which will be demonstrated below.

SCANNED
JAN 08 2007
U.S. DISTRICT COURT MPLS

FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:48AM P2

While RONWIN did not contact BAYER in advance of submitting MOTION based, in part, on Fed.R.Civ.P. 11, such contact would have been useless as judged by prior contact with BAYER attorneys. For example, two telephone messages to call back, solicited by BAYER attorney, (in Sidley Austin, Chicago, Ill), JAMES MIZGALA, were ignored. Sidley Austin attorney, SUSAN WEBER in a communication sometime ago hung up on RONWIN. She did call very recently seeking RONWIN's assent to her having an "extra day" to submit a response to RONWIN's Motion Suggesting Remand of this Specific Case, and, of course, as is RONWIN's practice her request was accommodated. RONWIN's effort to talk to MIZGALA concerned Dr. REYES' deposition taken in Crowley, Louisiana on Sept. 12, 2006. MIZGALA had not come with copies for RONWIN of exhibits he used in the deposition. Yet, in every deposition taken per PTO 149, including Dr. REYES' deposition, RONWIN meticulously prepared in advance copies for the opposing attorney, MIZGALA and in all the others, JEFF PILKINGTON, Denver, CO attorney for BAYER. The exception in MIZGALA' case was an X-ray film, and efforts were made at Dr. REYES' deposition to get a copy made locally but to no avail. Also, while RONWIN has meticulously faxed copy of every document he has filed with the court on the day of such filing to Sidley Austin and, separately, to PILKINGTON, Sidley Austin has always mailed copy of its filing in this specific case to RONWIN. The delay in this instance coupled with other factors prevented RONWIN from viewing the <u>Kooritzky</u> case for a number of days. Furthermore, there is evidence that MIZGALA, who conducted arrangements for Dr. REYES' deposition, attempted to and appears to have partially succeeded in getting Dr. REYES to tone down his support for RONWIN. Additionally, there has been some tampering with deposition transcript texts in some cases to a small extent in Louisiana



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:49AM P3

in Dr. REYES' deposition and in some of the others taken in the Fort Collins and Denver area in which PILKINGTON acted for BAYER and used a reporter firm that does a great deal of business with PILKINGTON's law firm, (Davis, Graham & Stubbs). The reporter firm knows where its bread is buttered! Below, the falsehoods in PILKINGTON's Declaration, Exh. 2, RESPONSE are also detailed. With conduct such as above, which does not complete the legacy of sin committed by BAYER in this specific case, it is futile to talk to BAYER about its conduct in violation of Rule 11.

BAYER alludes to the Kooritzky case in the 2nd full ¶, p. 2, RESPONSE. BAYER alleges that RONWIN did not cite any case that refuted BAYER's view that RONWIN is allegedly not entitled to an expert fee for his expert deposition. That is not wholly the case since RONWIN cites and discusses in his Response to BAYER's Motion to Compel, at pp. 3-4, the case of Keystone Mfg.Inc. v. Jaccard Corp., 394 F.Supp.2d 543 (W.D.N.Y.2005), which stands for the proposition that a person significantly associated with a corporation that is a party to a lawsuit can also appear as an expert witness for the corporation. Effectively, the witness in Keystone was a Vice President and 40% shareholder of Keystone Mfg., which, as an unnatural person, can only appear through human beings. Therefore, a natural person party can appear as an expert witness on his or her own behalf. Furthermore, under the terms of Fed.R.Civ.P. 26(b)(4)(C), as noted in RONWIN's Response to Motion to Compel, it is mandatory, (the rule uses the word, "must"), "to pay a reasonable expert fee for time spent responding to discovery demands including time spent on deposition," p. 19, top portion, RONWIN's Response to Motion to Compel.

BAYER's statement that RONWIN did not cite any case amounts to another lie and another

attempt to deceive this court.

