**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD/SRN) |
| This Document Relates to: | : | |
| *Edward Ronwin v. Bayer Corp.* | : | Case No. 02-0200 |

**DEFENDANT BAYER CORPORATION'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Edward Ronwin blames Baycol for a torn rotator cuff, blurred vision, cataracts, and an assortment of aches and pains that go with being 82 years old. Baycol had nothing to do with these ailments, and Mr. Ronwin has no competent evidence to the contrary. Rather:

- Mr. Ronwin's treating physicians testified that his conditions are likely the natural result of the aging process. *See infra*, Argument, Part I.

- The speculations of Mr. Ronwin's hired expert are inadmissible under *Daubert* and do not, in any event, salvage Mr. Ronwin's claim because the expert cannot opine to a reasonable degree of medical probability that Baycol caused Mr. Ronwin's alleged injuries. *See infra*, Argument, Part II.A.

- Mr. Ronwin's "do-it-yourself" expert report cannot save his claim because the report does not address whether Baycol caused his specific injuries. Moreover, the report is inadmissible because it consists of unsupported ruminations in a field in which Mr. Ronwin has not worked for 35 years. *See infra*, Argument, Part II.B.

On this record, Mr. Ronwin has presented no triable issue of material fact as to whether he sustained an injury caused by Baycol. Accordingly, summary judgment should be entered against Mr. Ronwin and in favor of Bayer. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## FACTS

## I. PLAINTIFF HAS A LONG HISTORY OF MEDICAL AILMENTS UNRELATED TO BAYCOL.

Mr. Ronwin has an extensive history of medical problems including high cholesterol, heart disease, peripheral vascular disease, claudication (blocked leg arteries), rotator cuff tears, and degenerative joint, disk and tendon disease. All of these ailments predated his use of Baycol and have continued to affect Mr. Ronwin long after he discontinued Baycol.

### A. Mr. Ronwin's Cardiac History and Use of Baycol

Mr. Ronwin admits he has had "heart trouble" since 1983 and peripheral vascular disease since at least the mid-1990s. Deposition of Edward Ronwin (Ex. A) at 33:24-34:18; Deposition of Mark W. Keller, M.D. (Ex. B) at 59:3-16 (long history of cardiovascular problems); Deposition of Mark Prince, M.D. (Ex. C) at 17:2-6 (same). Prior to taking Baycol, Mr. Ronwin had a possible heart attack, coronary bypass surgery, and angioplasty procedures. Keller Dep. (Ex. B) at 57:4-9, 56:15-24, 57:12-17; Deposition of William R. Hiatt, M.D. (Ex. D) at 21:24-23:22.

In November 2000, Mr. Ronwin presented to Dr. Mark Keller, a cardiologist, with complaints of angina (chest pain), pain in his legs caused by claudication (blocked arteries), and high cholesterol. Keller Dep. (Ex. B) at 56:6-24. In an effort to control Mr. Ronwin's high cholesterol, Dr. Keller placed him on Baycol in early 2001. A month after starting Baycol, Mr. Ronwin's LDL cholesterol had dropped

more than 50%, from 172 to 80. *Id.* at 74:9-17. In April 2001, his LDL cholesterol reading was at 94, still below the recommended levels. *Id.* at 75:6-20.

In May 2001, Mr. Ronwin unilaterally decided to save money by cutting his dosage from once a day to once every other day. *Id.* at 76:20-77:3, 79:19-21 (stating that Mr. Ronwin informed him he would be cutting his dosage, contrary to Dr. Keller's recommendation); Ronwin Dep. (Ex. A) at 44:2-45:4 (stating reason for cutting dosage was belief that he could get the same therapeutic effect with cost savings). Mr. Ronwin's LDL reading in July 2001 was 106 – above the guideline for "high-risk" patients like himself. Keller Dep. (Ex. B) at 82:4-18. Mr. Ronwin discontinued Baycol in August of 2001. Complaint (Ex. E) ¶ V; Case Specific Medical Expert Report Pursuant to PTO 114 of Raul G. Reyes, M.D. ("Reyes Report") (Ex. F) ¶ 5. Mr. Ronwin then was prescribed another statin, Zocor. Keller Dep. (Ex. B) at 84:10-12; Prince Dep. (Ex. C) at 31:14-20. He remains on Zocor, which he takes every other day. Ronwin Dep. (Ex. A) at 35:9-17.

Since discontinuing Baycol, Mr. Ronwin has continued to complain of leg pains his physicians attribute to claudication. *See, e.g.*, Prince Dep. (Ex. C) at 21:22-22:14; Deposition of Eugene Wolfel, M.D. (Ex. G) at 47:24-48:4.

**B. Mr. Ronwin's Other Ailments**

In September 1994, Mr. Ronwin tore his right rotator cuff and underwent surgery to correct that injury. Ronwin Dep. (Ex. A) at 327:4-10. At least one physician has informed Mr. Ronwin that a degenerative condition in his right shoulder may have caused the tear. *Id*. at 343:19-22; 346:20-24. Mr. Ronwin subsequently tore his left rotator cuff and had surgery to correct that problem in 2003. Deposition of Sally A.

