UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | ) | |
| This Document relates to: | ) | MDL 1431 (MJD/SRN) |
| Edward Ronwin v. Bayer Corp. | ) | Case No. 02-0200 |

| | | | |
|---|---|---|---|
| STATE OF COLORADO | ) | | |
| | ) | ss. | AFFIDAVIT OF DR. EDWARD RONWIN |
| COUNTY OF LARIMER | ) | | |

I, Dr. Edward Ronwin, being first sworn upon oath, depose and say:

1. That I am the Plaintiff in the above entitled action and that I make this affidavit on my own behalf.

2. That I received a copy by U.S. mail of Defendant's Motion for Summary Judgment on January 25, 2007.

3. That both Dr. Richard Torkelson and Dr. Mark Keller deliberately lied in their testimony at their depositions.

4. That the leg pains which afflict me since shortly after the start of Baycol ingestion are not calf claudication pains nor centered in the calfs of either leg.

5. That I commenced dosing with Baycol on January 10, 2001 and approximately 5 to 6 weeks thereafter I began to experience various injuries and physical dysfunctions.

6. That my right shoulder rotator cuff tear occurred in 1994 and that same was caused by a vehicle rear-ending to which I was subjected, and that said injury had and has nothing to do with the left shoulder rotator cuff tear which occurred due to the dosing with Baycol, and that no physical or other outside agent affected or afflicted me while and after I began taking Baycol.

7. Dr. Behrens, who performed the right shoulder rotator cuff surgery informed me that the tear was due to the vehicle rear-ending.

8. Despite surgery, the left shoulder has never returned to full capacity and probably never will.

9. The interaction with Dr. Kevin Deane, which occurred in 2005 is without any relationship to the injuries that I suffered from taking Baycol.

10. The back muscle spasm attack that I experienced in May, 2003, which involved involuntary



SCANNED
FEB 12 2007
U.S. DISTRICT COURT

02/12/2007 07:36 FAX 970 224 3838 ED RONWIN 025

muscle contractions and expansions, was totally unrelated to the back, buttock and thigh pains that Baycol has caused me and which continue.

11. Dr. Mark Prince is in error when he testified that I have taken "arthritic medicine," with the exception of a day or two dosing with non-steroidal antiinflammatory drug which caused considerable stomach irritation and was discarded as a result.

12. Defendant's charges that I adopted every other day dosing with Baycol and other statins afterward "to save money," is absolutely false. My biochemical expertise led me to the every-other-day conclusion when I read a report in the prestigious journal, Science, and noted the very tight binding between statins, (including Baycol), and the liver enzyme, HMG Reductase, which statins inhibit.

13. I never told Dr. Torkelson that my left shoulder pain started "two" months before my visit to him on March 16, 2001 nor did I tell him that my left shoulder pain started "three" months before my visit to him on March 16, 2001.

14. Contrary to Dr. Torkelson's testimony, I did speak with him by telephone in February, 2004, and voiced my disagreement with the discrepancies in his notes which constitute the medical record of my two visits with him in his offices on March 16, 2001 and August 8, 2001.

15. The reasons for Dr. Torkelson's antagonistic attitude toward me are explained in the accompanying brief and are true.

16. The incidents of my interaction with Dr. Mark Keller related in the accompanying brief are true.

17. In March, 2006, a short time before his deposition, Dr. Hiatt told me that my "every other day dosing" concept was becoming popular. His subsequent testimony in deposition displays an opposite view, which is false.

18. I never asked Dr. Hiatt, contrary to his testimony at deposition, nor any other MD that I have seen for permission to take the statins I have taken, and I continue to take the statin that I am currently taking on an every other day dosing schedule.

19. My curriculum vitae and list of publications which are to be found in Exh. 2 of the accompanying brief are true and correct.

20. The field of medicine is moving deeper and deeper into the biochemical/molecular biological realm for diagnosis and treatment of diseases and injuries.

21. When I made the measurements of my left shoulder, full size, X-ray film taken on May 12, 2003 about two weeks prior to the surgery on said shoulder's rotator cuff tear, I used a ruler divided into centimeters and subdivided into millimeters; and said measurements were made



02/12/2007 07:36 FAX 970 224 3838 ED RONWIN 026

while both Dr. Raul G. Reyes and Mr. Mizgala, Defendant's attorney, were observing.

22. Since formally leaving university and medical school teaching and research, I have persisted in keeping myself abreast of current developments in biochemistry and molecular biology, and other areas of chemistry and the sciences.

23. I continue to be a member of the American Association for the Advancement of Science; the American Chemical Society and the American Society for Biochemistry and Molecular Biology, and I continue to receive scientific publications from these societies.

24. I have been legally granted the BS, MS, PhD and JD degrees.

25. I did teach an overview course in chemistry to airman at the E.F.Warren Air Force Base situated on the western perimeter of Cheyenne, WY in 2001.

26. I have never been diagnosed, nor suffered, from amnesia in my life.

27. What I have related in the accompanying brief about the nature and reactions of chemical entities I have discussed and the symbolism I have used relies on well known and used symbols and concepts, some of which are at least 75 or more years old and are still used in chemistry and related fields. Additionally, the concepts I have presented in the accompanying brief are largely supported by peer-review reports, ("papers"), by books which have gone through more than one edition which is a mark of excellence and acceptance in a field, and by my general store of personal, biochemical knowledge.

The foregoing is true of my own knowledge.

Edward Ronwin, PhD, JD

BEFORE ME this 10th day of February, 2007, appeared Dr. Edward Ronwin, known to me to be said person, and executed the above affidavit of his own free will.

NOTARY PUBLIC WENDY S. COMAN STATE OF COLORADO

MY COMMISSION EXPIRES: July 15, 2009

Notary Public in and for the County of Larimer, State of Colorado



02/12/2007 07:37 FAX 970 224 3838 ED RONWIN 027