**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| | : | |
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 |
| | : | (MJD/SRN) |
| This Document Relates to: | : | |
| | : | |
| *Edward Ronwin v. Bayer Corp.* | : | Case No. 02-0200 |
| | : | |

**DEFENDANT BAYER CORPORATION'S REPLY**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Edward Ronwin has done little more in his 72-page response than to accentuate the dearth of medical evidence supporting his claim. Indeed, the only people who have provided *any* testimony to support Ronwin's claim are his hired expert, Dr. Raul Reyes, and Ronwin himself. But Dr. Reyes' inadmissible, admittedly uninformed and speculative opinion and Ronwin's novel theory of general causation do not create a triable issue of material fact on case-specific causation – *i.e.*, whether Ronwin suffered an injury caused by Baycol. Accordingly, this Court should enter summary judgment against Ronwin and in favor of Bayer.

## I. RONWIN ADMITS THAT TESTIMONY FROM TREATING PHYSICIANS DOES NOT SUPPORT HIS CLAIMS.

None of Ronwin's treating physicians support his claim that Baycol caused him injury. See Motion at 7-12. This is uncontested by Ronwin. Instead, Ronwin contends that the Court should not credit his treating physicians' testimony because (a) they were lying in their depositions (*e.g.*, Response at 18 (Dr. Torkelson); 26 (Dr. Keller)); (b) they are incompetent (*e.g.*, Response at 22-26 (Dr. Keller)); (c) they

speculate (Response at 27 (Dr. Knauer)); or (d) they are not biochemists (*e.g.*, Response at 36-37 (Dr. Servi); 38-39 (Dr. Prince)).

Ronwin's attack on the only fact witnesses to his claims other than himself is supported only by his own argument and assertion. Ronwin's argument regarding his treating physicians does not generate a genuine issue of material *fact* supporting Ronwin's claims. Even if the Court were not to consider the testimony of Ronwin's treating physicians, there would still be no medical evidence supporting his claims.[1] Accordingly, whether the Court accepts Bayer's presentation of the medical testimony or Ronwin's nullification of his treating physicians' testimony, there is no support for Ronwin's claims in the medical record.

## II. DR. REYES' TESTIMONY IS INADMISSIBLE AND DOES NOT PROVIDE RONWIN'S CLAIMS WITH THE REQUISITE SUPPORT TO PERMIT THIS ACTION TO CONTINUE.

Ronwin concedes that the only medical evidence purporting to support his claims comes from Dr. Raul Reyes, a hired expert who has diagnosed more that 500 plaintiffs as having Baycol-related injuries in this MDL. Far from grounding his opinion in medicine, however, Dr. Reyes' report merely speculates that Baycol caused Ronwin injury. Dr. Reyes' opinion neither is admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), nor does it generate a genuine issue of material fact supporting Ronwin's action against Bayer.

[1] The testimony of Dr. Raul G. Reyes, Ronwin's hired medical expert, is inadmissible, and at any rate does not present a genuine issue of material fact supporting Ronwin's claim that Baycol caused him injury. *See* Section II *infra*.

***Unqualified, and Even Ronwin Must Agree.*** Ronwin does not deny that Dr. Reyes lacks experience with Baycol outside the context of this litigation. Deposition of Raul G. Reyes, M.D. ("Reyes Dep.") (Ex. A) at 32:9-13 (never prescribed statins); 47:8-10 ("you know, at the time I started seeing these patients, I didn't know what Baycol could or could not do"). Dr. Reyes does not have the specialized knowledge to qualify as an expert under *Daubert*. *See, e.g., Daubert*, 509 U.S. 589-90 (requiring specialized knowledge to qualify as "expert" under Rule 702); *Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F. Supp. 2d 1118, 1127-29 (D. Minn. 2005) (refusing to permit a toxicologist to opine on the etiology of basal cell carcinoma, noting that an expert in one subject may not be qualified to testify beyond that expertise)**.**

