UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re BAYCOL LITIGATION | ) | MDL 1431 (MJD/SRN) |
| This document relates to: | ) | Case No. 02-0200 |
| Ronwin v. Bayer Corp. | ) | |

**SUR-REPLY TO DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Edward Ronwin, ("RONWIN") hereby presents a Sur-Reply to Defendant's, ("BAYER"), Reply, ("REPLY"), to RONWIN's Response, ("RESPONSE"), TO BAYER's Motion for Summary Judgment, ("MOTION"). A Sur-Reply is necessary because this court has consistently denied RONWIN's requests for oral argument on every motion that RONWIN has filed and on every motion filed against RONWIN. As a result, BAYER persists in feeding this court with falsehoods and deliberate distortions which when placed in Replies to RONWIN's Responses to BAYER's motions provide BAYER with an undue advantage not intended by the Fed.R.Civ.P. In the absence of oral argument, a Sur-Reply is the only defense against distortions and falsehoods in BAYER's Replies. Notable, too, is that BAYER used REPLY to repeat numerous allegations already made in MOTION.

I. The title of Sec. I, p. 1, REPLY is false and misleading. The title reads:

> Ronwin admits that testimony from treating physicians does not support his claims.

BAYER names as "treating physicians:" Dr. Torkelson, Dr. Keller, Dr. Knauer, Dr. Servi and Dr. Prince.

Of the five, Dr. Keller never treated nor saw RONWIN with respect to his left shoulder, ("LS") rotator cuff, ("RC"), (together, "LSRC") injury, nor on any injury suffered by RONWIN due to Baycol. The four (4) visits with Dr. Keller were solely aimed at RONWIN's cardiac

SCANNED
MAR 13 2007
U.S. DISTRICT COURT MPLS

condition. RONWIN never raised any matter with Dr.Keller concerning any relationship between Baycol use and RONWIN's injuries therefrom. Conclusion: As to this Baycol matter, and despite the fact that Dr.Keller was the original and only MD prescribing Baycol to RONWIN, Dr.Keller's treatment was and is of no consequence to this case; nor was Dr.Keller asked to examine RONWIN's injuries from Baycol. In fact, he testified that he had no knowledge of RONWIN's RC tear, p. 19, RESPONSE.

Dr.Prince is a Veterans Administration, ("VA"), MD who RONWIN visited every six (6) months from approximately 2001 to 2005 in order for RONWIN to maintain his enrollment in a monetarily advantageous VA drug program for war veterans, (WWII in RONWIN's case). The new Medicare Part D drug program commenced in 2006 and is even more advantageous to RONWIN who is currently enrolled therein. On each visit to Dr.Prince, he conducted a physical examination including vital signs and inspection of RONWIN's LSRC. At his deposition, Dr.Prince expressed no opinion on the cause of RONWIN's LSRC tear, p. 37, RESPONSE, but did observe that RONWIN's LS is not back to and will not regain a full range of motion, ls.16-20, p.29 of Dr.Prince's Depo. placed at the end of the numbered exhibits to RESPONSE.

Thus, only 3 of the 5 named MDs treated RONWIN's LS.

Dr.Torkelson has undeniably committed perjury in his deposition, pp.11-19, RESPONSE. His "treatment" of RONWIN's LSRC consisted of one Cortisone injection. At no time during RONWIN's very brief interaction with Dr.Torkelson was any consideration whatsoever given to any possible connection between Baycol use and RONWIN's LSRC tear. In fact, the very brief, and highly suspect report from the point of honest content by Dr.Torkelson presents the conclusion that RONWIN's LS pain is caused by "subacromial impingement," Exh.1, hereto.

A RC tear did not feature as a diagnosis in any of the three brief reports from Dr.Torkelson's office. Dr.Torkelson was hardly a "treating" physician.

Dr.Servi did treat RONWIN and suspected a RC tendinitis or tear, Exh.2, p.2, hereto. Her treatments were given on four (4) occasions over several months and consisted of Cortisone injections on each visit, see Dr.Servi's reports in Exh.B, REPLY. After the last visit, Dr.Servi shunted RONWIN's continued treatment to Dr.Knauer--her partner.