As noted in MOTION, pp. 1-2 and fn. 1, RONWIN was unable to view <u>Kooritzky</u> in order to view the case at least until December 28, 2006, six days after RONWIN received BAYER's Reply to RONWIN's Response to BAYER's Motion to Compel; and RONWIN could not get to view the case due in part that day to a forecast of a snowstorm which added another 8-10 inches of snow to top the 2-3 feet dumped on Fort Collins in the previous blizzard making vehicle and foot traffic near or actually impossible. The first time RONWIN viewed <u>Kooritzky</u> was on January 3, 2007. RONWIN does not have Internet connection and reduced state funding caused the library at Colorado State Univ. about two years ago to withdraw all paper Reporters except the Sup.Ct. Reporter.

As is par for BAYER's course, BAYER does not admit in its Reply to RONWIN's Response to its Motion to Compel that its "reading" of <u>Kooritzky</u> is untrue; nor does BAYER do so in RESPONSE to MOTION, see 2nd full ¶, p. 2, RESPONSE. To set the record straight a detailed consideration of the <u>Kooritzky</u> case is provided as the last item in this Reply.

In the last ¶ starting on p. 2 and continuing to p. 3, RESPONSE, and despite the relevant dates, BAYER denies that its Motion to Compel was filed not only beyond the time for Plaintiff's expert deposition to be taken, (Sept. 29, 2006), per PTO 149, I.C.f., p. 4, but beyond the time for the finish of all depositions, (November 29, 2006), per PTO 149, I.C.h., p. 4. Furthermore, BAYER refuses to admit that it persisted, prior to the filing of its Motion to Compel in its refusal to pay <u>any</u> expert fee to RONWIN for his expert deposition. See also, p. 18, 3rd full ¶, RONWIN's Response to Motion to Compel.

As to RONWIN's "back out" of the September 28, 2006 original setting for RONWIN's expert



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:50AM P5

deposition based on being taken with a flu-like affliction, (which lasted somewhat more than two weeks), lines 6-7, p. 3, RESPONSE; proof of same is attached hereto as Exh. 1, showing that on Sept. 19, 2006, RONWIN saw an ear, nose and throat specialist and on Sept. 28, 2006, RONWIN saw another specialist, Dr. AUSTIN BAILEY. Actually, the CMS Medicare Report is a notice of billing for clinical services on that day, (X-rays, blood draw and blood cell counts), ordered by Dr. BAILEY as part of his examination and treatment of RONWIN. In fact, RONWIN saw Dr. BAILEY twice but no notice of billings has yet been received which is not surprising since it sometimes is as much as six months between the time of a medical visit and the notice of billing from CMS, which acts for Medicare, arrives. See also, RONWIN's Response to Motion to Compel, 3rd and 4th full ¶'s, p. 17.

As to the changes in fee demand, (see also pp. 17-18, RONWIN's Response to Motion to Compel), RONWIN felt that a $3,000.00 fee for four (4) hours was not unreasonable since RONWIN's expert analysis of Baycol's murderous action is far more fundamental and factual than any MD's. BAYER doesn't want to admit that Baycol does not act by hocus pocus. Briefly, the human body consists virtually but not totally of molecules, which, in turn, constitute cell membranes and cell contents, in turn, organized into tissues and anatomical features such as eyes, ears, etc., and specialized cells such as nerve cells, and specialized tissues such as tendons, (including shoulder rotator cuffs), ligaments, finger and toe nails, etc. Baycol is a molecule and when it acts, it does so by chemical reaction with the molecules in the human body such as found in muscle, nerves, tendons, ligaments, eyes, ears and various organs such as liver, heart, etc. These interactions are at the heart of Baycol's murderous activity in the human body. MDs, DOs and other medical practitioners expert opinions do not approach these fundamental and



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:50AM P6

factual aspects of Baycol's murderous action. Hence, RONWIN's expert explanations are far superior to any MD's, DO's and worth at least as much as BAYER has paid to the eight (8) MD's whose depositions BAYER has taken in this specific case, see pp. 4-14, RONWIN Response to Motion to Compel regarding MD "shortcomings;" RONWIN's expert approach and RONWIN's expert credentials, etc.