Knauer, M.D. (Ex. H) at 49:15-22 (orthopedist who performed surgery on Mr. Ronwin's left rotator cuff in 2003). The orthopedist who operated on Mr. Ronwin attributes the problem to age, degenerative conditions, and nerve impingement. *Id.* at 73:4-18. Other physicians concurred that degeneration in the shoulder caused the problem. Deposition of Jane Servi, M.D. (Ex. I) at 76:13-18 (attributing left rotator cuff injury to degenerative tendon); Deposition of Richard Torkelson, M.D. (Ex. J) at 94:5-16, 94:24-95:6, 103:11-16 (same).

Since discontinuing Baycol, Mr. Ronwin has complained of joint problems, including elbow and back pain. Deposition of Kevin Deane, M.D. (Ex. K) at 13:12-16, 20:20-21:25, 43:20-44:5 (rheumatologist who treated Mr. Ronwin for elbow pain in 2005, attributing pain to aging and a needle stick); Knauer Dep. (Ex. H) at 89:16-91:4 (orthopedist who evaluated Mr. Ronwin for back pain in 2003, attributing pain to degenerating disks); Hiatt Dep. (Ex. D) at 30:22-31:5 (cardiologist to whom Mr. Ronwin presented with back pain in 2002 attributing pain to claudication and possible neuromuscular condition); Prince Dep. (Ex. C) at 22:4-14 (attributing back pain to claudication and arthritis).

Mr. Ronwin claims to have cataracts and occasional blurred vision. Plaintiff's Fact Sheet (Ex. L) § VI.A.1. He testified that his ophthalmologist believes the cataracts do not require treatment because they are so slight. Ronwin Dep. (Ex. A) at 199:11-12. Mr. Ronwin also testified that his blurred vision resolved without medical intervention. *Id.* at 175:2-11, 174:25-175:1. Mr. Ronwin claims his cataracts and blurred vision result from Baycol use, but he cannot recall precisely when either condition began.

*Id.* at 174:4-17, 197:19-25. No physician has attributed his cataracts to Baycol. *Id.* at 199:7-13, 199:21-200:1.

## II. PLAINTIFF CLAIMS THAT BAYCOL CAUSED THESE AILMENTS.

Despite his long history of medical problems and his advancing age, Mr. Ronwin blames Baycol for everything that ails him. His complaint alleges that, shortly after commencing Baycol use, he began to experience "muscular difficulties in various parts of the body." Complaint ¶ VIII. In subsequent submissions, Mr. Ronwin identified his alleged injuries as a torn left rotator cuff, leg pain, back pain, elbow pain, blurred vision, cataracts, and trouble walking. Plaintiff's Fact Sheet (Ex. L) § VI.A.1.

## ARGUMENT

Mr. Ronwin asserts claims for gross negligence, strict liability, and breach of implied warranty, each of which requires proof that Baycol caused him injury. *See* Complaint ¶¶ XI, XVII, XXII (injury allegations for each cause of action); *see also Truck Ins. Exchange v. Magnetek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004) (applying Colorado law, finding causation requisite element to each of the claims Mr. Ronwin alleges); *Waggoner v. General Motors Corp.*, 771 P.2d 1195, 1204 (Wyo. 1989) (proximate cause required under Wyoming law for warranty and strict liability claims involving injury); *Hatton v. Energy Elec. Co.*, 148 P.3d 8, 13 (Wyo. 2006) (negligence action in Wyoming requires proof of causation and injury).[1] Mr. Ronwin's claim fails because he cannot establish an injury caused by Baycol.

---

[1] Mr. Ronwin was prescribed Baycol while living in Wyoming, but now resides in Colorado. This memorandum cites the law of both states.

Under Wyoming law, Colorado law, and Pretrial Order 114, specific causation must be proven to a reasonable degree of medical probability through expert medical testimony. *In re Baycol Prods. Litig.*, 321 F. Supp. 2d 1118, 1124-25 (D. Minn. 2004) (plaintiff must prove "injury and a causal connection between the claimed injury and the event sued upon"); *Vassos v. Roussalis*, 658 P.2d 1284, 1290-91 (Wyo. 1983) (quoting *Norland v. Washington General Hospital*, 461 F.2d 694, 697 (8th Cir. 1972)) (medical testimony taken as a whole must convey that causation is more probable than not); *Daugaard v. People in Interest of Daugaard*, 176 Co. 38, 43-44, 488 P.2d 1101, 1103-04 (1971) (testimony to a reasonable degree of medical certainty or probability required).

Each of Mr. Ronwin's treating physicians testified that Mr. Ronwin did not suffer an injury caused by Baycol. Further, as demonstrated below, Mr. Ronwin's expert testimony is inadmissible and, even if it were admitted, insufficient to salvage his claim. Accordingly, judgment should be entered against Mr. Ronwin.