To divert the Court's attention from Dr. Reyes' unfamiliarity with Baycol, or any statin for that matter, Ronwin presents Dr. Reyes' years of surgical experience. *See* Response at 39-40 (discussing Dr. Reyes' curriculum vitae). But even Ronwin knows that years of surgical experience do not make a physician qualified to opine as an expert on the effects of Baycol. *See, e.g.,* Response at 18 (arguing that surgical experience does not make up for a lack of experience with statins: "he could have been practicing for 100 years and whether or not Baycol caused Dr. RONWIN's rotator cuff tear is totally unrelated to the years of his practice"); *Medalen*, 269 F. Supp. 2d at 1127-29 (expertise in one area does not qualify expert to testify on all matters); *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996) (applying *Daubert*) ("there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question"). For reasons Ronwin himself

recognizes, Dr. Reyes is unqualified under *Daubert* to opine as an expert on specific causation in this case.[2]

***Speculation from the Uninformed.*** Making Dr. Reyes' opinion even more tenuous is that he reviewed only a bare fraction of Ronwin's medical record – 33 pages of a record of approximately 3,000 pages. Ronwin retorts simply with the unfounded assertion that his medical record cannot be so voluminous. *See* Response at 40 ("The medical reports in this specific case are surely not 3,000 pages.") Instead of grounding his opinions in medicine, Dr. Reyes roots his "diagnosis" in speculation and an outright reliance on Ronwin's own claims.

Dr. Reyes admits that he speculated to conclude that Ronwin's alleged injuries was caused by Baycol. Ronwin chalks up to semantics Dr. Reyes' admission that he guessed to diagnose Ronwin. *See* Response at 46 (claiming Dr. Reyes was "speaking in the vernacular" when admitting he was speculating). But Dr. Reyes' testimony makes clear he was simply guessing:

- "My feeling is that most everybody is on equal terms speculating what can happen in the future, and I don't know what Baycol did to a lot of people." Reyes Dep. (Ex. A) at 50:15-51:2.
- "[M]y conclusions were based upon my feelings." Reyes Dep (Ex. A) at 34:16-24.

---

[2] Indeed, Ronwin contends that medical doctors as a class are ill-equipped to opine on specific causation. *See* Response at 4, 34, 39 (arguing Drs. Servi and Prince should not be credited because they are not biochemists). If the Court adheres to Ronwin's contention, Dr. Reyes, a medical doctor without expertise in biochemistry, is not qualified to testify in this case on specific causation.

- "Does it make the patient more prone to develop an injury like a shoulder injury, which is so common. And that's the question mark. I don't know." Reyes Dep (Ex. A) at 47:15-18.
- "Now maybe he feels that it caused it. I -- I don't know. Again, it's something that I would only be speculating to say it caused it." Reyes Dep (Ex. A) at 54:16-19.
- Dr. Reyes conceded he had not seen a study associating Baycol with rotator cuff injury. Reyes Dep (Ex. A) at 41:8-23.

This sort of speculation does not rise to the level of expert testimony admissible under Rule 702. *See, e.g., Daubert*, 509 U.S. at 590 ("Proposed testimony must be supported by appropriate validation – *i.e.* 'good grounds' based on what is known."); *J.B. Hunt Transport, Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (speculation by proffered expert insufficient under *Daubert*).

Drawing his opinions further from evidence-based medicine, Dr. Reyes admits that his diagnosis was a reiteration of Ronwin's self-reported complaints. Reyes Dep. (Ex. A) at 51:17-25 (diagnosis from "the recognition of a toxic substance with the development of a problem for an individual that he strongly feels injured him"). Ronwin claims that because Dr. Reyes says it is acceptable to base medical judgment entirely on a patient's subjective complaints, it must meet the *Daubert* standard. *See* Response at 40 (citing Dr. Reyes as support for notion that self-reporting is a sufficient basis upon which to diagnose a patient).