Dr.Knauer gave RONWIN some Cortisone injections and finally ordered the arthrogram which resulted in identification for certain of RONWIN LSRC tear; leading to subsequent surgery.

That Dr.Knauer could not even conceive of the basic underlying action of Baycol as the cause of RONWIN's LSRC tear is well established by her testimony that she did not know that Baycol was a molecule!; middle, p. 28, RESPONSE.

Dr.Knauer opted for "age" as the most likely cause of RONWIN's RC tear, p. 26, RESPONSE. However, age cannot ever be a proven cause for any disease or injury, 3rd full ¶, p.27, RESPONSE; see also excerpt from Dr.Reyes' Depo., top, p. 45, RESPONSE. Dr.Knauer also considered degenerative changes; essentially arthritic spur causation. However, at Dr.Reyes' deposition, measurement of the only spur that could possibly cause the RC tear, i.e., at the acromioclavicular joint, ("AC joint"), was made on the life size, X-ray film of RONWIN's LS taken two weeks prior to the RC surgery by Dr.Knauer, in the presence of Dr.Reyes and BAYER's polished attorney. The measurement showed that the spur was too short to be the cause of the RC tear. At most, the spur might have cut into the acromiobursa which sits just below the AC joint and above the RC. BAYER's attorney observed the entire measuring process and made no objection to the process nor to the determination of the spur's length, see excerpt

from Dr.Reyes' Depo., bottom, p. 45, RESPONSE.

Notably, Dr.Servi gave the most cogent testimony in support of RONWIN's scientific explanation of how Baycol causes its destructive effects by clearly asserting and repeating that MDs deal only at the clinical level–not at the fundamental, chemical level. See RESPONSE, pp.35-37.

Dr.Prince testified in a similar manner, see RESPONSE, pp. 37-39.

II. Sec. II, pp. 2-8, REPLY, is replete with reiteration of MOTION comments which in REPLY are equally as invalid and nonsensical as in MOTION.

The statement in 1st ¶, p. 3, REPLY, that RONWIN "does not deny that Dr.Reyes lacks experience with Baycol outside the context of this litigation," is untrue. The citation from Dr.Reyes' deposition, 2nd sentence, 1st ¶, p. 3, REPLY, refers to when he started seeing patients who complained of Baycol, not that he was unaware of Baycol's proclivity to cause death and injury.

Furthermore, Dr.Reyes was shown the pertinent pages from the Food & Drug Admin., ("FDA") Adverse Events Report on Baycol wherein tendon and RC injuries, along with nerve, muscle, vision, walking, etc., injuries are recorded, bottom area, p. 46-47, RESPONSE. And, Dr.Reyes objected to BAYER's polished attorney's effort to deride the value of those adverse event reports. That FDA uses such reports to decide whether or not to yank a drug from the market has very, very serious economic effects on a drug manufacturer. Further, adverse event reports represent a massive, "controlled study" of a drug's negative effects since the reports result from the experiences of several million patients who are periodically examined by their prescribing MDs.

As far as the "experience with statins," most MDs who prescribe statins do virtually nothing with the drug except to note what adverse effects may be reported by their patients. But, as Drs.Servi and Prince testified, (see above at pp.3-4), MDs confine themselves to the clinical level and not on the fundamental, chemical level of cause; the latter being the level of chemical interactions between drugs and the chemicals that constitute the human body.

The reference to Dr.Reyes' "years of surgical experience," 2nd ¶, p. 3, REPLY, which consisted of over 20,000 surgeries and oversight of over 10,000 other surgeries by medical students, reflects (i) that Dr.Reyes is a very experienced MD and (ii) very intimate with human anatomy which is what drugs, like Baycol, act upon, pp. 39-40, and Dr. Reyes' Depo. excerpt "G", p. 43, RESPONSE.

Dr.Reyes' alleged lack of experience with statins is a false argument.

Throughout REPLY and MOTION, BAYER plays the game of one-line quotations from reported cases where no real effort to show that the line from the cases actually apply in context and content to this specific case.