The final offer of a reduced fee of $1,000.00 for the entire expert deposition, regardless of time, was well below what BAYER paid most of the MD's whose deposition it has taken in this specific case and made with a view to resolve the fee deadlock, as well as RONWIN's feeling that Dr. REYES' fee was somewhat greater than, perhaps, it ought to have been. However, Dr. REYES had to travel for 2 hours to Crowley, LA where the deposition was held and for 2 hours return which merited some monetary consideration. But, BAYER insisted that it would not pay any expert fee to RONWIN for his expert deposition, even though it paid significant fees to MD's; see Exh. 10 to RONWIN's Response to Motion to Compel.

The claim by BAYER that it cooperated with RONWIN on the fee question is false, 1st two sentences, last ¶, p. 3, RESPONSE. Likewise, PILKINGTON's lies in his Declaration, Exh. 2, RESPONSE, item 7, when he claims that he informed RONWIN that he would work with RONWIN "to resolve, [the expert fee payment to RONWIN], dispute." Persisting, without variation, in the stance that BAYER would pay no fee whatsoever for RONWIN's expert deposition is not working to "resolve the fee payment dispute."

PILKINGTON further lied in his Declaration, item 8, p. 3, Exh. 2 to Response, when he asserts that RONWIN, "requested that [RONWIN's] deposition be postponed until at least the week of October 9, 2006, due to RONWIN's illness. The week was Oct. 2-6, 2006. One



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:51AM P7

telephone conversation in late September was had between RONWIN and PILKINGTON to set the date for a day during the week of Oct. 2-6, 2006, but no date was set because PILKINGTON told RONWIN that BAYER would not pay any expert fee!

PILKINGTON again lies in his Declaration, item 9, p. 3, when he again avers that he informed RONWIN that he would continue to try to resolve the expert fee dispute. Certainly, RONWIN was not involved in any such effort after the telephone talk with PILKINTON in late September, 2006 and BAYER never changed its stance on the expert fee question. Likewise, and contrary to PILKINGTON's Declaration, item 10, p. 3, no conversation beyond the one in late September ever occurred between RONWIN and PILKINGTON on the question of the expert fee.

It was in that late September, 2006 telephone talk that PILKINGTON stated that BAYER would approach the court on the fee dispute and when RONWIN asked when BAYER would file its motion, PILKINGTON stated: "within two weeks;" which is an event that never occurred until after all deposition time for Phase I cases, as this one, was closed on November 29, 2006 by PTO 149, I.C.h., p. 4. The Motion to Compel having been filed on Dec. 4, 2006 well beyond the time to file and filed without prior permission from the court to file and beyond the time allowed by PTO 149. PILKINGTON's denial in item 10, p. 3, of his Declaration that he did not represent that BAYER's motion "would be filed by a certain date," is true to the extent that a specific date was not stated, but he did say the filing would occur "within two weeks," i.e., from the time of the late September, 2006 telephone talk between RONWIN and PILKINGTON. RONWIN believes that said talk took place on Sept. 28, 2006, which was the original date set for RONWIN's deposition.

BAYER again attacks RONWIN's expert status, last sentence, p. 3 to p. 4, RESPONSE, by labelling RONWIN a "putative expert." BAYER has challenged 20 of the 21 experts presented by the PSC. Yet, any view of the curriculum vitae of these 20 experts reveals their extensive educational training, their extensive occupational experience and in a number of cases, their extensive research publication activities. In the "parade" in this MDL, "Johnny", i.e., BAYER, is the only marcher in step! That attitude reflects BAYER's abominable refusal to recognize any fact or feature inimical to its case in the MDL, which is all one can expect from an admitted criminal organization, see Exhs. 1 to 5, incl., RONWIN's Response to Motion to Compel.

NOW AS TO KOORITZKY:

Again, Kooritzky is alluded to in the 2nd full ¶, p. 2, RESPONSE. In said ¶, BAYER writes:

> Bayer's citation to Kooritzky caused Dr. Ronwin no prejudice. Bayer's argument was made in its motion [to compel].