## I. MR. RONWIN'S TREATING PHYSICIANS ATTRIBUTE HIS ALLEGED INJURIES TO FACTORS OTHER THAN BAYCOL.

### A. Mr. Ronwin's Rotator Cuff Injury Was Not Caused By Baycol.

Mr. Ronwin claims that the "primary injury" he suffered from Baycol was a left rotator cuff tear. *See* Ronwin Dep. (Ex. A) at 142:13-17. But there is no medical evidence that Mr. Ronwin's rotator cuff tear was caused by Baycol.

Mr. Ronwin's shoulder surgeon, Dr. Sally Knauer, testified that the universe of *possible* causes of Mr. Ronwin's shoulder injury was "trauma and impingement syndrome, aging, acromioclavicular degenerative joint disease, shoulder dislocation" and "that *the most likely* cause [of Mr. Ronwin's injury] would be a combination of factors, including the impingement, bone spurs, age of the patient." Knauer Dep. (Ex. H) at 72:10-19, 73:4-18; *see also id.* at 97:3-10. Dr. Knauer stated that Baycol would not even be on the list of plausible causes of Mr. Ronwin's shoulder problem:

> Q: Doctor, in your clinical judgment, would you place Baycol on you list of differential diagnoses or causes of a supraspinatus tendon tear?
>
> A: I would not.

*Id.* at 72:25-73:3. Indeed, she testified to a reasonable degree of medical probability that Baycol ***did not*** cause Mr. Ronwin's shoulder injury. *Id.* at 96:18-21.

Dr. Jane Servi, who treated Mr. Ronwin for his shoulder problems before referring him to Dr. Knauer, concurred. Servi Dep. (Ex. I) at 76:13-18 (stating that Mr. Ronwin's shoulder injury "was most likely consistent with a degenerative tendon and a degenerative tear"); *id*. at 111:8-20 (stating that she has no basis upon which to believe

that Baycol could have caused Mr. Ronwin's shoulder injury). So did Dr. Richard Torkelson, an orthopedist to whom Mr. Ronwin presented with shoulder pain in 2001. Torkelson Dep. (Ex. J) at 94:5-16; 94:24-95:6, 103:11-16 (shoulder problem likely a result of degenerative condition more commonly seen in aging patients); *id.* at 96:2-24 (ruling out Baycol as a cause of Mr. Ronwin's left shoulder injury).[2] In sum, every physician who has treated Mr. Ronwin's shoulder injury states that Baycol is not within the realm of possible causes.

**B. Mr. Ronwin's Other Alleged Injuries Were Not Caused by Baycol.**

In addition to a rotator cuff tear, Mr. Ronwin attributes an assortment of other alleged ailments to Baycol:

- leg pain;
- right elbow pain;
- back pain;
- blurred vision and cataracts; and
- gait problems.

Plaintiff's Fact Sheet (Ex. L) § VI.A.1. Mr. Ronwin's treating physicians do not attribute any of these conditions to Baycol. Dr. Keller, Mr. Ronwin's cardiologist and the doctor who prescribed Baycol, testified:

---

[2] The opinions of the physicians who treated Mr. Ronwin's shoulder are supported by the other medical testimony in this case. *See* Keller Dep. (Ex. B) at 40:14-24; 99:6-8, 99:12-17; 194:3-14 (cardiologist who prescribed Baycol stating that he has never seen a rotator cuff injury associated with a statin, nor has he seen literature associating Baycol with rotator cuff injury); Hiatt Dep. (Ex. D) at 66:14-67:11 (peripheral artery disease specialist who refused to provide Mr. Ronwin with an expert report because he could not make the connection between Baycol and rotator cuff injury); 92:22-25 (no evidence suggesting Baycol can cause rotator cuff injury); Prince Dep. (Ex. C) at 27:13-28:4; 44:3-8, 44:21-45:5 (internist who has never seen a connection between statin use and rotator cuff injury and could not opine to a reasonable degree of medical probability that Mr. Ronwin's shoulder injury was caused by Baycol).

Q: Based on your care and treatment of Dr. Ronwin, did you find any adverse effects or side effects that you in any way could attribute to Baycol?

A: No.

Q: Did he ever complain to you about any problems or symptoms that in any way could be attributed to Baycol?

A: No.

Keller Dep. (Ex. B) at 95:13-19; *see also id.* at 97:12-15 (opining that Baycol caused Mr. Ronwin no harm). Dr. Hiatt, whom Mr. Ronwin regards as his current primary care physician, Ronwin Dep. (Ex. A) at 256:16-257:15, testified that he could not associate any conditions Mr. Ronwin has experienced with the use of Baycol. Hiatt Dep. (Ex. D) at 67:12-16. There is no evidence in the medical record or in the testimony of Mr. Ronwin's treating physicians that supports these claims.