But Dr. Reyes' validation of his own flawed methodology should not persuade the Court. The *ipse dixit* of the expert is never enough to qualify testimony under Rule 702. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (expert

opinion requires more than the *ipse dixit* of the expert). Further, the reiteration of a litigant's claim as a medical diagnosis does not meet the standard of reliability required of expert testimony. *See Goeb v. Tharaldson*, 615 N.W.2d 800, 816 (Minn. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1994) ("The self-reporting of a plaintiff's medical history in preparation for litigation, without independent confirmation, is inherently unreliable.")). Dr. Reyes' opinions are not premised on the "good grounds" required under *Daubert*. His opinions should be excluded.

***A Diagnosis, But Not a Differential Diagnosis.*** A differential diagnosis, as Ronwin recognizes (Response at 27), requires a physician to "rule in" all potential causes of a condition, then systematically "rule out" the least likely causes until the most probable cause can be identified. *See, e.g., Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001) (defining differential diagnosis).

Dr. Reyes did not conduct a valid differential diagnosis. He could not rule out age, osteoarthritis, degenerative joint disease, or other degenerative changes as causes of Ronwin's shoulder injury. Reyes Dep. (Ex. A) at 48:10-49:5. Indeed, Dr. Reyes apparently did not attempt a differential diagnosis of Ronwin's other alleged injuries, stating in his report that Baycol "***may be related***" to those injuries. Case Specific Medical Expert Report Pursuant to PTO 114 of Raul G. Reyes (Ex. B) at ¶ 7 (emphasis added). His opinion is an invalid differential diagnosis, and should be excluded.

Instead of identifying some portion of Dr. Reyes' opinion or testimony at which Dr. Reyes states he considered and ruled out age, osteoarthritis, degenerative joint disease, and degenerative changes in making his diagnosis, Ronwin simply asserts, "Dr.

Reyes must have considered age in his diagnosis and, as compared to Baycol as a cause, considered age less likely." Response at 45.[3] Ronwin then attempts to supplement Dr. Reyes' opinion with his own argument. *See, e.g.*, Response at 45 (inserting his own theory of why degenerative changes do not explain his rotator cuff injury); 46 (asserting that Dr. Reyes' disagreement with his treating physicians translates to a differential diagnosis).

Dr. Reyes testified that his opinion that Baycol "probably" caused Ronwin alleged injuries really meant Baycol "possibly" caused Ronwin's alleged injuries. Reyes Dep. (Ex. A) at 49:4-50:1. Ronwin claims this is "semantics." Response at 42. Though the difference between "probable" and "possible" may be semantic to Ronwin and Dr. Reyes, it is not to the Eighth Circuit, which requires that the most "probable" cause of injury be identified by a differential diagnosis.

Ronwin's argument does not make Dr. Reyes' diagnosis a valid differential diagnosis. Nor does the fact that Dr. Reyes rendered an opinion make his opinion the product of a valid differential diagnosis. Dr. Reyes' hired opinion, resting on speculation, Ronwin's self-reporting, and a review of approximately 1% of Ronwin's medical record, should be excluded.

***Speculation Is Not Enough.*** Ronwin must have a valid differential diagnosis to support his allegations. *See In re Baycol Prods. Litig.*, 321 F. Supp. 2d 1118, 1124-25 (D. Minn. 2004) (requiring differential diagnosis). Dr. Reyes has only

[3] Ronwin does not address Dr. Reyes' failure to perform a differential diagnosis on the injuries he alleges separate from his rotator cuff injury.

speculated from a limited review of the medical record and Ronwin's self-reporting. The possibility of a causal nexus between Baycol and Ronwin's alleged injury is insufficient to support Ronwin's claim. *See In re Baycol*, 321 F. Supp. 2d at 1124-25 (plaintiff must prove "injury and a causal connection between the claimed injury and the event sued upon"); *Kaiser Foundation Health Plan of Colorado v. Sharp*, 741 P.2d 714, 719 (Colo. 1987) ("[T]he plaintiff must establish causation beyond a mere possibility or speculation."); *Olson v. Federal Amer. Partners*, 567 P.2d 710, 719 (Wyo. 1977) (possibility of causal nexus insufficient). Dr. Reyes' uninformed speculation does not generate a genuine issue of material fact, and Ronwin's claims should be dismissed.