In 1st full ¶, p. 4, REPLY, BAYER presents a false theme when it argues that Dr.Reyes "reviewed a bare fraction of RONWIN's medical record--33 pages of a record of approximately 3,000 pages." The charge, also made in MOTION at p.13,MEMO to MOTION, is outrageous. THE FACT IS THAT THE 33 PAGES ARE THE ONLY PAGES CONTAINING ANY REPORTS ON THE EXAMINATION AND TREATMENT OF RONWIN WITH RESPECT TO HIS LSRC!

All the other pages are reports of Drs.Wolfel, Hiatt, Deane, Keller, an eye surgeon, Dr.Kumpe, a pulmonary specialist, hospital records of cardiac procedures done on RONWIN,

vascular angioplasties, records from the mid-1990's from Phoenix, AZ on cardiac procedures, records from Sioux Falls Hospital and MD offices, VA records, etc. Absolutely none of these records has the slightest reference or information about RONWIN's LSRC tear and treatment! Those records would not add or detract one iota from any MD, including Dr.Reyes' consideration of RONWIN's interaction with Baycol, p.40, RESPONSE. BAYER is well familiar with that fact. To put that falsehood before this court is outrageous and this court has a duty to make clear to BAYER's attorneys that that sort of advocacy must stop.

As to speculation by Dr.Reyes, p.4, REPLY, he was clearly playing with BAYER's polished attorney, and what proves it, is Dr.Reyes' testimony at the end of his deposition where he firmly states that Baycol's cause of RONWIN's injuries is (i) a "high probability" and (ii) he would not backtrack on that conclusion, see Dr.Reyes' Depo. quote, 99:17-100-17, @ p. 43, RESPONSE.

BAYER would like the court to forget that, but those remarks by Dr.Reyes' are the essence of his expert opinion, which also appear in his written expert, medical report filed herein.

BAYER claims that Dr.Reyes did not see a study associating Baycol with RC injury, Upper p. 5, REPLY, 3rd "bullet point." The fact is that, as above at p. 4, Dr.Reyes saw the FDA Adverse Event Reports; defended their utility and recognized that Baycol causes RC and Tendon problems and tears.

In the middle ¶, p. 5, REPLY, BAYER complains of "Ronwin's self-reported complaints." Self reported complaints are exactly what every patient presents to an MD, unless an open wound is visible on the patient's body! For example, a patient hurting somewhere in his or her anatomy goes to an MD. The patient starts by telling the MD, "I'm hurting here," (pointing to some part of their anatomy, or if they are more educated they may name the anatomical part).

An MD can't possibly know where the patient is hurting without a "self-report.!" See item 2, p. 40, RESPONSE.

The answer to BAYER's comments on p. 6, upper, REPLY, is that Dr.Reyes' review and analysis of the only medical records dealing with RONWIN's LSRC tear allowed him to draw his conclusion that there is a "high probability" that Baycol caused RONWIN's LSRC tear.

As in MOTION, BAYER claims that Dr.Reyes did not do a "differential diagnosis," pp. 6-7, REPLY. The claim is false. Dr.Reyes clearly stated that he viewed Dr.Knauer's differential diagnosis to the effect that "age" was the most likely cause of RONWIN LSRC tear and degenerative changes may have contributed; and Dr.Reyes' stated that he rejected Dr. Knauer's diagnosis, see pp.44-47, RESPONSE. That was a differential diagnosis by Dr.Reyes. Also, as above at p.3, "age" cannot ever be pinned down as a cause of disease in any specific case. Degenerative changes were eliminated with the measurement of the AC joint spur, as related above at p. 3 and in RESPONSE. That left Baycol, known to cause RC and Tendon problems and tears as the only cause!

THE DIFFERENCE BETWEEN DR.REYES' AND DR.KNAUER'S DIAGNOSES CREATES AS GENUINE ISSUE OF MATERIAL FACT AND IS FOR THE JURY DEMANDED IN THIS SPECIFIC CASE TO DECIDE.