That statement can be read to imply that BAYER discussed Kooritzky, upon which it heavily relies as to its Motion to Compel, in said motion. That would be a lie. It is because BAYER held back Kooritzky[1] until its Reply to RONWIN's Response to BAYER's Motion to Compel which gave BAYER an advantage that the Fed. Rules of Civ. Proc. does not intend for BAYER or any other party unless oral argument is had on BAYER's motion to compel so RONWIN could show BAYER's misuse of Kooritzky. (In this specific case, the court has refused to have oral argument on every motion RONWIN filed and on every motion filed against RONWIN).

PRELIMINARILY, RONWIN HAS NOT, NOR INTENDS TO ASK FOR ATTORNEY'S FEES IN THIS SPECIFIC CASE. FURTHERMORE, UNLIKE IN KOORITZKY, RONWIN

[1]Notably, RONWIN charged in MOTION, p. 1, last ¶, that BAYER "most likely had knowledge of Kooritzky when it composed its Motion to Compel. That allegation by RONWIN is not challenged in BAYER's RESPONSE which substantiates RONWIN's argument made in this paragraph.



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:52AM P9

IS NOT AN ATTORNEY PRO SE, BUT A PLAINTIFF PRO SE.

Mr. Kooritzky, (KOORITZKY), was an immigration attorney who acted pro se in challenging a U.S.Dept. of Labor, ("DOL") immigration ruling and prevailed on the merits, Kooritzky, 178 F.3d @ 1316. Thereafter, KOORITZKY moved for an award of attorney's fees and the District Court awarded fees to KOORITZKY and to his alleged co-counsels, 178 F.3d @ 1316-1317.

The DOL challenged the award of attorney fees to KOORITZKY in the District Court and lost. Thereafter, the DOL appealed to the D.C. Circuit, 178 F.3d @ 1317. KOORITZKY's case proceeded under the Equal Access to Justice Act, ("EAJA"), 178 F.3d @ 1317. The D.C. Circuit held that the fee-shifting provision of the EAJA did not "differ in any material way from the statute, (Civil Right Attorney's Fee Awards Act, 42 U.S.C. § 1988), featuring in Kay v. Euler, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), and the attorney fee awards provision in the Freedom of Information Act, ("FOIA"), featured in Burka v. U.S. Dept. of Health and Human Services, 142 F.3d 1286 (D.C. Cir. 1998), 178 F.3d @ 1317.

The D.C.Circuit explained that the interpretation of the attorney fee shifting provision in each of the three statutes, EAJA, FOIA and § 1988, barred award of attorney's fees to pro se attorneys because the U.S. Supreme Court in Kay declared that the word, attorney, in these fee shifting provisions required a client-attorney relationship, i.e., an agency arrangement, and, obviously, a pro se attorney cannot form an agency with him or herself, 178 F.3d @ 1318. The D.C.Circuit further explained that the need for the agency relationship was to enable potential civil rights plaintiffs to obtain competent legal counsel in suits intended to protect civil rights from government encroachment, 178 F.3d @ 1318-1320.

Since RONWIN never sought nor intends to seek attorneys fees for his pro se legal work, what

has Kooritzky got to do with this specific case?

It appears that KOORITZKY claimed expert fees for acting pro se as an "immigration law expert," and, even if not entitled to attorney's fees, KOORITZKY nevertheless claimed entitlement to expert witness fees as an immigration law expert, 178 F.3d @ 1321. The amount of attorney's fees denied were claimed as the expert fees, 178 F.3d @ 1321. The District Court, earlier rejected KOORITZKY's notion that any expertise on KOORITZKY's part was involved and that the case was a "routine APA [Administrative Procedure Act] case," 178 F.3d @ 1321.

The D.C.Circuit rejected KOORITZKY's expert fee demand based on its analysis of the EAJA purpose and the purpose of the similar statutes; mainly on the grounds that the fee-shifting provisions in these statutes were intended to encourage plaintiffs to "hire objective outside counsel" and by analogy to hire outside experts, 178 F.3d @ 1322.

The D.C.Circuit made clear that the EAJA, (and analogous statutes) does not allow a pro se attorney litigant to recover attorney's fees when disguised as expert fees, 178 F.3d @ 1322. The court also noted that KOORITZKY alleged immigration law expertise was not applicable and that KOORITZKY had no administrative law experience, (which was legal setting of the case), 178 F.3d @ 1322. The D.C.Circuit was clearly annoyed with KOORITZKY's attempt to obtain legal fees under the rubric of expert fees, 178 F.3d @ 1322-1323.