**1. Leg pain.** Mr. Ronwin's leg pain is caused by claudication, long-suffered by Mr. Ronwin as a complication of peripheral artery disease. Mr. Ronwin's cardiologist, Dr. Keller, testified that Mr. Ronwin's leg pain was related to his peripheral artery disease and claudication:

Q: Did Dr. Ronwin, during your care and treatment of him, ever complain to you about muscle aches and pains?

A: Only his claudication pain, which is from blocked arteries in his legs.

Q: But did you have any belief that that was in any way related to statins?

A: No.

Q: What did you believe it was related to?

A: To blocked leg arteries.

Keller Dep. (Ex. B) at 92:20-93:4; *see also* Prince Dep. (Ex. C) at 21:22-22:14 (internist stating leg and back pain is due to claudication and arthritis); Wolfel Dep. (Ex. G) at 47:24-48:4 (cardiologist stating that leg pain is associated with claudication). Mr. Ronwin concedes that his claudication predated and is unrelated to his Baycol use. Ronwin Dep. (Ex. A) at 33:24-34:18; 179:6-8.

**2. Elbow pain.** Dr. Kevin Deane, a rheumatologist who treated Mr. Ronwin for arm pain, testified that Mr. Ronwin has bone spurs on the tip of the elbow as well as mild degenerative disease due to aging. Deane Dep. (Ex. K) at 20:4-21:1. Some of Mr. Ronwin's pain is due to tennis elbow – an inflammation of the tendon caused by overuse. *Id.* at 21:4-25. Mr. Ronwin may also have sustained some minor nerve damage in the front of his elbow, likely attributable to a needle stick. *Id*. at 43:20-44:5. Dr. Deane testified that it is "highly unlikely" that a statin caused Mr. Ronwin's elbow pain. *Id.* at 56:17-18, 20-21, 60:5-9.

**3. Back pain.** Mr. Ronwin's treating physicians attribute his back pain to claudication, neuromuscular disorder, and arthritis. His primary care physician, Dr. Hiatt, states that Mr. Ronwin experienced two kinds of pain, "one was claudication, the other was consistent with neuromuscular etiology of pain." Hiatt Dep. (Ex. D) at 30:22-31:5. Dr. Hiatt does not relate any condition Mr. Ronwin has experienced to Baycol. *Id.* at 67:12-16. Dr. Prince, an internist to whom Mr. Ronwin presented on occasion, diagnosed Mr. Ronwin's back pain to be the result of claudication and arthritis. Prince Dep. (Ex. C) at 22:4-14. Dr. Knauer, to whom Mr. Ronwin presented with back pain on a single occasion in May 2003 (nearly two years after discontinuing Baycol), concluded

that Mr. Ronwin's back pain was the result of degenerative disk disease. Knauer Dep. (Ex. H) at 89:16-91:4. Whether Mr. Ronwin's back pain was the result of claudication, neuromuscular disorder, arthritis, degenerative disks, or a combination of these conditions, there is no evidence that Mr. Ronwin's back pain was due to Baycol.

**4. Blurred vision and cataracts.** Mr. Ronwin testified that, for a short time, he suffered intermittent blurred vision while reading. Ronwin Dep. (Ex. A) at 174:18-22; 175:2-11. Mr. Ronwin admits to never having sought medical attention for his alleged blurred vision and acknowledges that none of his health care providers has ever indicated to him that Baycol caused the alleged blurred vision. *Id.* at 174:25-175:1. Indeed, he admits that old age, and any number of causes ***other than Baycol***, may be the cause of this alleged condition. *Id*. at 175:21-176:4.

Similarly, Mr. Ronwin admits that he is uncertain whether Baycol had anything to do with his cataracts. *Id.* at 146:24-147:2; 196:21-25. He does not even know whether the cataracts began forming before or after he took Baycol. *Id.* at 197:19-25. No doctor has ever told him that Baycol caused his cataracts to form. *Id.* at 199:7-13; 199:21-200:1. He has never received treatment for cataracts. *Id.* at 199:14-20.

**6. Gait problems.** Most of Mr. Ronwin's physicians have no recollection of Mr. Ronwin complaining of trouble walking. *See* Hiatt Dep. (Ex. D) at 64:5-12; Prince Dep. (Ex. C) at 22:15-18; Servi Dep. (Ex. I) at 70:16-18; Torkelson Dep. (Ex. J) at 48:11-14; Deane Dep. (Ex. K) at 65:8-10; Keller Dep. (Ex. B) at 96:16-18. None of the doctors attributes any gait problems to Baycol. Dr. Wolfel, one of Mr. Ronwin's cardiologists, associated Mr. Ronwin's complaints of trouble walking with

claudication. Wolfel Dep. (Ex. G) at 96:25-97:8. Mr. Ronwin acknowledges that claudication can cause limping. Ronwin Dep. (Ex. A) at 259:3-23. Dr. Knauer believes Mr. Ronwin's gait problems are caused by degenerative disk disease. *See* Section II.A.2.c., *supra* (discussing Mr. Ronwin's 2003 presentation with back pain); Knauer Dep. (Ex. H) at 89:16-91:4; 93:22-94:3. Though Mr. Ronwin admits that his treating physicians attribute his gait problems to causes other than Baycol, he clings to "a chance" Baycol may be the culprit. Ronwin Dep. (Ex. A) at 201:20-202:7.