## III. RONWIN'S OPINION IS INADMISSIBLE AND DOES NOT SUPPORT HIS CLAIM THAT BAYCOL CAUSED HIM INJURY.[4]

Ronwin's made-for-litigation, do-it-yourself expert opinion – that a fluorine ion in Baycol *can* "etch" body parts – is theoretical biochemistry without verification in laboratory testing and without specific application to his own alleged injuries. Ronwin's opinions are inadmissible and, even if admissible, do not establish a genuine issue of fact regarding specific causation.

Ronwin claims Baycol *can* cause nitrogen atoms to charge, and if they do that hydroxil ions *can* attack carbon atoms, which *can* result in the release of fluorine atoms, which *can* attack muscle cells, which *must be* why Baycol is more destructive than other statins. *See* Motion at 22. Of course, none of this has been tested or peer-reviewed.

[4] On February 23, 2007, the Court granted Bayer's motion to compel Ronwin to sit for his deposition as a proffered expert. *See* Order of February 23, 2007 (Ex. C hereto). Bayer reserves its right to present further challenge to Ronwin's purported expertise after his expert deposition should the action not be dismissed by this Motion.

In his opposition to Bayer's Motion, Ronwin does not shy from the theoretical and speculative nature of his opinion, reiterating what "can" happen as opposed to what "will" or "does" happen. *See, e.g.,* Response at 54 (Fluorine ion can be expected to be quite reactive and therefore quite disruptive of body cell and tissue organizations."); 60 ("$F^-$, in the blood or in lymph, can attack the collagen helix formations in tendons, ligaments, etc.").

Ronwin claims that he has scientific support for his opinion because each of the building blocks upon which his opinion is based is supported in scientific literature. *See* Response at 55-62 (reiterating his expert opinion). But Ronwin has not provided any support for his ultimate proposition – that Baycol can cause tendon injury. Extrapolating from "chemistry known before Dr. RONWIN first attended chemistry classes in 1938 and on subsequent, well-researched knowledge" is not enough. *See* Response at 69 (citing principles of chemistry). Nor does he have support in science for stacking up his building blocks in the manner he has done to form his opinion. Ronwin's methodology has been rejected as inexpert under the standard set forth in *Daubert*. *See* Motion at 21-22.

Even if it were admissible, Ronwin's opinion does not provide a genuine issue of material fact supporting a claim that Baycol caused *his* injuries. Indeed, Ronwin's report was never meant to be anything more than a general causation opinion, and Ronwin admits as much. *See, e.g.*, Response at 55 (describing his report as an "explanation of the pernicious action of Baycol"); 69 (describing his report as a "thesis . . . on the action of Baycol"). Ronwin has not provided *any* application of his theory to

his own situation. As such, Ronwin's opinion stands removed from the domain of specific causation, and does not lend support to the claim that Baycol caused *his* alleged injuries.

## IV. CONCLUSION

For the foregoing reasons, as well as those presented in Bayer's Motion, there is no genuine issue of material fact supporting Ronwin's claim that Baycol caused *his* alleged injuries. Accordingly, Bayer respectfully requests that the Court enter judgment against plaintiff Edward Ronwin and in favor of Bayer Corporation.

Dated: February 27, 2007

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
James R. M. Hemmings
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Peter W. Sipkins (No.101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT, LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
(412) 566-6000

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

Jeffrey R. Pilkington
DAVIS GRAHAM & STUBBS LLP
1550 Seventeenth Street, Suite 500
Denver, CO 80202
(303) 892-9400

*Counsel for Bayer Corporation*

CERTIFICATE OF SERVICE

I, David L. Barlett, certify that a true and correct copy of the foregoing Defendant Bayer Corporation's Reply in Support of Its Motion for Summary Judgment and exhibits were electronically filed and served on February 27, 2007, and copies of same were sent by U.S. Mail to

Dr. Edward Ronwin
945 Rolland Moore Drive, L-2
Fort Collins, CO 80526

on February 28, 2007.

[signature]