As in MOTION, BAYER again raises the "probability-possibility" discussion between Dr.Reyes and BAYER's polished attorney, 1st full ¶, p.7, REPLY. See pp.42-44, RESPONSE for a complete refutation of BAYER's position on this matter, which refutation is accentuated by Dr.Reyes' final testimony wherein he asserts that it is a "high probability" (medical, since he is an MD) that Baycol caused RONWIN's RC tear, and that he would not backtrack from the

position, see item I, p. 43, RESPONSE.

The preceding ¶ is an answer to the false statements, upper, p. 8, REPLY, that Dr.Reyes only labelled the causal relationship between Baycol and RONWIN's injury a "possibility." BAYER fails to acknowledge the truth of Dr.Reyes' final statement of his position, as in the preceding paragraph.

That BAYER does not like Dr.Reyes' ultimate conclusion given in his deposition and in his written expert medical report filed herein provides no grounds for granting BAYER's MOTION.

III. In Sec.III, REPLY, BAYER attacks RONWIN's standing as an expert, pp. 8-10. BAYER starts by reiterating from MOTION its nonsensical reading of RONWIN's use of the term, "etch" in RONWIN's expert report filed herein. This matter is treated in RESPONSE, p. 54, and reveals the absurdity of BAYER's deliberate distortion of RONWIN's use of the word, "etch." RONWIN pointed to the "etching" of glass by Hydrogen Fluoride to give the reader of his expert report an idea of how chemically reactive Fluoride ion can be. That did not mean that RONWIN was implying that Fluoride ion actually "etches" human body parts!

BAYER's comments in the last ¶, p. 8, REPLY, are sheer nonsense without support from any scientific source pointed to by BAYER and are a total distortion of what RONWIN has presented as the reasons why Baycol exerts a destructive action on RC's, other tendons, nerve cells, muscle cells, and other anatomical parts. The last sentence in said ¶, p. 8, REPLY is utterly false.

What BAYER has failed to do is demonstrate that RONWIN's discourse on Baycol's actions provided in pp.55-62, RESPONSE, is invalid. That couldn't possibly be done since RONWIN supports his assertions with materials from peer-reviewed journal articles and academic and other

texts which have gone through more than one edition.[1];

In RONWIN's exposition, RONWIN has considered, RESPONSE

(a) Baycol is known to cause RC and tendon problems and tears per FDA adverse event reports, as above at p.4 and RESPONSE at last ¶, p.46-middle, p.47.

(b) RONWIN has cited peer-reviewed journal articles and book reports on the deleterious effects of Fluorine atoms on anatomical parts, see RESPONSE at pp.61-62.

(c) RONWIN has cited scientific reports which show that Fluorine atoms attached to phenyl groups, as in Baycol, are easily replaced; thereby, freeing the Fluorine atom in a solution.

That work is found in peer-reviewed journals and reported in academic textbooks, p.58, RESPONSE.

(d) RONWIN cites the research in the Journal of the American Chemical Society showing that Fluorine atoms form a very tight hydrogen bond with amide groups, p. 57, and Exh. 20, RESPONSE.

(e) RONWIN has shown that amide groups abound in proteins such as collagen and that collagen is a major structural element in tendons and RCs, pp.59-60, and Exhs.30-32, RESPONSE.

(f) RONWIN has shown that when Fluorine ion displaces OH and C=O groups from hydrogen bonds with amide groups in collagen, the collagen structure is destroyed which weakens and tears tendons and RCs, p.60, and Exhs.30-32, RESPONSE.

Since Fluorine-containing Baycol was the only agent after whose ingestion about 5-6 weeks

---

[1] Even if an academic text or book goes through only one edition, that does not mean it is not a proper authority. There are many reasons why a book might not be put out as a second of edition which have nothing to do with the quality of the text.

after starting Baycol dosage RONWIN began to experience pains and disabilities, the scientific conclusion is that Baycol caused RONWIN's RC tear and other injuries such as his continuing back pain and back of thigh pains in both legs.