Pertinent hereto, it is to be noted that Kooritzky was decided on the basis of the EAJA, and analogous statutes, § 1988 and FOIA, See Conclusion, 178 F.3d @ 1325. Underlying the legal holding in Kooritzky is that the fundamental purpose of the fee shifting provision of EAJA and analogous statutes is the Congressional objective to promote the hiring of competent outside counsel and experts to augment the enforcement of civil rights and to redress their abuse by



FROM :EDWARD RONWIN FAX NO. :970-224-3838 Jan. 08 2007 08:52AM P11

government action!

This specific case does not come to this MDL, nor to the transferor court, under EAJA or any analogous statute. Rather this specific case comes here as an ordinary tort action. Even EAJA excepts "cases sounding in tort" from its fee shifting provision, 178 F.3d @ 1318.

Furthermore, the contentions of Kooritzky concerning expert fees are also restricted to the fee shifting provisions of the EAJA and analogous statutes. For that reason, too, as discussed above, expert fees were denied to KOORITZKY.

However, there is a significant difference herein. The expert fee sought in this case by RONWIN is governed by Fed.R.Civ.P. 26(b)(4)(C). Unlike the EAJA fee shifting provision, 26(b)(4)(C) is unconcerned with the hiring of outside experts or attorneys and is unconcerned with promoting protection for civil rights; nor does said rule require agency relations between pro se litigants and attorneys or experts.

Notably, the facts in Kooritzky, as discussed above, and at 178 F.3d @ 1321-1323, clearly establish that KOORITZKY was no expert in his case.

Notably, too, the Kooritzky court quotes the Amer. Bar Ass'n. Model Code of Professional Responsibility as follows:

> The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively. (emphasis supplied).

As a non-attorney pro se litigant, RONWIN, who is trained and somewhat experienced in the law, has done what he would do as though he were an outside attorney handling RONWIN's legal efforts in this specific case. But, as a fact witness, RONWIN has simply stated the overall facts as he knows them and as he would have done if represented by outside counsel. However,

RONWIN's expertise arises from considerable educational training, occupations experiences and publication activities and continued pursuit of developments in the fields of biochemistry, related medicine, molecular biology (same as biochemistry), and related sciences. For testimony in that those areas of RONWIN's expertise, RONWIN is entitled to a fee.

**WHEREFORE,** Plaintiff asks this Court to either grant oral argument to allow RONWIN to put his views with respect to REPLY before this Court in order to negate the improper advantage BAYER took of the usual motion practice; or to consider the motion which led to this document as a Counter-Reply to BAYER's REPLY or what the motion also is: a separate motion.

DATED: January 8, 2007.

Edward Ronwin, pro se
945 Rolland Moore Dr., L-2
Fort Collins, CO 80526
970-221-3837

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Reply upon the following by FAX, this 8th day of January, 2007:

The Court Clerk's office at FAX No. 612-664-5044
Defendant's counsel at FAX No. 312-853-7036 (Weber or Mizgala)
Jeffrey Pilkington, BAYER's Denver, CO counsel at FAX No. 303-893-1379
Plaintiff's Liaison Counsel, Deanna Dailey at Larson-King at FAX No. 651-312-6618.

Edward Ronwin

Page 01 of 03

# Medicare Summary Notice

December 01, 2006

**CUSTOMER SERVICE INFORMATION**

**Your Medicare Number: 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A**

If you have questions, write or call:
MUTUAL OF OMAHA (#52280)
MEDICARE DIVISION
P.O. BOX 1602
OMAHA, NE 68101

**Call: 1-800-MEDICARE (1-800-633-4227)**
**Ask For Hospital Services**
**TDD-Telecommunication Device For The Deaf: 1-877-486-2048**

EDWARD RONWIN
945 ROLLAND MOORE DR
UNIT L-2
FT COLLINS CO 80526-8112

**BE INFORMED:** Always review your Medicare Summary Notice for correct information about the items or services you received.