**C. Baycol Worked For Mr. Ronwin.**

While the medical record contains no support for Mr. Ronwin's allegations, the medical record does demonstrate that Baycol was very successful in lowering his cholesterol. In January of 2001, Mr. Ronwin's cholesterol tests returned an LDL cholesterol reading at 172. Keller Dep. (Ex. B) at 65:10-24. Dr. Keller promptly prescribed Baycol. *Id.* at 67:1-5. One month later, Mr. Ronwin's LDL levels had dropped to 80. *Id.* at 74:9-17. Indeed, Mr. Ronwin cited the efficacy of Baycol as part of his rationale for reducing his dosage to every other day. Letter by Mr. Ronwin to Dr. Keller, May 18, 2001 (Ex. M). In spite of this, Baycol continued to help control Mr. Ronwin's LDL levels. Keller Dep. (Ex. B) at 76:20-77:3; 79:12-25. Dr. Keller described Mr. Ronwin's LDL reduction while using Baycol as "very excellent." *Id.* at 74:9-75:24; 90:25-91:11.

## II. THE "EXPERT" TESTIMONY TENDERED IN SUPPORT OF MR. RONWIN'S CLAIM IS INADMISSIBLE AND WOULD NOT, IN ANY EVENT, CREATE A TRIABLE ISSUE OF FACT.

In an attempt to shore up his case, Mr. Ronwin has proffered two "expert" reports: the first, by Dr. Raul Reyes, attributes Mr. Ronwin's alleged injuries to his use of Baycol; the second, by Mr. Ronwin himself, asserts that Baycol is biochemically destructive to a variety of tissues. Neither opinion meets the standard for expert testimony set forth in Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Nor do these opinions create a triable issue of fact on whether Mr. Ronwin suffered an injury caused by Baycol.

### A. Dr. Reyes' Testimony Does Not Create A Triable Issue Of Fact.

Mr. Ronwin tenders the report of Dr. Raul Reyes to establish that Baycol caused Mr. Ronwin's alleged injuries. Dr. Reyes reviewed a tiny fraction of Mr. Ronwin's medical record (approximately 33 pages out of more than 3000 pages produced in this action) and talked to Mr. Ronwin. Reyes Report (Ex. F) ¶ 3, and Exhibit B; *id.* ¶ 5.

Based on these two sources, Dr. Reyes opined in his report that Mr. Ronwin began experiencing left shoulder pain one month after starting Baycol, that this pain led to rotator cuff surgery, and that "there is a high probability that this injury was caused by Baycol ingestion." *Id.* ¶¶ 5, 6. At his deposition, however, Dr. Reyes corrected his use of the term "probable" to ***"possible."*** Deposition of Raul G. Reyes, M.D. (Ex. N) at 49:4-50:1 (emphasis added). Based entirely on Mr. Ronwin's self-reporting, Dr. Reyes opined that Mr. Ronwin's alleged leg pain, back pain, elbow pain, blurred vision, and gait

problems "may be related to his ingestion of Baycol." Reyes Report (Ex. F) ¶ 7. Dr. Reyes offers no opinion on Mr. Ronwin's alleged cataracts.

Dr. Reyes' testimony is inadmissible. And even if it were allowed into evidence, speculation that Baycol "possibly" caused alleged injuries is insufficient to survive summary judgment. *See, e.g., In re Baycol Prods. Litig.*, 321 F. Supp. 2d 1118, 1124-25 (D. Minn. 2004) (plaintiff must prove "injury and a causal connection between the claimed injury and the event sued upon"); *Vassos v. Roussalis*, 658 P.2d 1284, 1290-91 (Wyo. 1983) (medical testimony must show causation more probable than not); *Daugaard v. People in Interest of Daugaard*, 176 Co. 38, 43-44, 488 P.2d 1101, 1103-04 (1971) (testimony of medical possibilities "amounts to no more than conjecture and speculation").

**1. Dr. Reyes' testimony on specific causation is inadmissible under *Daubert*.**

Dr. Reyes' testimony should be excluded because it is not based on sound science. First, he admits he has no experience with purported statin-related injuries and that his opinions are based only on speculation. Second, he failed to follow proper medical methodology by conducting a differential diagnosis. Third, he improperly formed his opinion based largely on Mr. Ronwin's self-reporting.

***Speculation by an unqualified expert.*** Dr. Reyes is a general surgeon who specializes in providing testimony for hire. Reyes Dep. (Ex. N) at 8:3-9:13 (stating that 98% of the patients he sees in his offices come from attorney referrals). In the past, his objectivity has been questioned by courts, after he set up shop in disaster areas to provide

on-the-spot, litigation-ready expert opinions. *Francois v. Norfolk Southern Corp.*, 812 So.2d 804, 806 (La. Ct. App. 2002) (questioning Dr. Reyes' objectivity); *Davis v. Sonnier*, 682 So.2d 910, 919 (La. Ct. App. 1996) (finding Dr. Reyes' credibility questionable and excluding his testimony because "the subjective facts upon which [his] diagnoses and opinions were based [were] not substantiated by the record"). In this MDL, he has provided expert reports to 544 plaintiffs, including Mr. Ronwin.