An excellent example of how a biochemical expert can discern important facts of which virtually all MDs, because of their limited biochemical background would be oblivious, is RONWIN's conclusion, without a day of laboratory research, that every-other-day dosing with statins, (including Baycol, Zocor, Lipitor, etc.), would be as effective as every day dosing. That conclusion came about when RONWIN saw the IC50's reported for various statins including Baycol, Zocor, Lipitor, etc., in the paper in Science, a highly prestigious scientific journal, (as Dr. Wolfel testified, item 3, p.29, RESPONSE). Those IC50's indicated to RONWIN that statins of the type to which Baycol belongs are bound so tightly to the liver enzyme HMG Reductase that the statin-enzyme complex would probably last at least 48 hours. That would translate into preferred dosing every-other-day, rather than every day; since (i) the cost of the drug to patients would be reduced and (ii), more important, patient exposure to adverse effects would be significantly reduced, see p.15, bottom of Exh.2 and Exh.12, RESPONSE.

A look at the summary of RONWIN's lipid results from 1984 to the present, copy of which is presented as Exh.3, hereto, shows that the reductions in Cholesterol, LDL and Triglycerides when RONWIN took Baycol every day as compared to every-other day and Zocor and Lipitor, each, every-other-day show that every-other-day dosing is easily as effective as every day dosing. In fact, the last lipid panel in the group, if presented to a cardiologist by a patient with no angina episodes or murmur or other overt cardiac problem, would never lead the cardiologist

to suspect that the patient has cardiac problems. The results are the fruit of RONWIN's expert scientific, biochemical knowledge deduced from scientific facts.

Most notable is the fact that BAYER has NOT cited a single scientific journal report or academic textbook or other book in support of any of the criticisms it hurls at RONWIN's expert, scientific exposition of the how and why Baycol attacks and destroys RCs, other tendons, nerve and muscle cells and other human anatomical structures. BAYER's criticisms are those of individuals lacking scientific knowledge. Thereby, they sum to nothing!

As to RONWIN and Daubert, see p.69, RESPONSE.

Lastly, the U.S. Supreme Court has held forth at various times on advisory opinions. The latest two cases are Peiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334 (1975) where the court declared:

> The exercise of judicial power under Art.III of the Constitution depends on the existence of a case or controversy...a federal court has neither the power to render advisory opinions....

and the identical observation is made in U.S.Nat.Bank of Oregon v. Independent Ins.Agents of America, Inc., 508 U.S. 439, 446-447, 113 S.Ct. 2173, 2178 (1993).

That Supreme Court holding is the law of this land. No federal judge should do anything to counter that holding. This court has recognized that if it rendered Daubert opinions herein, they would only be advisory, Tr. of Dec.19, 2005 hearing, p.10. Therefore, this court must not seek nor conduct Daubert hearings in this specific case.

**WHEREFORE**, Plaintiff asks that Defendant's Motion for Summary Judgment be denied.

DATED: March 12, 2007.

Edward Ronwin, pro se
945 Rolland Moore Dr., L-2
Fort Collins, CO 80526
970-221-3837

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing SUR-REPLY upon the following by FAX, this 12th day of March, 2007.

The Court Clerk's office at FAX No. 612-664-5044
Defendant's counsel at FAX No. 312-853-7036 (Weber or Mizgala)
Plaintiff's Liaison Counsel, Deanna Dailey at Larson-King at FAX 651-312-6618

Edward Ronwin
Edward Ronwin

To: The Court Clerk's office at FAX No. 612-664-5044
Defendant's counsel, Sidley Austin (Weber or Mizgala) at FAX: 312-853-7036
Plaintiff's Liaison Counsel, Deanna Dailey @ Larson-King at FAX: 651-312-6618

From: Dr. Edward Ronwin at FAX: 970-224-3838; (Telephone: 970-221-3837)

Date: March 12, 2007

Re: Ronwin v. Bayer Corp. MDL 1431; Case No. 02-0200

Faxing herewith is Plaintiff's Sur-Reply to BAYER's Reply to Plaintiff's Response to BAYER's Motion for Summary Judgment.

If you have any doubts, please call at the above telephone number.

There are 19 pages in this FAX, (including this page).

Edward Ronwin

Edward Ronwin, PhD, JD