This is a summary of claims processed on 10/13/2006.

## PART B MEDICAL INSURANCE - OUTPATIENT FACILITY CLAIMS

| Dates of Service | Services Provided | Amount Charged | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| Control number 20628202086502 03 | | | | | | a,b,c |
| **Poudre Valley Health Care Inc** | | | | | | |
| **1024 S Lemay Ave** | | | | | | |
| **Fort Collins, CO 80524** | | | | | | |
| Referred by: Austin Bailey | | | | | | |
| 09/28/06 | Routine venipuncture (36415) | $18.00 | $0.00 | $0.00 | $0.00 | d |
| | Complete cbc w/auto diff wbc (85025) | 29.70 | 0.00 | 0.00 | 0.00 | d |
| | Chest x-ray (71020) | 209.00 | 0.00 | 8.75 | 8.75 | |
| | **Claim Total** | **$256.70** | **$0.00** | **$8.75** | **$8.75** | |

**Notes Section:**

a The amount Medicare paid the provider for this claim is $47.90.

**(continued)**

**THIS IS NOT A BILL - Keep this notice for your records.**

EXH. 1

0357300000

CMS Centers for Medicare & Medicaid Services

# Medicare Summary Notice

October 16, 2006

EDWARD RONWIN 004568
945 ROLLAND MOORE DR
UNIT L-2
FORT COLLINS CO 80526-8112

**CUSTOMER SERVICE INFORMATION**

**Your Medicare Number: 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A**

If you have questions, write or call:
Medicare Operations (#00824) MW
901 40th Street South, Suite 1
Fargo, ND 58103

**Call: 1-800-MEDICARE (1-800-633-4227)**
**Ask For Doctor Services**
TTY Users Should Call 1-877-486-2048
www.noridianmedicare.com

**BE INFORMED:** Read Your Medicare Summary Notice carefully for accuracy of dates, services, and amount billed to Medicare.

This is a summary of claims processed from 08/29/2006 through 10/13/2006.

## PART B MEDICAL INSURANCE - ASSIGNED CLAIMS

| Dates of Service | Services Provided | Amount Charged | Medicare Approved | Medicare Paid Provider | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| | Claim number 02-06269-124-570 CO<br>**Alpine Ear Nose & Throat PC,**<br>1120 E Elizabeth #F101 ,<br>**Fort Collins, CO 80524-4044**<br>Referred by: Dr. Gill, Sarujit S., M.D.<br>Dr. Eriksen, C. M. M.D. | | | | | a |
| 09/19/06 | 1 Office/outpatient visit, est (99213) | $88.00 | $52.82 | $42.26 | $10.56 | |
| | Claim number 02-06230-386-030 CO<br>**Dermatology Of Northrn CO PC,**<br>3726 S Timberline Rd #101 ,<br>**Fort Collins, CO 80525-3483**<br>Dr. Hultsch, Anne Lise A. M.D. | | | | | a |
| 08/01/06 | 1 Office/outpatient visit, est (99212) | $38.49 | $38.49 | $30.79 | $7.70 | |

EXH. 1, Cont'd

**THIS IS NOT A BILL - Keep this notice for your records.**

From: Dr. Edward Ronwin, 945 Rolland Moore Dr., L-2, Fort Collins, CO 80526
Telephone: 970-221-3837; FAX: 970-224-3838

To the following parties by FAX:

The Clerk's Office, U.S.Dist.Ct., Dist. of Minnesota
Sidley Austin, Defendant's attorneys in Chicago, IL. (Weber or Mizgala)
Courtesy Copy: Jeff Pilkington, Denver, CO attorney for Def't.
Plaintiffs Liaison Counsel, Deanna Dailey at Larson-King, St. Paul, MN.

Date: January 8, 2007

Plaintiff's Reply to Defendant's Response to Plaintiff's Motion Based on Fed.R.Civ.P. 11 Against Defendant and Demand for Oral Argument, etc., is hereby transmitted for filing and service upon the listed parties.

If there is any question or problem, please call me at 970-221-3837

Edward Ronwin, PhD, JD