In his deposition, Dr. Reyes admitted that he lacked specific expertise relevant to this litigation. In particular, Dr. Reyes conceded that he has no practical experience with statins. Reyes Dep. (Ex. N) at 32:9-13 (never prescribed statins). Indeed, he admitted to not having any medical knowledge regarding statins prior to being hired as an expert in this litigation. *Id*. at 47:8-10 ("you know, at the time I started seeing these patients, I didn't know what Baycol could or could not do").

In spite of his lack of relevant experience, Dr. Reyes believes that – because Baycol was withdrawn from the market – he and anyone else can speculate on the possible adverse effects of the medicine:

> You know, obviously, if people had not developed rhabdomyolysis, the whole Baycol problem might not have come up. I don't know. But once a problem like this comes up, then ***my feeling is that most everybody is on equal terms about speculating what can happen in the future, and I don't know what Baycol did to a lot of people***. So, all I'm saying is that he was exposed to a substance that was proven to be bad, and what's going to happen to all these people, I don't know . . . .

Reyes Dep. (Ex. N) at 50:15-51:2 (emphasis added); *see also id.* at 34:16-24 (stating "my conclusions were based upon my feelings" when asked if he was offering opinions to a reasonable degree of medical probability). Thus, Dr. Reyes admits that, in order to

conclude that Baycol caused Mr. Ronwin's shoulder injury, Dr. Reyes had to speculate. *Id.* at 47:15-18 ("Does it make the patient more prone to develop an injury like a shoulder injury, which is so common. And that's the question mark. I don't know."); 54:16-19 ("Now maybe he feels that it caused it. I -- I don't know. Again, it's something that I would only be speculating to say that it caused it"). *See also id.* at 41:8-23 (conceding he had not seen a study associating Baycol with rotator cuff injury).

Such speculation, however, is not a proper foundation for expert testimony. *J.B. Hunt Transport, Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (expert testimony based on speculative assumptions is inadmissible under *Daubert*). "[I]n order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation – *i.e.* 'good grounds,' based on what is known." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 590 (1993). Dr. Reyes has not identified a principled basis upon which to attribute plaintiff's alleged injuries to Baycol.

***Failure to perform differential diagnosis*** A differential diagnosis requires that the physician consider all potential causes, and then rule out the least likely until the most probable cause of injury can be identified. *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001). This Court has required that a differential diagnosis be conducted to support a claim. *In re Baycol*, 321 F. Supp. 2d at 1124-27 (requiring a differential diagnosis); *see also Krueger v. Johnson & Johnson Prof'l Inc.*, 66 Fed. Appx. 661, 662 (8th Cir. 2003) (failure to address alternative causes of injury rendered testimony unreliable under *Daubert*); *National Bank of Commerce v. Associated Milk*

*Producers, Inc.*, 191 F.3d 858, 861 (8th Cir. 1999) (excluding expert who had failed to rule out alternative causes of plaintiff's laryngeal cancer); *Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F. Supp. 2d 1118, 1139-40 (D. Minn. 2003) (excluding expert as unreliable for failing to rule out alternative causes of an alleged injury).

Dr. Reyes departed from sound medical practice by failing to conduct a differential diagnosis. With respect to Mr. Ronwin's shoulder injury, Dr. Reyes concedes he could not rule out aging, degenerative conditions, or osteoarthritis as causes. Reyes Dep. (Ex. N) at 47:2-10; 47:19-48:3; 48:10-49:5. Indeed, Dr. Reyes could not seriously consider alternative causes, given that he saw only a fraction of Mr. Ronwin's medical record. Reyes Report (Ex. F) at Exhibit B (attaching only 33 pages of the medical record as having been reviewed).

With respect to his opinion that Baycol may have been related to Mr. Ronwin's other alleged injuries, Dr. Reyes admits that he could not testify to a reasonable degree of medical probability that the injuries alleged were caused by Baycol. Reyes Dep. (Ex. N) at 34:16-24 (stating "my conclusions were based upon my feelings" when asked if he was offering opinions to a reasonable degree of medical probability). Indeed, it does not appear that Dr. Reyes even attempted a differential diagnosis as to these alleged conditions. Instead of stating the most likely cause, Dr. Reyes merely concludes that Baycol "***may be related***" to plaintiff's alleged injuries. Reyes Report (Ex. F) at ¶ 7. (emphasis added). Because Dr. Reyes' expert opinions are not based on scientific consideration and exclusion of alternative causes, they are not admissible under *Daubert*.

***Reliance on plaintiff's self-reporting***. Indeed, Dr. Reyes' putative "opinions" are nothing more than a parroting of the list of ailments provided by Mr. Ronwin.

> Q: Okay. So the only reason you considered Baycol -- if [Mr. Ronwin] had developed shoulder pain before, you wouldn't have attributed it to the Baycol, right?
>
> A: That's correct. I would not.
>
> Q: Okay. So it's the temporal relationship between those two events?
>
> A: Well, it's the recognition of a toxic substance with the development of a problem for an individual ***that he strongly feels injured him***.

Reyes Dep. (Ex. N) at 51:17-25 (emphasis added).

Dr. Reyes' reliance on Mr. Ronwin's self-reporting is a medically unsound basis upon which to diagnose injury. "The self-reporting of a plaintiff's medical history in preparation for litigation, without additional independent confirmation, is inherently unreliable." *Goeb v. Tharaldson*, 615 N.W.2d 800, 816 (Minn. 2000) (citing *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 762 (3d Cir. 1994)).[3] That is precisely what has occurred here, where Dr. Reyes admits to having relied on Mr. Ronwin's self-reporting without independent confirmation in the medical record. Reyes Dep. (Ex. N) at 51:17-25 (stating that Mr. Ronwin's opinion that his shoulder pain was caused by Baycol was the foundation of his opinion regarding Mr. Ronwin's rotator cuff injury); 55:21-56:18, 63:1-17 (admitting the basis for his opinion regarding other ailments Mr. Ronwin alleges is premised in Mr. Ronwin's self-reporting).

[3] *Compare* Reyes Dep. (Ex. N) at 32:14-33:1 (stating that the fact a patient is embroiled in litigation would not be a factor in his evaluation of self-reported information in making a diagnosis).

Instead of grounding his "diagnosis" in the medical record, or upon an independent examination of Mr. Ronwin, or even on scientific study supporting his "diagnosis," Dr. Reyes has simply guessed in asserting Baycol caused Mr. Ronwin's alleged injuries. Dr. Reyes' speculation does not meet the standard of Rule 702 and *Daubert*, and his testimony should be excluded.

**2. Dr. Reyes' speculation does not create a triable issue of fact.**

Even if his testimony were admissible – and it is not – Dr. Reyes' opinions would not create a triable issue of fact on whether Mr. Ronwin suffered an injury caused by Baycol. Dr. Reyes' conclusion that there is a ***possibility*** that Baycol caused Mr. Ronwin's alleged injuries is insufficient as a matter of law. "[T]he plaintiff must establish causation beyond mere possibility or speculation." *Kaiser Foundation Health Plan of Colorado v. Sharp*, 741 P.2d 714, 719 (Colo. 1987); *see also Olson v. Federal Amer. Partners*, 567 P.2d 710, 719 (Wyo. 1977) (mere possibility of causation is not sufficient).

Specifically, Dr. Reyes admits that he cannot say whether Baycol was the cause of Mr. Ronwin's rotator cuff injury:

> Q: Baycol might not have had anything to do with this, right?
>
> A. Maybe.
>
> Q: Can you say one way or the other?
>
> A: No I can't . . . .

Reyes Dep. (Ex. N) at 49:1-5. Dr. Reyes conceded that he would be merely speculating to diagnose Mr. Ronwin's rotator cuff injury as resulting from Baycol ingestion. Reyes

Dep. (Ex. N) at 47:15-18 ("Does it make the patient more prone to develop an injury like a shoulder injury, which is so common. And that's the question mark. I don't know."); 54:16-19 ("Now maybe he feels that it caused it. I -- I don't know. Again, it's something that I would only be speculating to say that it caused it.")

Dr. Reyes' testimony is similarly deficient with respect to Mr. Ronwin's alleged leg, elbow and back pain, blurred vision, cataracts, and gait problems. Reyes Report (Ex. F) at ¶ 7. In fact, Dr. Reyes does not affix a cause of these alleged injuries, but instead suggests the ***possibility*** that Baycol ***may be related*** to plaintiff's alleged injuries. Reyes Report (Ex. F) at ¶ 7. (stating that these injuries "may be related" to his ingestion of Baycol).

Testimony that Baycol "possibly" caused Mr. Ronwin's ailments is not sufficient to create a triable issue of fact on injury and causation. Accordingly, even if Dr. Reyes' testimony were admissible, summary judgment should still be entered against Mr. Ronwin.

### B. Mr. Ronwin's Own "Expert" Report Is Not Admissible and Does Not Create A Triable Issue of Fact.

Finally, Mr. Ronwin has submitted his own "expert" report in support of his claims.[4] Mr. Ronwin opines that the presence of fluorine in the biochemical make-up of Baycol can cause injury by "etching" collagen cells in muscle, tendon, and other parts of

---

[4] Bayer has not yet deposed Mr. Ronwin as an expert because he demanded a fee to testify on his own behalf. *See* Bayer Corporation's Motion to Compel and Memorandum in Support, filed December 4, 2006. Notwithstanding Bayer's motion to compel Mr. Ronwin's "expert" deposition, summary judgment is appropriate at this stage for the reasons stated herein.

the human body. Ronwin Report (Ex. O) at 6-7. This is nothing more than an unsupported, untested hypothesis and should be excluded. Moreover, the report fails to create a triable issue of fact because Mr. Ronwin does not opine (nor could he opine) that fluorine "etching" caused *his* alleged injuries.

**1. Mr. Ronwin's "expert" testimony is inadmissible under *Daubert*.**

Mr. Ronwin's report is inadmissible for at least two reasons. First, Mr. Ronwin lacks current scientific expertise. Although he earned a doctorate in biochemistry more than 50 years ago, Ronwin Dep. (Ex. A) at 14:25-15:8, Mr. Ronwin left that field and went to law school in 1971. *Id.* at 27:3-4. He has not worked in biochemistry since then. *Id.* at 27:3-32:5. Although Mr. Ronwin claims to have done some reading in the field, that is no substitute for actual work as a scientist, which Mr. Ronwin has not pursued in more than 35 years. *See generally Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 687 (8th Cir. 2001) (expertise developed for litigation is a factor in determining reliability and admissibility); *Wagner v. Hesston Corp.*, 2005 WL 1540135, at *6 (D. Minn. June 30, 2005) (expert opinion derived almost entirely within the context of litigation "increase[d] the unreliability of [the expert's] opinions").

Second, Mr. Ronwin's opinions are untested, have not been the subject of peer review, and are not corroborated by independent sources. *Daubert*, 509 U.S. at 593-94 (identifying these as factors in determining reliability of expert opinion); *Lauzon*, 270 F.3d at 686-687 (citing *Daubert*, same). His report strings together a number of unsupported assertions to produce a novel theory that he treats as scientific truth, rather than inadmissible speculation. *Glastetter*, 252 F.3d at 989 (a court must "separat[e]

expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge"); *see also Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 472-476 (M.D.N.C. 2006) (piecing together various theories as building blocks into a single, untested opinion does not meet the requirements of Rule 702 and *Daubert*). He hypothesizes:

- that nitrogen atoms ***can*** negatively charge the fluorine atom in the carbon-fluorine bond he identifies in the Baycol molecule, Ronwin Report (Ex. O) at 5;
- that hydroxyl ions in the human body ***can*** attack the carbon atom in a carbon-fluorine bond, permitting the fluorine to wander through the body, *id*. at 5;
- that the Baycol molecule ***can*** result in the formation of fluorine ions in body fluids, *id*. at 6;
- that "one ***can expect*** that far less $F^-$ ion [sic] will arise from the Lipitor molecule as compared to the Baycol molecule," *id.* at 6 (emphasis added);
- that fluorine ion release from the Baycol molecule is destructive to the human body, and not just muscle cells, *id*. at 6;
- that the release of fluorine ions "***must be*** a very major factor [in injury compared to other statin mechanisms] since Baycol's destructive action is significantly greater than that of all other common statins," *id*. at 7 (emphasis added);
- that studies of fluoride in water can be translated to fluorine release in media contained within the human body such as blood and plasma, *id*. at 6; and
- that the form of fluoride used to "etch" glass can be translated to predict how the release of a fluorine ion would affect the human body, *id*. at 7.

As the Supreme Court has made clear, an expert opinion must be connected to existing data by more than just the *ipse dixit* of the expert. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Mr. Ronwin's theory does not make these connections. For all these reasons, Mr. Ronwin's report and opinions should be excluded under Rule 702.

**2. Mr. Ronwin's purported "expert" report does not create a triable issue of fact.**

Even if the Court were to admit Mr. Ronwin's novel theory, that theory would not get Mr. Ronwin to trial. Mr. Ronwin's report does not address the issue of specific causation. *See generally* Ronwin Report (Ex. O). The report does not attempt to apply the purported "etching" of human cells to *his* alleged injuries. Plaintiff's Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand or, in the Alternative, to Order Negotiation ¶ 22-23 (advancing his report as an abstract discussion of the biochemistry of Baycol, and not as a report on specific causation). Mr. Ronwin cannot cure this flaw by amending his report because he is not and never has been a medical clinician qualified to opine on causation of the ailments of which he complains. *Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F. Supp. 2d 1118, 1138 (D. Minn. 2003) (excluding expert testimony where expert did not possess requisite "foundational basis to 'rule in'" possible causes of a condition).

In short, Mr. Ronwin's "expert" opinion does not provide him with a triable issue of fact as to whether Baycol caused *his* alleged injuries. Accordingly, summary judgment should be entered against Mr. Ronwin and in favor of Bayer.

## CONCLUSION

For the foregoing reasons, defendant Bayer Corporation respectfully requests that the Court dismiss this action with prejudice, and grant summary judgment in favor of Bayer Corporation and against plaintiff Edward Ronwin.

Dated: January 19, 2007

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
James R. M. Hemmings
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Jeffrey R. Pilkington
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, CO 80202
(303) 892-9400

*Counsel for Bayer Corporation*